IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-43-SLR |
| | ) | |
| PAUL E. PAVULAK, | ) | |
| | ) | |
| Defendant. | ) | |

David C. Weiss, United States Attorney and Edward J. McAndrew, Assistant United States Attorney.  United States Attorney's Office, District of Delaware.  Mi Yung Park, Trial Attorney, United States Department of Justice, Child Exploitation & Obscenity Section.  Attorneys for Plaintiff United States of America.

Luis A. Ortiz, Esquire, Assistant Federal Public Defender.  Federal Public Defender's Office, District of Delaware.  Attorney for Defendant Paul E. Pavulak.

**MEMORANDUM OPINION**

November 30, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. BACKGROUND

On April 16, 2009, a federal grand jury charged defendant Paul E. Pavulak with:
(1) failure to register and update a registration as a sex offender, in violation of 18
U.S.C. § 2250(a); (2) possession of child pornography, in violation of 18 U.S.C. §§
2252A(a)(5)(B), 2252A(b)(2) and 2256(8)(A); (3) attempted production of child
pornography, in violation of 18 U.S.C. §2251(a) and (e); and (4) enticement and
coercion of a minor, in violation of 18 U.S.C. § 2422(b). (D.I. 13) Defendant entered a
plea of not guilty and, subsequently, moved to dismiss count one of the indictment.
(D.I. 21) Contemporaneously, defendant moved to suppress evidence obtained as a
result of two state court search warrants. (D.I. 20) The matter is fully briefed. (D.I. 22,
23, 25, 26, 28) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the
reasons that follow, defendant's motions will be denied.

## II. MOTION TO DISMISS

### A. Background

Count one of the indictment alleges that defendant had a duty to register as a
sex offender based on two Delaware sex offense convictions, that he traveled in
interstate or foreign commerce and that he failed to register or update his registration
as mandated by the Sex Offender Registration and Notification Act, 18 U.S.C. §
2250(a). Defendant argues that both the civil registration statute, 42 U.S.C. § 16913,
and the criminal statute, 18 U.S.C. § 2250(a), exceed Congressional authority under the
Commerce Clause.[1]

---

[1]In his memorandum in support of his motion to dismiss, defendant
acknowledges that the identical constitutional challenge was raised and rejected by the

## B. Standard of Review

A motion to dismiss an indictment should be directed only toward the sufficiency

of the evidence to prove the indictment's charges. *United States v. DeLaurentis*, 230

F.3d 659, 661 (3d Cir. 2000). In making this determination, the court must assume all

the allegations in the indictment are true. *United States v. Besmajian*, 910 F.2d 1153,

1154 (3d Cir.1990). An indictment will be deemed sufficient where the "elements of the

offense intended to be charged, sufficiently apprises the defendant of what he must be

prepared to meet and allows the defendant to show with accuracy to what extent he

may plead a former acquittal or conviction in the event of a subsequent prosecution."

*United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations and internal

quotation omitted).

Federal statutes are presumed constitutional and will only be invalidated on a

"plain showing" that Congress exceeded its authority under the United States

Constitution. *United States v. Morrison*, 529 U.S. 598, 607 (2000); *United States v.

Pendleton*, 2009 WL 330965, at *3 (D. Del. Feb. 11, 2009). An "action based on an

invalid statute must be dismissed." *United States v. Clayton*, 2009 WL 1033664, at *5

(W.D. Pa Apr. 16, 2009). Moreover, "the Third Circuit [has] explained that where

Congress acts under its commerce authority, statutes are entitled to a presumption of

court in *United States v. Jamison*, Crim. No. 09-20-SLR, ___ F. Supp.3d (D. Del. Aug.
25, 2009), 2009 WL 260132. (D.I. 22 at 1) Nonetheless, defendant has moved on the
same grounds raised in *Jamison* in order to preserve appellate rights. Accordingly,
plaintiff has adopted and incorporated the arguments contained in its opposition
memorandum filed in *Jamison.* In light of the parties' positions and the absence of
differences between the issues raised in the motions to dismiss, the court embraces
and adopts the *Jamison* analysis and conclusion.

2

validity." *Id.* (Third Circuit applies a rational basis test in the context of the Commerce Clause).

## C. Legislative Background

On July 27, 2006, Congress enacted the Sex Offender Registration and Notification Act ("SORNA") as a component of The Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). *United States v. Howell*, 552 F.3d 709, 713 (8th Cir. 2009). The Act was created to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of . . . child crime victims." *Clayton*, 2009 WL 1033664, at *2 (quotations omitted).

SORNA was enacted to "protect the public from sex offenders and offenders against children by establishing a national system for registration of sex offenders." 42 U.S.C. § 16901. It was also designed to "close the gaps inherent in a network of independent state systems" that did not prevent sex offenders from moving between states in order to evade registration requirements. *United States v. Gould*, 568 F.3d 459, 463 (4th Cir. 2009); *see also* 152 Cong. Rec. S8012, 8013 (July 20, 2006). A House Judiciary Committee report described the problem as follows:

There is a wide disparity among State registration requirements and notification obligations for sex offenders. This lack of uniformity has been exploited by child sexual offenders with tragic consequences. Given the transient nature of sex offenders and the inability of the States to track these offenders, it is conservatively estimated that approximately 20 percent of 400,000 sex offenders are lost under State sex offender registry programs.

*Howell*, 552 F.3d at 716 (quoting H.R.Rep. No. 109-218, at 23 (2005)).

3

To effectuate these goals, Congress created a comprehensive national sex

offender registration system designed to track the interstate movement of sex offenders

and to prevent sex offenders from evading detection by moving from one State to the

next. *United States v. Ambert*, 561 F.3d 1202, 1205 (11th Cir. 2009); *Howell*, 552 F.3d

at 716. In so doing, Congress also recognized that "sex offenders constitute a unique

class of criminal insofar as members of that class are considered to have higher rates

of recidivism than other offenders." *Gould*, 568 F.3d at 472.

SORNA's registration requirements provide:

(a) In general
A sex offender shall register, and keep the registration current, in
each jurisdiction where the offender resides, where the offender is
an employee, and where the offender is a student. For initial registration
purposes only, a sex offender shall also register in the jurisdiction in
which convicted if such jurisdiction is different from the jurisdiction of
residence.

42 U.S.C. § 16913(a). The sex offender is also required to register within a specific

time period and to keep the registration current. *Id.* § 16913(b) - (c).

SORNA establishes a new federal crime for persons who are required to register

under § 16913, but fail to do so. *United States v. Whaley*, 577 F.3d 254, 257 (5th Cir.

2009). Section 2250(a) provides:

(a) In general.-Whoever-
(1) is required to register under SORNA;
(2)(A) is a sex offender as defined for the purposes of the SORNA by reason
of a conviction under Federal law (including the Uniform Code of Military
Justice), the law of the District of Columbia, Indian tribal law, or the law of
any territory or possession of the United States; or
(B) travels in interstate or foreign commerce, or enters or leaves, or resides
in, Indian country; and
(3) knowingly fails to register or update a registration as required by SORNA;
shall be fined under this title or imprisoned not more than 10 years, or both.

4

SORNA directs the United States Attorney General to "maintain a national database . . . for each offender." 42 U.S.C. § 16919(a).

With respect to the obligations placed on the States, Congress conditions the receipt of federal law enforcement funds on States' compliance with the standards set for sex offender registration and enforcement. Id. § 16925 (any State failing to timely comply with SORNA for sex offender registration will not receive 10% of the funds that would be allocated for local law enforcement and justice assistance). SORNA also requires that: (1) each State establish an Internet website including information about sex offenders within its jurisdiction, id. § 16918; (2) States include all sex offenders on their registration roles, id. § 16912; (3) States substantially implement the standards by July 2009, id. § 16924; and (4) States establish standards for prosecuting State law violations of the registration act, id. § 16913(a).

### D. Discussion

#### 1. 18 U.S.C. § 2250(a)

Defendant argues that 18 U.S.C. § 2250(a) ("the criminal statute") exceeds Congressional authority to regulate interstate commerce. Specifically, defendant asserts that the jurisdictional element is insufficient to bring the statute within one of the three permissible categories of commerce regulation recognized by the Supreme Court in United States v. Lopez, 514 U.S. 549 (1995). The government counters that the overwhelming majority of courts have found the criminal statute within Congress' authority under the Commerce Clause.

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. at 606. The United States Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and the Indian Tribes." U.S. Const. art. I. § 8, cl. 3. Congress' "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce has been firmly established." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005).

The Supreme Court has identified three expansive categories of activity that Congress may regulate under its commerce power. *United States v. Lopez*, 514 U.S. at 558. First, Congress has authority to regulate the use of the channels of interstate commerce ("the channels"). *Id.* In so doing, Congress has the power to keep the channels of interstate commerce free from immoral and injurious uses. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964).

Under the second *Lopez* category ("the instrumentalities"), Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558. The third *Lopez* category ("substantially affects") includes Congress' authority to "regulate those activities having a substantial relation to interstate commerce," that is "those activities that substantially affect interstate commerce." *Id.* at 558-59 (citations omitted).

Against this authority, the court concludes that defendant's claim that the criminal statute exceeds Congress' authority under the Commerce Clause is without

6

merit, thereby joining the majority of courts that have reached the issue.[2]  First, the

criminal statute only applies to those sex offenders failing to register or update a

register after traveling in interstate travel.  This falls within the first *Lopez* category.  *See*

*Whaley*, 577 F.3d at 258.  Further, the criminal statute has a  jurisdictional element that

only applies when the sex offender fails to register or update a registration after

traveling in interstate commerce.  This interstate travel element is an express

jurisdictional trigger that falls within Congress' power to regulate and protect the

channels and instrumentalities of interstate commerce, including "persons or things in

---

[2]Although the Third Circuit has not addressed the issue, over 80 courts have found the statute derives its authority under one, two or three of the *Lopez* categories. *See, e.g., Whaley*, 577 F.3d 254 (channels and instrumentalities); *United States v. Letourneau*, 2009 WL 2391526 (5th Cir. Aug. 4, 2009) (channels and instrumentalities); *Gould*, 568 F.3d 459 (channels and instrumentalities); *Ambert*, 561 F.3d 1202 (channels and instrumentalities); *United States v. Hinckley*, 550 F.3d 926 (10th Cir. 2008) (channels and instrumentalities); *United States v. May*, 535 F.3d 912 (8th Cir. 2008) (channels and instrumentalities); *United States v. Dixon*, 551 F.3d 578 (7th Cir.2008) (Commerce Clause challenge rejected outright); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008) (channels and instrumentalities); *United States v. Sanders*, 2009 WL 1867689 (W.D. Wis. June 26, 2009) (Commerce Clause argument rejected in light of *Dixon*); *United States v. Nelson*, 2009 WL 1867673 (S.D. W.Va. June 29, 2009) (Commerce Clause not violated); *United States v. Hernandez*, 2009 WL 1396365 (E.D. Mich. May 18, 2009) (channels and instrumentalities); *Clayton*, 2009 WL 1033664 (instrumentalities and substantially affect); *Pendleton*, 2009 WL 320546 (channels and instrumentalities); *United States v. Shenandoah*, 572 F. Supp.2d 566 (M.D. Pa. 2008) (instrumentalities); *United States v. Zuniga*, 2008 WL 2184118 (D. Neb. May 23, 2008) (instrumentalities); *United States v. O'Dell*, 2009 WL1347141 (N.D.N.Y. May 13, 2009) (channels and instrumentalities); *United States v. Ditomasso*, 552 F.Supp.2d 233 (D. R.I. 2008) (instrumentalities); *United States v. Craft*, 2008 WL 1882904 (D. Neb. Apr. 23, 2008) (channels and instrumentalities); *United States v. Elliott*, 2007 WL 4365599 (S.D. Fla. Dec. 13, 2007) (instrumentalities); *United States v. Beasley*, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007) (instrumentalities); *United States v. Gonzales*, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007) (instrumentalities) *United States v. Muzio*, 2007 WL 1629836 (E.D. Mo. June 4, 2007) (instrumentalities); *United States v. Templeton*, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007) (instrumentalities).

interstate commerce." *Lopez*, 514 U.S. at 558. "When a sex offender travels from one state to another, he is an instrumentality of interstate commerce, and by regulating these persons in SORNA, Congress has acted under its Commerce Clause power to regulate an instrumentality." *Ambert*, 561 F.3d at 1211; *United States v. Hernandez*, 615 F. Supp.2d. at 615.[3]

Notably, Congress limited the enforcement of the registration requirement only where the sex offender travels in interstate or foreign commerce.[4] *Howell*, 552 F.3d at 716. "[E]ven if we were to assume that the harms and targeted illegal conduct were purely local in nature, the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense" under the criminal statute. *Ambert*, 561 F.3d at 1211. Moreover, the purpose of SORNA is to "address specific problems that flow as a direct consequence of a sex offender's travel between jurisdictions." *Clayton*, 2009 WL 1033664, at *6.

### 2. 42 U.S.C. § 16913

Defendant explains that his constitutional challenge to 42 U.S.C. § 16913 ("the civil statute") arises from the structure of the criminal statute, which requires that the government must first prove that the sex offender was required to register under the civil statute. He submits that, because the duty to register under the civil statute is not

---

[3]Having found either of the first two *Lopez* categories applicable, it is unnecessary to consider whether the third category is satisfied.

[4]Section 2250(a) also makes it a federal crime for failure to register as required under 42 U.S.C. § 16913 where the sex offender is convicted of a federal sex offense.

8

conditioned upon proof of a nexus to interstate commerce, the civil statute exceeds Congressional authority under the Commerce Clause.

The government argues that the civil statute functions as an element of the criminal statute and is a necessary component of SORNA's broad legislative scheme. When considered in the context of SORNA as a whole, the government contends that there is a nexus with interstate commerce and the regulation substantially affects interstate commerce.

The court agrees. Both the civil and criminal statutes were enacted as part of the Adam Walsh Child Protection and Safety Act, and are complementary. *Whaley*, 577 F.3d at 259. "Both provisions are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty." *Shenandoah*, 572 F. Supp.2d at 577 n. 7; *Whaley*, 577 F.3d at 259 (without the criminal statue, the civil statute lacks criminal enforcement and without the civil statute, the criminal statute has no substance).

Likewise, both statutes are part of the comprehensive legislative effort enacted by Congress to protect the public from sex offenders by establishing a national system for registration of sex offenders. *Gould*, 568 F.3d at 472-74. Both statutes share the same purpose, that is, ensuring that sex offenders register and update register when moving interstate, among jurisdictions. *Whaley*, 577 F.3d at 259-260; *Ambert*, 561 F.3d at 1212 ("Congress did not focus on individual local registration as an end in itself, but rather as part of its goal to create a system to track and regulate the movement of sex

9

offenders from one jurisdiction to another"); *Howell*, 552 F.3d 709 (extensive analysis of the necessity and validity of the registration requirements and its furtherance of Congress' Commerce Clause authority).

To the extent that the civil statute applies to sex offenders remaining intrastate, by requiring registration both before and after they travel in interstate commerce, the court finds the Necessary and Proper Clause affords Congress with the requisite authority. *Whaley*, 577 F.3d at 260-261. The Necessary and Proper Clause "grants Congress the power to 'make all Laws which shall be necessary and proper' for executing its other enumerated powers." *Pendleton*, 2009 WL 330965, at *4 (quotation omitted).

As explained by the Supreme Court, "[l]et the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819). To that end, the law must be a "rational and appropriate means to further Congress' regulation of interstate commerce." *United States v. Barner, 635* F. Supp.2d 138, 148 (N.D. N.Y. 2009). Moreover,

the authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that have a substantial effect on interstate commerce. Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those activities that do not themselves substantially affect interstate commerce.
              *              *              *
The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power.

10

*Gonzales v. Raich*, 545 U.S. at 34 (Scalia, J., concurring) (citation and quotation omitted).

Registration under the civil statute is necessary to track sex offenders who move from jurisdiction to jurisdiction. "In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated." *Howell*, 552 F.3d at 717. Absent knowing the sex offender's initial location (intrastate), "there is nothing to ensure the government would know if the sex offender moved." *Id.* Moreover, "[r]equiring all sex offenders to register is an integral part of Congress' regulatory effort and the 'the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Gould*, 568 F.3d at 475 (quoting *Raich*, 545 U.S. at 24-25). In light of this authority, the court finds that requiring sex offenders to register before and after they travel in interstate travel is reasonably adapted to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions. *Whaley*, 577 F.3d at 259-260. Accordingly, the motion to dismiss count one of the indictment is denied.

## III. MOTION TO SUPPRESS

### A. Background

On January 13, 2009, Delaware State Police ("DSP") Detective Nancy Skubik ("Skubik")[5] applied to the Superior Court of Delaware, New Castle County, for two

---

[5]According to the search warrant affidavit, Skubik is currently assigned to the Delaware Child Predator Task Force. Prior to that assignment, she served as a DSP trooper for five years. (D.I. 25 at 6)

11

search warrants regarding defendant's suspected violations of 11 Del. C. § 1109.[6]

_____

[6]This section, dealing in child pornography, provides, in part, that a person is guilty of dealing in child pornography when:

(1) The person knowingly ships, transmits, mails or transports by any means, including by computer or any other electronic or digital method, any book, magazine, periodical, pamphlet, video or film depicting a child engaging in a prohibited sexual act or in the simulation of such an act, or knowingly ships, transmits, mails or transports by any means, including by computer or any other electronic or digital method, any other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act;

(2) The person knowingly receives for the purpose of selling or sells any magazine, photograph or film which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, or knowingly receives for the purpose of selling or sells any other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act;

(3) The person knowingly distributes or disseminates, by means of computer or any other electronic or digital method, or by shows or viewings, any motion picture, video or other visual depiction of a child engaging in a prohibited sexual act or the simulation of such an act. The possession or showing of such motion pictures shall create a rebuttable presumption of ownership thereof for the purposes of distribution or dissemination;

(4) The person, intentionally compiles, enters, accesses, transmits, receives, exchanges, disseminates, stores, makes, prints, reproduces or otherwise possesses any photograph, image, file, data or other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act. For the purposes of this subsection, conduct occurring outside the State shall be sufficient to constitute this offense if such conduct is within the terms of § 204 of this title, or if such photograph, image, file or data was compiled, entered, accessed, transmitted, received, exchanged, disseminated, stored, made, printed, reproduced or otherwise possessed by, through or with any computer located within Delaware and the person was aware of circumstances which rendered the presence of such computer within Delaware a reasonable possibility; or

(5) The person knowingly advertises, promotes, presents, describes, transmits or distributes any visual depiction, exhibition, display or performance with intent to create or convey the impression that such visual depiction, exhibition, display or performance is or contains a depiction of a child engaging in a prohibited sexual act or in the simulation of such an act.

        11 Del. C. § 1103 defines "prohibited sexual act," as:  (1) sexual intercourse; (2) anal intercourse; (3) masturbation; (4) bestiality; (5) sadism; (6) masochism; (7) fellatio; (8) cunnilingus; (9) nudity, if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction; (10) sexual contact; (11) lascivious exhibition of the genitals or pubic area of any child; (12) any other act which is intended to be a depiction or simulation of any act described in this subsection.

        *                        *                        *

(D.I. 25) Skubik sought search warrants for: (1) a commercial address identified as

defendant's residence and workplace ("the concrete business"); and (2) the contents of

a Yahoo Internet account assigned to defendant.[7]

The affidavits stated that defendant was convicted of unlawful sexual contact 2d

with minors (aged 11 and 10) on two occasions (June 1998 and April 2005). (D.I. 25 at

10) The affidavits detail information provided by two witnesses who reported having

seen defendant access child pornography on a computer located at the business. More

specifically,

> [i]n October of 2008, the Delaware State Police Sex Offender Registry Unit
> received a tip that defendant, a registered sex offender, was viewing child
> pornography on the internet. The information provided was that defendant
> was viewing the child sexual exploitation images while at the concrete
> business . . .
> [M]otor vehicle records show that defendant resides at [the concrete business].
>        *        *        *
> Det. R. Jones of the DSP Offender Unit followed up the above information.
> He as able to contact two co-operating individuals ("the CIs") that are familiar
> with the concrete business. . . .
> CI-1 advised that he/she saw defendant viewing child pornography on
> multiple occasions on the concrete business computer. He/she described the
> females he/she saw were between the ages of 16 and 18 years of age.

_____

"Visual depiction" includes, but is not limited to:

(1) Any image which is recorded, stored or contained on or by developed or
undeveloped photographic film, motion picture film or videotape; or
(2) Data which is stored or transmitted on or by any computer, or on or by any
digital storage medium or by any other electronic means which is capable of
conversion into a visual image; or
(3) Any picture, or computer-generated image or picture, or any other image
whether made, stored or produced by electronic, digital, mechanical or other
means.

11 Del. C. § 1103(g).

[7]The factual averments contained in the affidavits filed in support of the search
warrant applications are the same in all material respects.

13

CI-2 advised that the concrete business purchased a laptop for defendant because an employee complained about his/her computer crashing due to the pornographic material defendant continually viewed. CI-2 stated that he/she had seen images of females between the ages of 12 and 15 years on defendant's computer. He/she said that the images were not from a website but appeared to have been sent to defendant via email.
CI-2 advised that defendant was planning a month long trip to the Phillippines to leave in December of 2008 and return in January 2009, so he purchased a digital camera which holds approximately one and a half hours of video. CI-2 advised that defendant told him/her that he had dates from females arranged to fill his trip to Phillippines. Defendant advised that he was going to return to the United States on January 14, 2009.

(D.I. 25 ex. 2 at 11)

The affidavit further identified defendant's email address and noted that Yahoo,

Inc. produced business records confirming the email address and that it was registered

to defendant. Verizon also produced business records verifying an IP address used to

access defendant's Yahoo account on December 8, 2008 was assigned to an Internet

service account registered to the concrete business address. (*Id.* at ¶ 12; ex. 2 at ¶ 13)

Moreover, Skubik averred that agents from the Department of State and

Department of Homeland Security had confirmed that, on January 13, 2009, defendant

was located in the Philippines, although his exact location was unknown because

defendant had "moved from motel to motel several times." (*Id.* at ¶ 13; ex. 2 at ¶ 14)

The affidavit further stated that defendant had changed his sex offender registry

address to "Belen Street in Philippines." (*Id.* at ¶ 14; ex. 2 ¶ 15)

Also included in the affidavits was a term and definition section wherein "child

erotica" was defined as

often a very close relative to child pornography. Generally, if the child depicted in the image(s) is not nude, but is scantily clothed, posed provocatively, or otherwise posed in a fashion obviously intended to arouse, but not blatant (sic) displaying genitalia, it is classified as

14

erotica. NCMEC (Federally Funded National Center for Missing and Exploited Children) and other jurisdictions, depending on the individual taking the report, often classify an image as erotica if the child is merely posing nude and there is no overt sexual contact with the genitals or the child or another.

(*Id.* at 19; ex. 2 at 13) Further, in the items to be searched and seized portion of the search warrant application, evidence of child pornography was defined broadly to include:

Any printed material, writing, document, publication, paper, image or picture representing, portraying or implying sexual activity with a child less than 18-years-of-age or any such document portraying children who are nude, semi-nude or other erotic or semi-erotic conditions.

(*Id.*, ex. 1 at 117 § 8)

As a result of the execution of the search warrant on the concrete business, law enforcement seized numerous items, including a laptop computer which contained child pornography and was, allegedly, used by defendant. In response to the second search warrant, Yahoo, Inc. provided information about defendant's email account, including his use of said account. As a result of these searches, law enforcement discovered the name and address of an adult female whom defendant visited during his trip to the Philippines in December 2008 to January 2009.

Defendant asserts that the search warrant affidavits did not provide the judge with a substantial basis for concluding that the unidentified tipster and the two CIs were truthful and reliable and that they actually saw defendant viewing child pornography. Defendant also requests a *Franks* hearing to challenge the truthfulness of factual statements made in the affidavits and to determine whether said statements were expanded without foundation by the law enforcement officers. (D.I. 20, 28)

15

## B. Standard of Review

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.  The threshold requirement for issuance of a warrant is probable cause. *Illinois v. Gates*, 462 U.S. 214, 236.  In reviewing a search warrant application, a judge must consider whether, considering all of the circumstances described in the affidavit, sufficient evidence has been presented that demonstrates that there is a "fair probability" that evidence of a crime will be located before validating a warrant. *Id.* at 238; *United States v. Ritter*, 416 F.3d 256, 262-63 (3d Cir. 2005). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

After a search warrant has been issued and is challenged on the basis of probable cause, the reviewing court must determine whether the judicial officer had a "substantial basis" for finding probable cause. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *Ritter*, 416 F.3d at 264.  The decision of the issuing officer should be afforded great deference. *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002); *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).  However, the reviewing court should not "simply rubber stamp a magistrate's conclusion." *United*

16

States v. Mortimer, No. 03-4174, 2005 WL 318650 at *1 (3d Cir. Feb. 10, 2005)

(quoting United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983)).

The reviewing court does not conduct a de novo review and should avoid

"interpreting affidavits in a hyper-technical, rather than a common sense manner."

Gates, 462 U.S. at 236 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

In so doing, the court must confine itself to only the affidavit and cannot consider other

portions of the record. Hodge, 246 F.3d at 305. When resolving questionable cases,

the deference given warrants should prevail. United States v. Jones, 994 F.2d 1051,

1055 (3d Cir. 1993).

"Direct evidence linking the residence [to be searched] to a criminal activity is not

required to establish probable cause" for a search warrant. United States v. Burton,

288 F.3d 91, 103 (3d Cir. 2002); United States v. Whitner, 219 F.3d 289, 297 (3d Cir.

2000). "[A]n accumulation of circumstantial evidence" can be sufficient to establish a

fair probability that evidence of criminal activity is present at a residence. Burton, 288

F.3d at 103. With regard to drug cases, the Third Circuit has explained:

> [E]vidence associated with drug dealing needs to be stored somewhere,
> and . . . a dealer will have the opportunity to conceal it in his home. After
> all, a dealer logically could conclude that his residence is the best, and
> probably the only, location to store items such as records of illicit
> activity, phone books, address books, large amounts of cash, assets
> purchased with the proceeds of drug transactions, guns to protect drugs
> and cash, and large quantities of drugs to be sold.

Whitner, 219 F.3d 289, 298.

Considering this authority in light of the affidavits submitted in support of the

searches of the concrete business and the Yahoo account, the court concludes that

17

there was a substantial basis for finding probable cause. Significantly, the affidavits explained that defendant, a twice convicted sex offender, was observed viewing and accessing child pornography on a computer located at the concrete business where he worked and resided. These CIs were knowledgeable of the concrete business and had personal interactions with defendant. Further, one of the investigating detectives knew the CIs and the information each provided was corroborated by the other or by independent means, to wit, CI 1 observed defendant viewing female children between the ages of 16 and 18 and CI 2 stated that he/she witnesses defendant accessing pornographic images of females between the ages of 12 and 15. The court finds the slight difference in the ages described by the CIs inconsequential.

Moreover, the information provided by CI 2 regarding defendant's trip to the Philippines was confirmed by the Department of State and Department of Homeland Security. The information regarding defendant's Yahoo email account was likewise corroborated by business records produced by Yahoo, Inc. and Verizon.

With respect to defendant's contention that the descriptions of the images were insufficient to establish probable cause that defendant was violating state child pornography laws because there are no allegations of nudity, sexual contact, or lascivious exhibition of the genitals or pubic area, the court finds that the totality of the circumstances still provided a substantial basis for the judge's finding of probable cause. *United States v. Dennington*, No. 01:07CR43, 2009 WL 2591763, at *21 - 22 (W.D. Pa. Aug. 21, 2009) (court found agent's affidavit when "read in a holistic, practical and non-technical manner" provided a substantial basis for the magistrate's

18

determination that there was probable cause to believe there was pornographic material on defendant's computer).

## C. Good Faith Reliance

Alternatively, even if the court concluded that the issuing court did not have a substantial basis for finding probable cause, that fact alone is insufficient to mandate the "extreme sanction of exclusion." *United States v. Leon*, 468 U.S. 897, 926 (1984). The good faith exception to the exclusionary rule "instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority' even though no probable cause to search exists." *Zimmerman*, 277 F.3d at 436 (quoting *Hodge*, 246 F.3d at 307). The Supreme Court's "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral" judge compels the decision that such evidence should be admissible. *Leon*, 468 U.S. at 913. The Supreme Court has held that a "warrant issued by a [judge] normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 922.

The Third Circuit has identified four situations where an "officer's reliance on a warrant would not be reasonable and would not trigger" the good faith exception:

(1) Where the [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) Where the [judge] abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

19

*Zimmerman*, 277 F.3d at 436-37.

Considering each affidavit against *Leon* and its progeny, it was objectively reasonable for the officers to rely on the issuing judge's determination that probable cause existed.

## D. Franks Hearing

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that the Fourth Amendment requires that an evidentiary hearing be held to examine the truthfulness of a search warrant affidavit if a defendant first makes a "substantial preliminary showing" that: (1) the affidavit contains a material misrepresentation; (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth; and (3) the allegedly false statement was material to the finding of probable cause. *Id*. at 155-56. There are several factors for the court to consider in determining whether defendant has established a "substantial preliminary showing" for a *Franks* hearing:

[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.

*Id*. at 171. The requirement of a substantial preliminary showing is intended to prevent the misuse of a veracity hearing for purposes of discovery or obstruction. *Id*. at 170-71.

20

Considering this authority in light of defendant's arguments, the court finds that he has not made the substantial preliminary showing necessary to support a *Franks* hearing. Significantly, defendant has not presented allegations that amount to an offer of proof contradicting the affidavits. Instead, defendant speculates that, because relevant evidentiary details (e.g., nudity, sexual contact, lascivious exhibition of genitals or pubic area) regarding the images seen on defendant's computer monitor are missing from a police memorandum, the "author of the memorandum recited the details provided by the informants, and then characterized the images as 'child pornography' and 'child sexual exploitation images.'" (D.I. 28 at 4; D.I. 23 ex. C) Consequently, defendant submits, the investigator gave the judge a false impression of the images that the investigator knew was essential to the granting of the search warrant.

The police memorandum contains specific information regarding defendant's personal life, including his penchant for Russian and Asian looking girls and a trip he made to Russia to pick up his new wife as a "mail order bride." (D.I. 20, ex. C at 00000076-77) Defendant also brought his new wife's minor daughter back to the United States, subsequently molested the daughter and prostituted his wife. (*Id.*) The memorandum details defendant's two prior sex offenses and registration as a Tier III sex offender. Defendant's more recent, alleged, illicit activities were brought to the attention of law enforcement by an unidentified tipster, who observed defendant viewing child pornography at the concrete business. Further in the police memorandum are references to informants witnessing defendant viewing "pornographic pictures," viewing pictures of girls between the ages of 12-15 sent to him via email, accessing a website

21

called cherryblossom.com and defendant viewing the computer with his pants down. (*Id.* at 00000077) There is also information provided by the concrete business secretary complaining that defendant, while using her computer, downloaded large amounts of pornographic pictures causing the computer to crash. Although the pornographic images are not specifically described, this does not rise to the level of a "substantial preliminary showing of intentional or reckless falsity on the part of the affiant" for defendant to "have a right to an evidentiary hearing on the affiant's veracity." *United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993).

## IV. CONCLUSION

For the reasons stated, defendant's motions are denied. An appropriate order shall issue.

22