# Exhibit F

**McAndrew, Ed (USADE)**

| | |
|---|---|
| **From:** | Henderson, Robert (USMS) <Robert.Henderson@usdoj.gov> |
| **Sent:** | Monday, November 03, 2014 2:37 PM |
| **To:** | McAndrew, Ed (USADE) |
| **Subject:** | RE: send info here |

A query of our court schedule, indicates that PAVULAK was transported in by Salem Sherriffs at 0830 and the trial day started at 0930. The Control Log book notes that PAVULAK was taken up to Judge Robinson's Courtroom 4b at 0920.

**From:** McAndrew, Ed (USADE) [mailto:Ed.McAndrew@usdoj.gov]
**Sent:** Monday, November 03, 2014 2:03 PM
**To:** Henderson, Robert (USMS)
**Subject:** RE: send info here

Rob,

I'm looking for movements of the following defendant between the lock up and Judge Robinson's courtroom on the following date:

Paul Pavulak
Trial before Judge Sue L. Robinson
Monday, September 20, 2010
Proceedings commenced at 9:19 a.m.

Thanks.

Ed

Edward J. McAndrew
Assistant United States Attorney
Cybercrime Coordinator
U.S. Attorney's Office
District of Delaware
1007 Orange Street, Suite 700
Wilmington, Delaware 19801
Desk: (302) 573-6150
Cell: (302) 723-1854
ed.mcandrew@usdoj.gov

**From:** Henderson, Robert (USMS) [mailto:Robert.Henderson@usdoj.gov]
**Sent:** Monday, November 03, 2014 11:15 AM
**To:** McAndrew, Ed (USADE)
**Subject:** send info here

# Exhibit G

## AFFIDAVIT OF LUIS A. ORTIZ

I, Luis A. Ortiz, hereby aver as follows:

1.       I was appointed to serve as counsel to Defendant Paul E. Pavulak in *United States v. Pavulak*, No. 09-43-SLR.  I represented Mr. Pavulak through his trial and sentencing.

2.       I have read Mr. Pavulak's Motion to Vacate Under 28 U.S.C. § 2255, and the portion of the Memorandum asserting that the jury selection process violated Mr. Pavulak's rights to participate in jury selection under the Sixth Amendment and Federal Rule of Criminal Procedure 43(a).  In particular, I have read the portion of the Memorandum asserting that:

A.       Mr. Pavulak was "excluded from the entire voir dire," Def. Mem. at 2-3;

B.       Mr. Pavulak was "not brought into the courtroom" during voir dire, *id.* at 6;

C.       I did not "consult with him" about voir dire, *id.* at 13;

D.       I "failed to make any peremptory challenges nor consult the defendant," *id.*; and

E.       Mr. Pavulak "demanded to be present during all critical stages, especially jury selection." *Id.* at 4.  I also understand that Mr. Pavulak now claims that I provided ineffective assistance of counsel based on these assertions.

3.       Mr. Pavulak's factual assertions contained in Paragraph 2 A-E are false.

4.       On the morning of September 20, 2010, Mr. Pavulak was brought into the courtroom and seated at the defense table with me just after proceedings began.

5.       Mr. Pavulak sat at the defense table as the Court explained how it intended to conduct voir dire by reading all the questions in the courtroom and then interviewing each juror in the jury room with counsel present.  Because a number of questions were sensitive and the individual interviews would take an extended period of time, I agreed to the Court's approach.

6.      I conferred with Mr. Pavulak about this process.  I advised him that it was best that he not accompany the lawyers into chambers for individual voir dire.  Mr. Pavulak expressed no objection to this approach.

7.      Mr. Pavulak was present when the panel members were brought into the courtroom.  The Court briefly summarized the case, introduced the parties and read each question to the panel in open court.  The Court then told the jurors that they would be called individually into the jury room to discuss any issues they had based on the questions.

8.      Individual questioning then took place in the jury room with counsel present. Following the completion of questioning, cause challenges were exercised in the jury room.

9.      We then returned to the courtroom to exercise peremptory challenges and empanel the jury.  Mr. Pavulak was present in the courtroom during this process.  My co-counsel and I conferred with Mr. Pavulak about particular jurors, and shared information that we had learned during the individual questioning with Mr. Pavulak.

10.     With Mr. Pavulak's input, we exercised all ten of the peremptory challenges afforded to the defense.

11.     After all peremptory challenges were exercised, the Court asked the selected jurors to take their seats in the jury box.  Mr. Pavulak was present in the courtroom.  The clerk then swore in the jury.  Mr. Pavulak did not object to the jury selection process at any point before the swearing in of the jury.

Dated:  January 2, 2014

_Luis A. Ortiz_
Luis A. Ortiz

# Exhibit H

## Juror Notified to Appear
## In U. S. District Court

Page 1 of 3

Time Panel Sent __9:45 AM__

| | |
|---|---|
| Before Honorable | Sue L. Robinson |
| Courtroom Deputy | Larisha Davis |
| Case Title | USA VS. PAUL PAVULAK |

| | |
|---|---|
| Panel # | 09CR43 |
| Courtroom | 4B |
| Date | 09/20/2010 |

SEALED

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 1 | P | | | | | |
| 2 | | D | | | | |
| 3 | | | C | | | |
| 4 | | | | | NS | |
| 5 | | | C | | | |
| 6 | | | | S | | |
| 7 | | | C | | | |
| 8 | | | | | | A |
| 9 | | | C | | | |
| 10 | | | C | | | |
| 11 | | | C | | | |
| 12 | | | C | | | |
| 13 | | | | S | | |
| 14 | | | C | | | |
| 15 | | | C | | | |

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 16 | | | | | | A |
| 17 | | D | | | | |
| 18 | | | C | | | |
| 19 | | | C | | | |
| 20 | | | | | NS | |
| 21 | | | C | | | |
| 22 | | | | | | A |
| 23 | | | | | | A |
| 24 | | | C | | | |
| 25 | | | | S | | |
| 26 | | | | | NS | |
| 27 | | D | | | | |
| 28 | | D | | | | |
| 29 | | | C | | | |
| 30 | | | | S | | |
| 31 | | | C | | | |

Subtotal

Total Appearing

Challenged
P = for plaintiff
D = for defendant
C = for cause

S = Selected as trial juror
NS = Not Selected, not Challenged
A = Absent

Impanelment starting time __9:45__ ending time __5:55 pm__.

if panel was not used, please check one of the following:

_____ plea                      _____ other (explain) _____
_____ settlement
_____ dismissed
_____ waiver of jury trial

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 32 | P | | | | | |
| 33 | | | C | | | |
| 34 | | | C | | | |
| 35 | | | C | | | |
| 36 | | | C | | | |
| 37 | | | | S | | |
| 38 | | | C | | | |
| 39 | | | C | | | |
| 40 | | D | | | | |
| 41 | | | | | | A |
| 42 | | | C | | | |
| 43 | | | | S | | |
| 44 | | | C | | | |
| 45 | | | C | | | |
| 46 | | | | S | | |
| 47 | | | | | | A |
| 48 | P | | | | | |
| 49 | | D | | | | |
| 50 | P | | | | | |
| **Subtotal** | | | | | | |
| **Total Appearing** | | | | | | |

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 51 | | | | S | | |
| 52 | | | C | | | |
| 53 | | | C | | | |
| 54 | | | C | | | |
| 55 | P | | | | | |
| 56 | | | | | | A |
| 57 | | | | | NS | |
| 58 | | | C | | | |
| 59 | | | | | | A |
| 60 | | | | | NS | |
| 61 | | D | | | | |
| 62 | | | C | | | |
| 63 | | | | S | | |
| 64 | | | | S | | |
| 65 | | | C | | | |
| 66 | | | C | | | |
| 67 | | | | | | A |
| 68 | P | | | | | |

Challenged
P = for plaintiff
D = for defendant
C = for cause

S = Selected as trial juror
NS = Not Selected, not Challenged
A = Absent

Impanelment starting time _____ ending time _____
if panel was not used, please check one of the following:

_____ plea                    _____ other (explain) _____
_____ settlement              _____
_____ dismissed               _____
_____ waiver of jury trial    _____

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 69 | | | C | | | |
| 70 | | | | S | | |
| 71 | | | | S | | |
| 72 | | D | | | | |
| 73 | | | C | | | |
| 74 | | | C | | | |
| 75 | | | | | | A |
| 76 | | | | | NS | |
| 77 | P | | | | | |
| 78 | | | C | | | |
| 79 | | D | | | | |
| 80 | | | C | | | |
| 81 | | | | | NS | |
| 82 | | | | | NS | |
| 83 | | | C | | | |
| 84 | | D | | | | |
| 85 | | | | | | A |
| 86 | | | | S | | |
| 87 | | | C | | | |
| **Subtotal** | | | | | | |
| **Total Appearing** | | | | | | |

| | Challenged | | | | | |
|---|---|---|---|---|---|---|
| | P | D | C | S | NS | A |
| 88 | | | | | NS | |
| 89 | | | C | | | |
| 90 | | | C | | | |
| 91 | | | C | | | |
| 92 | | | | | | A |
| 93 | | | | S | | |
| 94 | | | | | | A |
| 95 | | | | | | A |
| 96 | | | | | NS | |
| 97 | | | C | | | |
| 98 | | | | | | A |
| 99 | | | | | | A |

Challenged
P = for plaintiff
D = for defendant
C = for cause

S = Selected as trial juror
NS = Not Selected, not Challenged
A = Absent

Impanelment starting time _____ ending time _____
if panel was not used, please check one of the following:

_____ plea                      _____ other (explain) _____
_____ settlement                _____
_____ dismissed                 _____
_____ waiver of jury trial      _____

# Exhibit I

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| IN THE MATTER OF: | { | |
| Paul Pavulak, DOB | { | SS:   New Castle County |
| 270 Quigley Blvd. | { | |
| New Castle De 19720 | { | **GREETINGS** |

| *STATE OF DELAWARE* | DATE OF APPLICATION | COMPLAINT NO: |
| *COUNTY OF New Castle* | 01/13/2008 | 02-08-120456 |

THE STATE OF DELAWARE TO:

| Det. Nancy Skubik | OF | Delaware State Police, ICAC Task Force |
| | OF | |

With the assistance of any police officer or constable or any other necessary or proper person or persons or assistance.

**GREETINGS:**
Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely:

**ITEMS TO BE SEARCHED FOR AND SEIZED:**

1. Enter and search the residence as completely described for evidence of aforementioned crime(s), to include evidence of Child Pornography and/or Sexual Child Exploitation.

2. Search the following location within the residence described above to include but not limited to: any outbuilding, locked or unlocked safety boxes, bags, compartments, storage areas or things in the nature thereof, found in or upon said residence that could be used to contain evidence of Child Pornography.

3. Search any vehicle owned by or operated by Paul Pavulak/ or Concrete Technology Resurfacing & Design, Inc. that could be used to contain evidence of Child Pornography.

4. Any personal computer, computer system, device or component to include desktop(s), laptop(s), notebook(s), PDA(s), or tower style, systems capable of storing, retrieving, and/or processing electronic digital or optical data and in particular any such devices capable of connecting to or communicating with the Internet or Internet Service Providers by any means including dial-up, broadband or wireless services.

5. Any digital or optical data storage device connected to, capable of being connecter to, read by or capable of being read by, any item described in paragraph 4, to include: internal or external hard drives (found within or without any item seized pursuant to paragraph 1), mass storage devices, pen drives, smart cards, compact disks, compact disk-recordable ® or re-writable (RW), floppy diskettes, DVD+/- R or RW, or any other such device that stores digital data optically, electronically or magnetically.

6. Any digital camera, digital video camera, optical camera, optical video camera, cell phone or other device capable of capturing and storing to any media, photographs or images and associated media there from.

7. Any and all data, and the forensic examination thereof, stored by whatever means on any items seized pursuant to paragraphs 4, 5, and 6, as described above to include but not limited to: pictures, images, temporary internet files, internet history files, chat logs, writing, passwords, user names, buddy names, screen names, email, connection logs, communications of any nature which are with or appear to involve contact with any juvenile and in particular pre-pubescent/adolescent children, or images of children.

8. Any printed material, writing, document, publication, paper, image or picture representing, portraying or implying sexual activity with a child less than 18-years-of-age or any such document portraying children who are nude, semi-nude or other erotic or semi-erotic conditions.

Greetings Page 1 of 2

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | | SEARCH WARRANT |
|---|---|---|---|
| IN THE MATTER OF: | { | | |
| Paul Pavulak, DOB | { | SS: | New Castle County |
| 270 Quigley Blvd. | { | | |
| New Castle De 19720 | { | | **GREETINGS** |

**Used or intended to be used for:**
Evidence of the crimes specified herein and identification of those involved is being concealed on the (premises) (person) described in the annexed affidavit and application or complaint.

NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the date hereof to search the above-named person, persons, house, conveyance or place for the property specified in the annexed affidavit and application and to search any occupant or occupants found in the house, place, or conveyance above named for such property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched is not a dwelling house, and, if the property, papers, articles or things, or any part thereof, be found there, to seize it, giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken, and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they are present, or if the person or persons are not present, in the presence of at least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith...

DATED the ___13th___ day of _____January_____, A.D. 2009

_____
(Judge or Justice of Peace)

JAMES T. VAUGHN, JR
PRESIDENT JUDGE, SUPERIOR COURT
(Designate name, title, and court)

_____
Jan 13 2009
(DATED)

Greetings Page 2 of 2

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| IN THE MATTER OF: | { | |
| Paul Pavulak | { | SS: New Castle County |
| 270 Quigley Blvd | { | |
| New Castle, DE 19720 | { | **APPLICATION AND AFFIDAVIT** |

| | | |
|---|---|---|
| **STATE OF DELAWARE** | **DATE OF APPLICATION** | **COMPLAINT NO:** |
| **COUNTY OF New Castle County** | 01/13/2009 | 02-08-120456 |

*Be it remembered that on this* _____ 13th _____ *day of* January, *A.D.* 2009, *before me*

(Authority) JAMES T. VAUGHN JR. PRESIDENT JUDGE SUPERIOR COURT
                                                                              of DELAWARE

**NAME (S) OF AFFIANT (S)**

Det. Nancy Skubik      **OF**      Delaware State Police, Child Predator Task Force
                                   **OF**

...personally appeared and being duly sworn (affirmed) according to law, depose (s) and say (s) that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure and is located at particular premises or places or in the possession of particular person(s) as described below.

**ITEMS TO BE SEARCHED FOR AND SEIZED:**

1. Enter and search the residence as completely described for evidence of aforementioned crime(s), to include evidence of Child Pornography and/or Sexual Child Exploitation.

2. Search the following location within the residence described above to include but not limited to: any outbuilding, locked or unlocked safety boxes, bags, compartments, storage areas or things in the nature thereof, found in or upon said residence that could be used to contain evidence of Child Pornography.

3. Search any vehicle owned by or operated by Paul Pavulak or Concrete Technology Resurfacing & Design, Inc or could be used to contain evidence of Child Pornography.

4. Any personal computer, computer system, device or component to include desktop(s), laptop(s), notebook(s), PDA(s), or tower style, systems capable of storing, retrieving, and/or processing electronic digital or optical data and in particular any such devices capable of connecting to or communicating with the Internet or Internet Service Providers by any means including dial-up, broadband or wireless services.

5. Any digital or optical data storage device connected to, capable of being connected to, read by or capable of being read by, any item described in paragraph 4, to include: internal or external hard drives (found within or without any item seized pursuant to paragraph 1), mass storage devices, pen drives, smart cards, compact disks, compact disk-recordable ® or re-writable (RW), floppy diskettes, DVD+/- R or RW, or any other such device that stores digital data optically, electronically or magnetically.

6. Any digital camera, digital video camera, optical camera, optical video camera, cell phone or other device capable of capturing and storing to any media, photographs or images and associated media there from.

7. Any and all data, and the forensic examination thereof, stored by whatever means on any items seized pursuant to paragraphs 4, 5, and 6, as described above to include but not limited to: pictures, images, temporary internet files, internet history files, chat logs, writing, passwords, user names, buddy names, screen names, email, connection logs, communications of any nature which are with or appear to involve contact with any juvenile and in particular pre-pubescent/adolescent children, or images of children.

8. Any printed material, writing, document, publication, paper, image or picture representing, portraying or implying sexual activity with a child less than 18-years-of-age or any such document portraying children who are nude, semi-nude or other erotic or semi-erotic conditions.

00000117

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| STATE OF DELAWARE | { | **SEARCH WARRANT** |
| IN THE MATTER OF: | { | |
| Paul Pavulak | { | **SS:**   New Castle County |
| 270 Quigley Blvd | { | |
| New Castle, DE 19720 | { | **APPLICATION AND AFFIDAVIT** |

**SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE (S) AND / OR VEHICLES (S) AND / OR PERSON (S) TO BE SEARCHED:**

1. The business is located at 270 Quigley Blvd, New Castle DE 19720, it is in Airport Industrial Park. It is a tan single story commercial style building containing several independent areas for business. The business door has the numbers 270 on the right side of the frame. To the right of the business door, there is a sign that says CT, I for Concrete Technology, Inc.

2. A 1996 Ford Taurus, green in color, with Delaware Registration

   DMV shows this vehicle is registered to Paul E. Pavulak, DOB            , registered at 270 Quigley Blvd. New Castle 19720

**NAME OF OWNER (S), OCCUPANT (S) OR POSSESSOR (S) OF PREMISES AND / OR PLACE (S) AND / OR VEHICLE (S) AND/OR PERSON (S) TO BE SEARCHED:**

The above property is owned, leased or occupied by: Concrete Technology Resurfacing & Design, Inc.

Property Leased by: Concrete Technology Resurfacing & Design, Inc.

Owner of Business: Paul E. Randall and Guinevere Kunkel

**VIOLATION OF (Describe Conduct or Specify Statute):**

1. Dealing in child pornography Title 11 § 1109

Application Page 2 of 2

00000118

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { SS: | New Castle County |
| New Castle DE 19720 | { | |
| | { | AFFIDAVIT OF PROBABLE CAUSE |

*The facts tending to establish probable cause for believing that the foregoing grounds for the application exist are as follows:*

## Affiant and Co-Affiant:

1. Your affiant, Detective N. Skubik, is a sworn member of the Delaware State Police and is currently assigned to the Delaware Child Predator Task Force. Your affiant has been employed by the Delaware State Police since October of 1998 and has served in the Uniform Patrol Division at Troop 6 for five years and as a Detective in the Criminal Investigations Unit at Troop 2 for four years.

## Terms and Definitions:

- **Chat** – Chatting is a popular form of instant text messaging by means of computer. Various forms exist but in general, websites hosting chat services establish chat servers (relay computer) using specific chat software applications that users around the Country or around the world may login, type a text message, which upon sending (hitting the enter key) is transmitted to the others using the service to view in near real time.

- **Chat Applications** – Many programs have been developed and are available for free or at minimal cost to achieve interconnection of computers allowing chat. IRC or internet relay chat is a specific type which uses a large number of servers around the world and is largely unregulated since it is not actually owned by a group or company. AOL-IM, Yahoo Chat, MSN Messenger, and MS Net Meeting are just a few of the common applications. There are also Java script based web-chats that are found on various websites.

- **Chat rooms** – Interest groups – that are groups named for a special interest or hobbies are set up either by the hosting web site or just as often, by member users. Referred to as a room or channel, it is the relative equivalent of a specific interest TV channel such as the history channel or the cooking channel. The difference being that anyone logging into that "room" will find other people interested in the same topic and are able to intercommunicate with the group. All communication in a channel is public and can be viewed by all members within that channel.

- **CHILD EROTICA:** Child erotica is often a very close relative to Child Pornography. Generally, if the Child depicted in the image(s) is not nude, but is scantily clothed, posed provocatively, or otherwise posed in a fashion obviously intended to arouse, but not blatant displaying genitalia, it is classified as Erotica. NCMEC and other jurisdictions, depending on the individual taking the report, often classify an image as erotica if the child is merely posing nude and there is no overt sexual contact with the genitals of the child or another.

- **Cookies** – Small Data files that are used by internet browser software to help in the navigation of the internet. They may be placed on a computer at the time a person first looks at a particular website, or they may be placed on the local computer for a single session. They often store user selected preferences, but may also collect data about the local computer.

- **Data** – Electronically stored information which may consist of files, collections of files, programs, or applications, or varying amounts of all. Data is what the user interacts with on their computer monitor, but just as often, the electronically stored data is never seen by the user.

- **Dial-Up** – One type of connectivity where in a person wanting to browse the internet, utilizes a modem and software to literally "Dial-Up" another computer provided by an Internet Access Provider. Dial-Up modems generally the slowest communication device, but they are also the most common, using ordinary telephone lines to allow Internet Access to the user.

- **File exchanges and video chat** – While using many common chat applications, it is possible for users to send or exchange files, pictures, or other digital data. Likewise, many cat applications include a facility for video chat, which may or may not include audio transmissions. By combining text, video and audio, users are able to read, hear and see other persons within the room or within private messaging.

00000119

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County**

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { **SS:** | New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

- **Files, Folders and storage of Data** – Data that is "saved" on a computer system is always held in a hierarchical electronic filing system. The data that makes up what the end user sees on the screen as files (a single item) or a folder (a collection of files). The user can, in some cases, be prompted to offer names for data they save, and to save them in specific locations within the virtual filing system. The computer however, determines where on the physical drive the files will actually be stored on the physical media. Some files the user has no control over, and they save or delete themselves according to pre-programmed instructions and commands.

- **Groups and Communities** – Yahoo, MSN, GeoCities, and many other non-subscription or "free" Internet Content Providers maintain Groups or Communities. Each has its own terminology but they all work in the same fashion. Registered Users of the service can access the Groups area of the ICP and either join an existing group, or they MAY choose to start their own. Each group is intended to attract other internet users that have SIMILAR INTERESTS. In most cases, and there are thousands of Groups and Communities in hundreds of categories (there are 31868 Yahoo Groups in the SUPPORT Category alone), the stated interests are legitimate and serve useful purposes for those choosing to use them. Groups are formed for entertainment such as hobbies: 'model ship builders' or 'momsBestrecipes'. In other cases, they are for "virtual support groups: 'women surviving cancer' or 'depression-anxiety' 'stuttering chat' etc. In other cases, the purpose is less useful and sometimes unlawful. Just as people who need support for a stuttering disorder can find each other in a relatively anonymous and safe setting, so to can individuals interested in exchanging images of children, enticing children for sex, and various other dangerous and illegal activities. Generally, a user starts a group and gives it a name which fairly well indicates the intent or interest. To further clarify it, they add a Group Description and keywords that can be aids to search engines. The owner or administrator (usually the person that starts the group) can then set permission parameters, access and membership rules, and most importantly, who is accepted into the group, who is rejected from the group, and who is ejected from the group. They can promote a user to have "Moderator" status, which means they have administrative rights to some extent. In most cases, all members can and are encouraged to upload files for other members of the group to share. The moderator often has the permission set to have all files sent to them first for review. Once the moderator or owner reviews the file content, they can approve it for release to the general membership. Until they release it, others may not be able to see it or retrieve it from the web.

- **Hard Drives and Storage Media** – Hard drives refer to mass volume storage media that allow electronic data to be written to and stored on the hard (non flexible) disk or disks that are contained inside a structural protective casing. Electronic storage media however, come in many other forms, including 3 ½" diskettes which have low volume capacity but are highly transportable, to DAT (Digital Audio Tape) Compact Disks, and DVD's. Whatever the form, they all have the singular purpose of capturing electronic data written to their surface, for safe retrieval at a later time.

- **Hashing** – Hashing, sometimes thought of as an Electronic DNA, refers to the process electronically evaluating computer files and mathematically calculating a "virtual serial number" unique to that file. Using mathematical algorithms, such as the MD5 or SHA32, computer programs "look" at each bit of the file and calculate a numeric weight to provide an aggregate hexadecimal number. If ANY single bit of the file is changed, no matter how slight and no matter how large the file, the Hash Number or "virtual serial number" will be completely different. The permutations of the algorithmic output are so large as to make it impossible for any two files which are not EXACTLY THE SAME to have the same hash result.

- **High Speed Access** – Also referred to as High Bandwidth, High speed access systems come in several varieties, most common to home or residential service are DSL, Cable, and Satellite. DSL (Digital Subscriber Line) is provided via telephone line, Cable, as the name implies uses Cable Television systems, and satellite is provided by Satellite TV systems such as Direct TV. High Speed is measured in comparison to Dial-up services which operate at maximum transfer speeds of 56Kb (56,000 bits per second). DSL advertise speeds of 1.5 Million bits per second (which has an effective throughput of about 350,000 bits per second) and Cable claims speeds of 3 million bits per second but in reality has an effective throughput much closer to DSL. This means that file sharing and transfer, including web browsing and video viewing is much easier, faster, and smoother than the old dial-up services.

00000120

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { | SS:     New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

- **IM or PC** – Refers to Instant Messaging or Private Chat. Unlike a chat room, IM or PC is text messaging but occurs only between two individuals and is not seen by others in a chat room. Depending on the software application, a completely separate chat window may be used to facilitate the private messaging between the participants. IM is actually a brand name started by America-On-Line and refers to their proprietary software AOL Instant Messenger. Most chat software has a similar facility for private communications.

- **Internet/Computer Networks** – The Internet, like all networks, is a compilation of computers, all interconnected, to allow users access to some or all of the data stored on one computer in the system from any other computer in the system. The internet is not an actual entity, as it is continuously adding and removing computer systems, and it is not controlled or owned by anyone person or entity. The internet is a basically infinite concept, where basic rules for intercommunication are agreed upon so that computers can be standardized. A Local Network, such as those found in offices, is privately owned (as a rule), they are controlled by their owners (administrators), and access is restricted to a finite number of people (as a rule).

- **IP Address** – IP refers to an Internet Protocol, or a specific recognition locator number assigned by computers to computers, so that they may effectively communicate via the internet. This number or range of numbers, are assigned to a domain when that domain is registered. There are several types of IP Numbers (i.e. Dynamic or Static) but in the end, they identify the computer or the computer system to the rest of the network.

- **I.S.P – Internet Service Provider:** This is the commercial retailer who permits access to the internet by renting out the IP's and domain access that they have purchased and registered. ISP includes companies such as AOL, Earthlink, and other such services.

- **Modems** – One type of communication device found in many small computer systems that allows interconnectivity and communications with other computer systems.

- **NCMEC** – Acronym for the Federally Funded National Center for Missing and Exploited Children. NCMEC is designated by U.S. title 18 and the U.S. Department of Justice as the Central Reporting Point for all ISP providing information to Law Enforcement about illegal on-line activity involving children. ISPs are required under federal law to report ANY criminal activity involving children including possession, receipt, or distribution of Child Pornography, Solicitation of Children for Sex, or Abuse. NCMEC then disperses the complaint to one of the Regional "I.C.A.C."s (Internet Crimes Against Children) which are direct law-enforcement. In Delaware, the Maryland State Police maintain the ICAC center. The ICAC then determines proper jurisdiction and directs the complaint to local law-enforcement for investigation. Because Delaware has a High Tech Crimes Unit, NCMEC and ICAC provide direct access to the complaints via the NCMEC Secure VPN (Virtual Private Network).

- **Password/Access** – Passwords are methods of controlling network access. Most systems restrict access to their system and by allowing passwords, they can control level of access rights (certain user name/passwords combinations have greater or lesser amounts of access) as well as preventing non users from accessing their system at all. Passwords do not insure access in that a computer can be exploited by those with enough knowledge and desire. Passwords almost always work in conjunction with a "User ID which is not necessarily kept secret.

- **Profiles – Yahoo and other Free Content Providers** – Yahoo, MSN, and other such "Free Content" web providers permit "registered" individuals using their services to create "personal profiles". Depending on the provider, the profile may contain personal information ranging from benign to Very Sexually Explicit. The content is determined by the user posting it although it may be subject to review by the content provider to insure it does not exceed their acceptable use policy. Once posted, to varying degrees, the Profile Information is publicly available to others on the Internet who may wish to read it.

- **Screen Names** – Screen names are, as he term implies, the name that chatters self-assign for use within the chatroom so that others may contact them without compromising the user's true information and privacy. Screen names are much like vanity plates in that they often are descriptive or clever words which are easily recalled but have some meaning to the person using it. For example an elderly woman in a Gardeners chat room may call herself TexasRose70 because she is in Texas, likes roses and is 70 years old. While they are fictitious names, they are often traceable to an individual by law enforcement because they are registered with the chat host when the name is created.

00000121

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | ( | SEARCH WARRANT |
|---|---|---|
| Paul Pavulak, DOB | ( | |
| 270 Quigley Blvd | ( SS: | New Castle County |
| New Castle DE 19720 | ( | |
| | ( | **AFFIDAVIT OF PROBABLE CAUSE** |

• **Social Networking Sites** – Social Networking Services or sites were originally designed to be specialized sites where people from similar organizations (i.e. schools) or with specific interests (hobbies, gaming, etc) could login and communicate with each other. In the original concept, the affiliation with a group was verified by the hosting service, making it a "safe" on-line environment. These services included sites such as Facebook.com for school students, where the user had to verify they were a student at a particular school and then they could be seen only by others in that school unless they added other friends to their friends list. It has since become far less verified, and far less safe, with sites like MySpace.com being the more popular place. Mostly used by younger demographics, users post thoughts, experiences, pictures, and information about themselves, their friends, and others.

## *Issues of Staleness Associated with computer investigations:*

The High Technology Crimes Unit provided the following information to address possible issues of staleness where the information relating to computer crimes may, in some cases, be perceived as old. Staleness issues typically preclude obtaining search warrants based on information which is subjectively too old to insure that the evidence sought is likely still in the place to be searched.

(1) Computers store vast amounts of data and based on their training and experience, Examiners assigned to the High Tech Crimes Unit can state that Data continues to reside on hard drives for months and even years after it is initially written to media. With the advent of larger capacity hard-drives, removable media, and CD/DVD burners over the past several years, the retention and therefore recovery of, data from digital media has greatly increased.

(2) Larger hard-drives, those having capacities of 30 to 400 gigabytes (giga = billion) are standard installations on computers. Typical home users often fill a relatively small portion of the drives over the entire period it is in service. Drive space is referred to as Allocated and Unallocated or Free space. Allocated refers to space occupied by live files and system resources. Unallocated or Free Space refers to space NOT currently being used, which is available or waiting to accept new data. When a file is "deleted" by the user, that space becomes "Free" and is available to accept more data. Likewise, space at the end of the drive, which is generally very large, that has never been intentionally used for storage, is referred to as Free Space. Unknown to most users however, data almost always can be found in those areas and can be forensically recovered years after it was written.

(3) Newer technology allows users with very little computer knowledge to write data to various forms of Long Term Storage Removable Media. These may include DVD (Digital Video Disks) and CD (Compact Disks). Both DVD and CD are easily hidden in relatively small areas. Despite the names implication, a DVD can and does accept digital data other than video; likewise, compact disks which are normally thought of as being associated with music and audio files can and do store digital data other than audio. The data stored on them is highly stable and not usually subject to corruption barring physical damage to the media itself. For that reason, computer users often "back-up" files to these forms of media making them available for recovery many years after being written. Users engaged in criminal activity use these same media to store the fruits and evidence of their crimes because they are easily concealed and not as subject to inadvertent discovery by others in a household or business who may have access to the computer or computer system.

00000122

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| Paul Pavulak, | { | |
| 270 Quigley Blvd | { | SS:      New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

(4)     New technology for Removable Media such as Pen Drives (very miniature USB devices sometimes called thumb drives), Compact Flash Cards, Digital Media Cards, and other similar media used in digital cameras, are designed to accept and store data in some cases up to 1 gigabyte. This is a huge amount of data that can literally be hidden inside of a matchbook. These media type are somewhat more volatile than CD or DVD, but still can and do retain data for extremely prolonged periods of time.

---

### History and Facts of the Complaint:

The statements contained in this affidavit are based in part on information provided by victims, witnesses, and other law enforcement officers, along with your affiant's experience and background as a law enforcement officer. Since this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known concerning this investigation. However, you affiant does not believe that he has excluded any fact or circumstance that would tend to defeat that establishment of probable cause. Your affiant has set forth only the facts that he believes are necessary to establish probable cause.

1. On 063098, Paul Pavulak, DOB       , pled guilty to Unlawful Sexual Contact 2nd in Superior Court. The victim was eleven at the time of the crime. On 090498, Pavulak was sentenced to four years probation.

2. One of his supervising Probation/Parole Officers, M. Ferreira authored a search warrant signed and dated March 7, 2001. In this court document, she advised that Pavulak had been permitted to travel to Russia in June and August of 2000. Officer Ferriera later discovered that Pavulak met and married a Russian he met overseas in September of 2000.

3. In April of 2005, Pavulak pled guilty to Unlawful Sexual Contact 2nd in Superior Court. The second victim was 10 at the time of the crime.

4. In October of 2008, the Delaware State Police Sex Offender Registry Unit received a tip that a Pavulak, a registered sex offender, was viewing child pornography on the Internet. The information provided was that Pavulak was viewing the child sexual exploitation images while at his son's business, Concrete Tech, Inc., located at 270 Quigley Blvd, New Castle DE 19720.

5. A check of the motor vehicle records shows that Paul Pavulak, DOB       claims to reside at 270 Quigley Blvd, New Castle DE 19720. This address is located in Airport Industrial Park.

00000123

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
|---|---|---|
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { SS: | New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

6. A check of the State of Delaware business records shows that Concrete Technology Resurfacing & Design, Inc is located at 270 Quigley Blvd, New Castle DE. The listed owners of this business are Guinevere Kunkel and Paul Randall. A check of the Delaware motor vehicle shows that Paul Edward Randall, DOB _____ has the name of Paul R. Pavulak, DOB _____ listed as an alias.

7. Det. R. Jones of the Delaware State Police Sex Offender Unit followed up the above information. He was able to contact two co-operating individuals (CI) that are familiar with the business.

8. CI-1 advised that Concrete Tech, Inc is owned by Paul Pavulak's son "Randy", Paul Randall Pavulak, and Paul Pavulak's daughter, "Gwen." CI-1advised that he/she saw Pavulak viewing child pornography on multiple occasions on a company computer. He/she described the females he/she saw were between the ages of 16 and 18 years of age.

9. CI-2 advised that the business purchased a laptop for Pavulak because an employee complained about his/her computer crashing due to the pornographic material Pavulak continually viewed. CI-2 stated that he/she had seen images of females between the ages of 12 to 15 years on Pavulak's computer. He/she said that the images were not from a website but appeared to have been sent to Pavulak via email.

10. CI-2 advised that Pavulak was planning a month long trip to the Philippines to leave in December of 2008 and return in January 2009, so he purchased a digital camera which holds approximately one and half hours of video. CI-2 advised that Pavulak told him/her that he had dates with females arranged to fill his trip to Philippines. Pavulak advised that he was going to return to the United States on January 14, 2009.

11. Pavulak recently sent an email to an employee of the business advising that he did not like the hotel he was staying at in the Philippines. His email address is Pavy224@yahoo.com. A subpoena was issued to Yahoo! to obtain subscribers information for this account. The results show that the account was created "Mr. Paul Pavy." This Internet Protocol (IP) address used by this account has been located in the Philippines from December 10, 2008 to January 6, 2009 (the date of the subpoena results).

12. The IP address that was used to access Pavy224@yahoo.com on December 8, 2008 was 72.78.122.253 which is registered to Verizon Internet. A subpoena was sent to Verizon Internet to obtain the account information for this IP address. Verizon Internet provided the following account information:

Business Name: Paul Pavulak Concrete System Repair

Customer Name: Gwen Kunkel

Affidavit of Probable Cause Page 6 of 8

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
|---|---|---|
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { SS: | New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

Account Address:  270 Quigley Blvd., New Castle DE 19720.

13. Agents from the State Department and Homeland Security have confirmed that Paul Pavulak is in the Philippines but his exact location is unknown because he has moved from motel to motel several times.

14. In December of 2008, Pavulak changed his Sex Offender Registry address to Belen Street in Philippines.

15. There is currently an active warrant for Paul Pavulak for Failure to Register a Change of Employment as a Sex Offender.

16. Your affiant respectfully requests a search warrant be granted for the search of 270 Quigley Blvd, New Castle DE 19720. The business is located in Airport Industrial Park.  It is a tan single story commercial style building containing several independent areas for business.  The business door has the numbers 270 on the right side of the frame.  To the right of the business door, there is a sign that says CT, I for Concrete Technology, Inc.

17. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located at the residence/business herein described and in violation of *11 DEL. C.* Sections 1109, relating to material involving the Dealing in Child Pornography.

Affidavit of Probable Cause Page 7 of 8

00000125

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | **SEARCH WARRANT** |
|---|---|---|
| Paul Pavulak, DOB | { | |
| 270 Quigley Blvd | { | SS:    New Castle County |
| New Castle DE 19720 | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

_____
Affiant
Det Nancy Skubik

_____
Affiant

Sworn to (or affirmed) and subscribed before me this _____13th_____ day of __January__, A.D.2009

_____
(Judge or Justice of Peace)
JAMES T. CARLGEN JR

PRESIDENT JUDGE SUPERIOR COURT
(Designate name, title, and court)

_____
(DATED) January 13, 249

Affidavit of Probable Cause Page 8 of 8

**EXHIBIT 2**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

STATE OF DELAWARE {      **SEARCH WARRANT**

IN THE MATTER OF:

Yahoo, Inc (yahoo.com)     {    SS:     New Castle County

(in ref. Paul Pavulak, DOB ) {

Accounts: Pavy224@yahoo.com

701 First Avenue

Sunnyvale, CA 94089

                      **GREETINGS**

---

*STATE OF DELAWARE*      **DATE OF APPLICATION**     **COMPLAINT NO:**

*COUNTY OF New Castle*       01/13/2009          02-08-120456

THE STATE OF DELAWARE TO:

Det. Nancy Skubik      **OF**    Delaware State Police, Child Predator Task Force
                       **OF**

With the assistance of any police officer or constable or any other necessary or proper person or persons or assistance.

**GREETINGS:**

Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely:

**ITEMS TO BE SEARCHED FOR AND SEIZED:**

Yahoo!, Inc and/or yahoo.com servers, computers, networks, records, or electronic storage medium for the existence of any and all records, recordings, or files related to the ISP's user/ aka (display name) **Pavy224@yahoo.com** to include: All Identity and Subscriber Information contained within the profile or yahoo.com files, including names, birth date, home and email addresses, contact numbers or other personally identifying information.

    A. Any and all Stored User Files in the users profile to include Images, Videos, Voice Chat, or documents

    B. All Friends Lists, contacts, address books, or other such lists maintained with this account

    C. All IP Logs associated with the creation and maintenance of this to include:

       1. IP, date, and time captured on the day date and time that this account was established

       2. Historical- IP logs, showing all user access to this account including date and time

    D. Private Messages and Bulletins including message Headers, Subject lines and message body content of the private messages, emails, blogs or bulletins.

    **Used or intended to be used for:**

Evidence of the crimes specified herein and identification of those involved.

is being concealed on the (premises) (person) described in the annexed affidavit and application or complaint.

00000131

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| **IN THE MATTER OF:** | { | |
| Yahoo!, Inc (yahoo.com) | {   SS: | New Castle County |
| (in ref. Paul Pavulak, DOB | ) { | |
| Accounts: Pavy224@yahoo.com | { | |
| 701 First Avenue | { | |
| Sunnyvale, CA 94089 | { | |
| | { | **GREETINGS** |

NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the date hereof to search the above-named person, persons, house, conveyance or place for the property specified in the annexed affidavit and application and to search any occupant or occupants found in the house, place, or conveyance above named for such property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched is not a dwelling house, and, if the property, papers, articles or things, or any part thereof, be found there, to seize it, giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken, and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they are present, or if the person or persons are not present, in the presence of at least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith...

DATED the ___13th___ day of ___January___, A.D. 2009

_James P. Vaughn_
(Judge or Justice of Peace)
JAMES T. VAUGHN, JR
PRESIDENT JUDGE, SUPERIOR COURT
(Designate name, title, and court)

_January 13, 2009_
(DATED)

Greetings Page 2 of 2

00000132

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| **IN THE MATTER OF:** | { | |
| Yahoo! Inc. (yahoo.com) | | |
| (in ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { | SS:    New Castle County |
| Sunnyvale, CA 94089 | { | **APPLICATION AND AFFIDAVIT** |

| *STATE OF DELAWARE* | DATE OF APPLICATION | COMPLAINT NO: |
|---|---|---|
| *COUNTY OF New Castle* | 01/13/2009 | 02-08-120456 |

*Be it remembered that on this*  13th  *day of* January *, A.D.* 2009 *, before me*

(Authority) JAMES T. VAUGNN. JR. PRESIDENT JUDGE, SUPERIOR COURT of DELAWARE

**NAME (S) OF AFFIANT (S)**

| Det. Nancy Skubik | OF | Delaware State Police, Child Predator Task Force |
|---|---|---|
| | OF | |

...personally appeared and being duly sworn (affirmed) according to law, depose (s) and say (s) that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure and is located at particular premises or places or in the possession of particular person(s) as described below.

**ITEMS TO BE SEARCHED FOR AND SEIZED:**

Yahoo! Inc and/or Yahoo.com servers, computers, networks, records, or electronic storage medium for the existence of any and all records, recordings, or files related to the ISP's user/ aka (display name) pavy224@yahoo.com to include: All Identity and Subscriber information contained within the profile or yahoo.com files, including names, birthdate, home and email address, contact numbers or other personally identifying information.

  A.  Any and all Stored User Files in the users profile to include Images, Videos, Voice Chat, or documents

  B.  All Friends Lists, contacts, address books, or other such lists maintained with this account

  C.  All IP Logs associated with the creation and maintenance of this to include:

      1.  IP, date, and time captured on the day date and time that this account was established

      2.  Historical IP logs, showing all user access to this account including date and time

  D.  Private Messages and Bulletins including message Headers, Subject lines and message body content of the private messages, emails, blogs or bulletins.

**SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE (S) AND / OR VEHICLES (S) AND / OR PERSON (S) TO BE SEARCHED:**

**Residence:**

Not requested at this time

**Computer System:**

  1.  The Network system belonging to Yahoo!, INC and/or yahoo.Com a California based "Social Networking" web site/Internet Service Provider, for records and entries leased or provided to, created or serviced by Paul Pavulak, an authorized user of the yahoo.com social networking site.

Application Page 1 of 3

00000133

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | SEARCH WARRANT |
| IN THE MATTER OF: | { | |
| Yahoo! Inc. (yahoo.com) | | |
| (in ref. Paul Pavulak, DOB | ) { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { SS: | New Castle County |
| Sunnyvale, CA 94089 | { | APPLICATION AND AFFIDAVIT |

**NAME OF OWNER (S), OCCUPANT (S) OR POSSESSOR (S) OF PREMISES AND / OR PLACE (S) AND / OR VEHICLE (S) AND/OR PERSON (S) TO BE SEARCHED:**

OWNER of Data: Paul Pavulak, 270 Quigley Blvd. New Castle DE 19720

- OWNER of System: Yahoo! Inc, 701 First Avenue, Sunnyvale CA 94089, an internet service provider as defined by U.S. Title 18 § 2703

- Current Possessor: Yahoo!, Inc.(yahoo.com) as indicated above

**VIOLATION OF (Describe Conduct or Specify Statute):**

**State:**

1. Dealing in child pornography Title 11 § 1109

Application Page 2 of 3

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| IN THE MATTER OF: | { | |
| Yahoo! Inc. (yahoo.com) | | |
| (in ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { | SS:   New Castle County |
| Sunnyvale, CA 94089 | { | APPLICATION AND AFFIDAVIT |

WHEREFORE, this (these) affiant (s) prays (or pray) that a search warrant may be issued authorizing a search of the aforesaid (house, place, conveyance, person or persons, or occupant or occupants) in the manner provided by law.

_Det Nancy Skubik_
Affiant

_____
Affiant

Sworn to (or affirmed) and subscribed before me this _13th_ day of _January_, A.D. 2009

_____
(Judge or Justice of Peace)

JAMES T. VAUGHN, JR.

PRESIDENT JUDGE, SUPERIOR COURT
(Designate name, title, and court)

Application Page 3 of 3

00000135

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County**

| | | | |
|---|---|---|---|
| **STATE OF DELAWARE** | ( | | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | | |
| (In ref. Paul Pavulak, DOB | { | | |
| Accounts: Pavy224@yahoo.com | | | |
| 701 First Avenue | { | SS: | New Castle County |
| Sunnyvale, CA 94089 | { | | |
| | { | | |
| | ( | | **AFFIDAVIT OF PROBABLE CAUSE** |

*The facts tending to establish probable cause for believing that the foregoing grounds for the application exist are as follows:*

**Affiant and Witness:**

1.  Your affiant is a sworn member of the Delaware State Police and is currently assigned to the Child Predator Task Force. Your affiant has been in law enforcement since 1993 and became a Delaware State Trooper in 1998. Your affiant served at Troop 6 patrol until January of 2004 then was transferred to the Criminal Investigation Unit at Troop 2 and remained there until March of 2008 when your affiant joined the task force.

2.  Referenced as a witness in this complaint is Det. Scott Garland, a sworn member of the Delaware State Police, having been hired in September of 1984. Currently he is assigned to the High Technology Crimes Unit which is a statewide unit formed specifically for the investigation and examination of, or investigative support services for, crimes involving computers and high technology devices. Previously, Detective Garland was a Financial Crimes Investigator for 10-years assigned to the Financial Crimes Unit at Troop 4 in Georgetown. He has also served as a Uniform Patrol Trooper, a General case Detective handling Murders, Rapes, Robberies, and Assaults, as well as 2 years in the Property Crimes squad. Det. Garland is a Certified Forensic Computer Examiner (C.F.C.E.) which was attained after approximately 1 year of schooling and intense testing through the International Association of Computer Investigative Specialists. Det. Garland also attended the National White Collar Crimes Center Data Recovery and Examination school as well as schools provided by forensic software companies including Guidance Software, Access Data, and Digital Detective, Intelligent Devices, Ocean Systems/AVID, and Resolution Video. Det. Garland received certification from the FBI after attending a 2 week school at the FBI Academy in Quantico Virginia on detection and prosecution of Computer Intrusion of Exploitation. Det. Garland has taught numerous computer related courses for Delaware Technical and Community College, as well as instructing and lecturing to classes at the Delaware State Police Academy. Detective Garland is familiar with pedophile and child pornography investigations and has been an instructor at the Delaware State Police Academy on Deviant Sexual Behavior Investigations. He is the NCMEC case investigator for the High Tech Crimes Unit and has conducted numerous field investigations and forensic examinations involving crimes against children. In May 2006, Det. Garland was trained by the Wyoming ICAC (Internet Crimes Against Children [Task Force]) in the deployment and use of Peer-to-Peer surveillance software. Det. Garland conducts on-line predator surveillance, child enticement investigations, and other pro-active computer investigations. He has taught *On-line Investigations*, and *On-Line Safety for Children* at the State Police Academy as well as in schools.

Affidavit of Probable Cause Page 1 of 10

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County**

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | SEARCH WARRANT |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { | SS:    New Castle County |
| Sunnyvale, CA 94089 | { | |
| | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

3.    Referenced as a witness in this complaint is Det. Robert Jones, is a sworn member of the Delaware State Police, having been hired on March of 1996.  Since September of 2007, Det. Jones has been assigned to the Delaware State Police Sex Offenders Apprehension and Registry Unit.  He has investigated numerous misdemeanor and felony crimes and authored or co-authored numerous search warrants resulting in seizure of illegal substances and evidence which in turn have led to criminal convictions in these cases.

4.    The search warrant is being directed to Yahoo! Inc, (yahoo.com), a California based company known as an Internet Service Provider. Specifically, Yahoo! Inc (yahoo.com) allows individuals who subscribe to their service, for free, to maintain personal Web pages on their web servers. Known as a social networking site, Yahoo! Inc (yahoo.com) does not add to or maintain the content of these pages, although it does store, on behalf of the member, communications, files, and writings that the member has elected to post. Yahoo! Inc or yahoo.com IS NOT a party to ANY criminal activity herein described and set forth. It is however, holding records created by the suspect in this case, that affiant believes to be evidence in this case.

---

### Terms and Definitions:

- **Chat –** Chatting is a popular form of instant text messaging by means of computer. Various forms exist but in general, websites hosting chat services establish chat servers (relay computer) using specific chat software applications that users around the Country or around the world may login, type a text message, which upon sending (hitting the enter key) is transmitted to the others using the service to view in near real time.

- **Chat Applications –** Many programs have been developed and are available for free or at minimal cost to achieve interconnection of computers allowing chat. IRC or internet relay chat is a specific type which uses a large number of servers around the world and is largely unregulated since it is not actually owned by a group or company. AOL-IM, Yahoo Chat, MSN Messenger, and MS Net Meeting are just a few of the common applications. There are also Java script based web-chats that are found on various websites.

- **Chat rooms –** Interest groups – that are groups named for a special interest or hobbies are set up either by the hosting web site or just as often, by member users. Referred to as a room or channel, it is the relative equivalent of a specific interest TV channel such as the history channel or the cooking channel. The difference being that anyone logging into that "room" will find other people interested in the same topic and are able to intercommunicate with the group. All communication in a channel is public and can be viewed by all members within that channel.

- **CHILD EROTICA:** Child erotica is often a very close relative to Child Pornography. Generally, if the Child depicted in the image(s) is not nude, but is scantily clothed, posed provocatively, or otherwise posed in a fashion obviously intended to arouse, but not blatant displaying genitalia, it is classified as Erotica. NCMEC and other jurisdictions, depending on the individual taking the report, often classify an image as erotica if the child is merely posing nude and there is no overt sexual contact with the genitals of the child or another.

- **Cookies –** Small Data files that are used by internet browser software to help in the navigation of the internet. They may be placed on a computer at the time a person first looks at a particular website, or they may be placed on the local computer for a single session. They often store user selected preferences, but may also collect data about the local computer.

00000137

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | | | |
|---|---|---|---|---|
| **STATE OF DELAWARE** | | { | | SEARCH WARRANT |
| Yahoo! Inc (yahoo.com) | | | | |
| (In ref. Paul Pavulak, DOB | ) | { | | |
| Accounts: Pavy224@yahoo.com | | | | |
| 701 First Avenue | | { | SS: | New Castle County |
| Sunnyvale, CA 94089 | | { | | |
| | | { | | |
| | | { | | **AFFIDAVIT OF PROBABLE CAUSE** |

- **Data** – Electronically stored information which may consist of files, collections of files, programs, or applications, or varying amounts of all. Data is what the user interacts with on their computer monitor, but just as often, the electronically stored data is never seen by the user.

- **Dial-Up** – One type of connectivity where in a person wanting to browse the internet, utilizes a modem and software to literally "Dial-Up" another computer provided by an Internet Access Provider. Dial-Up modems generally the slowest communication device, but they are also the most common, using ordinary telephone lines to allow Internet Access to the user.

- **File exchanges and video chat** – While using many common chat applications, it is possible for users to send or exchange files, pictures, or other digital data. Likewise, many cat applications include a facility for video chat, which may or may not include audio transmissions. By combining text, video and audio, users are able to read, hear and see other persons within the room or within private messaging.

- **Files, Folders and storage of Data** – Data that is "saved" on a computer system is always held in a hierarchical electronic filing system. The data that makes up what the end user sees on the screen as files (a single item) or a folder (a collection of files). The user can, in some cases, be prompted to offer names for data they save, and to save them in specific locations within the virtual filing system. The computer however, determines where on the physical drive the files will actually be stored on the physical media. Some files the user has no control over, and they save or delete themselves according to pre-programmed instructions and commands.

- **Groups and Communities** – Yahoo, MSN, GeoCities, and many other non-subscription or "free" Internet Content Providers maintain Groups or Communities. Each has its own terminology but they all work in the same fashion. Registered Users of the service can access the Groups area of the ICP and either join an existing group, or they MAY choose to start their own. Each group is intended to attract other internet users that have SIMILAR INTERESTS. In most cases, and there are thousands of Groups and Communities in hundreds of categories (there are 31868 Yahoo Groups in the SUPPORT Category alone), the stated Interests are legitimate and serve useful purposes for those choosing to use them. Groups are formed for entertainment such as hobbies: 'model ship builders' or 'momsBestrecipes'. In other cases, they are for "virtual support groups: 'women surviving cancer' or 'depression-anxiety' 'stuttering chat' etc. In other cases, the purpose is less useful and sometimes unlawful. Just as people who need support for a stuttering disorder can find each other in a relatively anonymous and safe setting, so to can individuals interested in exchanging images of children, enticing children for sex, and various other dangerous and illegal activities. Generally, a user starts a group and gives it a name which fairly well indicates the intent or interest. To further clarify it, they add a Group Description and keywords that can be aids to search engines. The owner or administrator (usually the person that starts the group) can then set permission parameters, access and membership rules, and most importantly, who is accepted into the group, who is rejected from the group, and who is ejected from the group. They can promote a user to have "Moderator" status, which means they have administrative rights to some extent. In most cases, all members can and are encouraged to upload files for other members of the group to share. The moderator often has the permission set to have all files sent to them first for review. Once the moderator or owner reviews the file content, they can approve it for release to the general membership. Until they release it, others may not be able to see it or retrieve it from the web.

- **Hard Drives and Storage Media** – Hard drives refer to mass volume storage media that allow electronic data to be written to and stored on the hard (non flexible) disk or disks that are contained inside a structural protective casing. Electronic storage media however, come in many other forms, including 3 ½" diskettes which have low volume capacity but are highly transportable, to DAT (Digital Audio Tape) Compact Disks, and DVD's. Whatever the form, they all have the singular purpose of capturing electronic data written to their surface, for safe retrieval at a later time.

- **Hashing** – Hashing, sometimes thought of as an Electronic DNA, refers to the process electronically evaluating computer files and mathematically calculating a "virtual serial number" unique to that file. Using

Affidavit of Probable Cause Page 3 of 10

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | {   SS: | New Castle County |
| Sunnyvale, CA 94089 | { | |
| | { | |
| | { | AFFIDAVIT OF PROBABLE CAUSE |

mathematical algorithms, such as the MD5 or SHA32, computer programs "look" at each bit of the file and calculate a numeric weight to provide an aggregate hexadecimal number. If ANY single bit of the file is changed, no matter how slight and no matter how large the file, the Hash Number or "virtual serial number" will be completely different. The permutations of the algorithmic output are so large as to make it impossible for any two files which are not EXACTLY THE SAME to have the same hash result.

- **High Speed Access** – Also referred to as High Bandwidth, High speed access systems come in several varieties, most common to home or residential service are DSL, Cable, and Satellite. DSL (Digital Subscriber Line) is provided via telephone line, Cable, as the name implies uses Cable Television systems, and satellite is provided by Satellite TV systems such as Direct TV. High Speed is measured in comparison to Dial-up services which operate at maximum transfer speeds of 56Kb (56,000 bits per second). DSL advertise speeds of 1.5 Million bits per second (which has an effective throughput of about 350,000 bits per second) and Cable claims speeds of 3 million bits per second but in reality has an effective throughput much closer to DSL. This means that file sharing and transfer, including web browsing and video viewing is much easier, faster, and smoother than the old dial-up services.

- **IM or PC** – Refers to Instant Messaging or Private Chat. Unlike a chat room, IM or PC is text messaging but occurs only between two individuals and is not seen by others in a chat room. Depending on the software application, a completely separate chat window may be used to facilitate the private messaging between the participants. IM is actually a brand name started by America-On-Line and refers to their proprietary software AOL Instant Messenger. Most chat software has a similar facility for private communications.

- **Internet/Computer Networks** – The Internet, like all networks, is a compilation of computers, all interconnected, to allow users access to some or all of the data stored on one computer in the system from any other computer in the system. The internet is not an actual entity, as it is continuously adding and removing computer systems, and it is not controlled or owned by anyone person or entity. The internet is a basically infinite concept, where basic rules for intercommunication are agreed upon so that computers can be standardized. A Local Network, such as those found in offices, are privately owned (as a rule), they are controlled by their owners (administrators), and access is restricted to a finite number of people (as a rule).

- **IP Address** – IP refers to an Internet Protocol, or a specific recognition locator number assigned by computers to computers, so that they may effectively communicate via the internet. This number or range of numbers, are assigned to a domain when that domain is registered. There are several types of IP Numbers (i.e. Dynamic or Static) but in the end, they identify the computer or the computer system to the rest of the network.

- **I.S.P – Internet Service Provider:** This is the commercial retailer who permits access to the internet by renting out the IP's and domain access that they have purchased and registered. ISP includes companies such as AOL, Earthlink, and other such services.

- **Modems** – One type of communication device found in many small computer systems that allows interconnectivity and communications with other computer systems.

- **NCMEC** – Acronym for the Federally Funded National Center for Missing and Exploited Children. NCMEC is designated by U.S. title 18 and the U.S. Department of Justice as the Central Reporting Point for all ISP providing information to Law Enforcement about illegal on-line activity involving children. ISPs are required under federal law to report ANY criminal activity involving children including possession, receipt, or distribution of Child Pornography, Solicitation of Children for Sex, or Abuse. NCMEC then disperses the complaint to one of the Regional "I.C.A.C."s (Internet Crimes Against Children) which are direct law-enforcement. In Delaware, the Maryland State Police maintain the ICAC center. The ICAC then determines proper jurisdiction and directs the complaint to local law-enforcement for investigation. Because Delaware has a High Tech Crimes Unit, NCMEC and ICAC provide direct access to the complaints via the NCMEC Secure VPN (Virtual Private Network).

- **Password/Access** – Passwords are methods of controlling network access. Most systems restrict access to their system and by allowing passwords, they can control level of access rights (certain user name/passwords

00000139

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County**

| | | | |
|---|---|---|---|
| **STATE OF DELAWARE** | { | | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | | |
| (In ref. Paul Pavulak, DOB | { | | |
| Accounts: Pavy224@yahoo.com | | | |
| 701 First Avenue | { | **SS:** | New Castle County |
| Sunnyvale, CA 94089 | { | | |
| | { | | |
| | { | | **AFFIDAVIT OF PROBABLE CAUSE** |

combinations have greater or lesser amounts of access) as well as preventing non users from accessing their system at all. Passwords do not insure access in that a computer can be exploited by those with enough knowledge and desire. Passwords almost always work in conjunction with a "User ID which is not necessarily kept secret.

- **Profiles – Yahoo and other Free Content Providers –** Yahoo, MSN, and other such "Free Content" web providers permit "registered" individuals using their services to create "personal profiles". Depending on the provider, the profile may contain personal information ranging from benign to Very Sexually Explicit. The content is determined by the user posting it although it may be subject to review by the content provider to insure it does not exceed their acceptable use policy. Once posted, to varying degrees, the Profile Information is publicly available to others on the Internet who may wish to read it.

- **Screen Name –** Screen names are, as he term implies, the name that chatters self-assign for use within the chatroom so that others may contact them without compromising the user's true information and privacy. Screen names are much like vanity plates in that they often are descriptive or clever words which are easily recalled but have some meaning to the person using it. For example an elderly woman in a Gardeners chat room may call herself TexasRose70 because she is in Texas, likes roses and is 70 years old. While they are fictitious names, they are often traceable to an individual by law enforcement because they are registered with the chat host when the name is created.

- **Social Networking Sites –** Social Networking Services or sites were originally designed to be specialized sites where people from similar organizations (i.e. schools) or with specific interests (hobbies, gaming, etc) could login and communicate with each other. In the original concept, the affiliation with a group was verified by the hosting service, in theory, making it a "safe" on-line environment. These services included sites such as Facebook.com for school students, where the user had to verify they were a student at a particular school and then they could be seen only by others in that school unless they added other friends to their friends list. It has since become far less verified, and far less safe, with sites like MySpace.com being the more popular place. Mostly used by younger demographics, users post thoughts, experiences, pictures, and information about themselves, their friends, and others.

## *Issues of Staleness Associated with computer Investigations:*

The High Technology Crimes Unit provided the following information to address possible issues of staleness where the information relating to computer crimes may, in some cases, be perceived as old. Staleness issues typically preclude obtaining search warrants based on information which is subjectively too old to insure that the evidence sought is likely still in the place to be searched.

(1)  Computers store vast amounts of data and based on their training and experience, Examiners assigned to the High Tech Crimes Unit can state that Data continues to reside on hard drives for months and even years after it is initially written to media. With the advent of larger capacity hard-drives, removable media, and CD/DVD burners over the past several years, the retention and therefore recovery of, data from digital media has greatly increased.

(2)  Larger hard-drives, those having capacities of 30 to 400 gigabytes (giga = billion) are standard installations on computers. Typical home users often fill a relatively small portion of the drives over the entire period it is in service. Drive space is referred to as Allocated and Unallocated or Free space. Allocated refers to space occupied by live files and system resources. Unallocated or Free Space refers to space NOT currently being used, which is available or waiting to accept new data.

Affidavit of Probable Cause Page 5 of 10

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ( | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { | SS:     New Castle County |
| Sunnyvale, CA 94089 | ( | |
| | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

When a file is "deleted" by the user, that space becomes "Free" and is available to accept more data. Likewise, space at the end of the drive, which is generally very large, that has never been intentionally used for storage, is referred to as Free Space. Unknown to most users however, data almost always can be found in those areas and can be forensically recovered years after it was written.

(3)     Newer technology allows users with very little computer knowledge to write data to various forms of Long Term Storage Removable Media. These may include DVD (Digital Video Disks) and CD (Compact Disks). Both DVD and CD are easily hidden in relatively small areas. Despite the names implication, a DVD can and does accept digital data other than video; likewise, compact disks which are normally thought of as being associated with music and audio files can and do store digital data other than audio. The data stored on them is highly stable and not usually subject to corruption barring physical damage to the media itself. For that reason, computer users often "back-up" files to these forms of media making them available for recovery many years after being written. Users engaged in criminal activity use these same media to store the fruits and evidence of their crimes because they are easily concealed and not as subject to inadvertent discovery by others in a household or business who may have access to the computer or computer system.

(4)     New technology for Removable Media such as Pen Drives (very miniature USB devices sometimes called thumb drives), Compact Flash Cards, Digital Media Cards, and other similar media used in digital cameras, are designed to accept and store data in some cases up to 1 gigabyte. This is a huge amount of data that can literally be hidden inside of a matchbook. These media type are somewhat more volatile than CD or DVD, but still can and do retain data for extremely prolonged periods of time.

### History and Facts of the Complaint:

1.  Your Witness Garland can state that: The Superior Court of this State, acting under the color of U.S. Title 18 § 2703 (b)(2)(c)(a) The Stored Wire Communications Act, does have jurisdiction to issue such warrant and compel the Internet Service Provider, Yahoo!, yahoo.com, irrespective of the provider being located beyond the limits of the Courts physical Jurisdiction, to comply with and provide to law enforcement the content of all stored electronic communications. Superior Court of this State meets the requirements of "Court of Competent Jurisdiction" pursuant to 2703 in that this Court does have State authority to issue Wire Taps and Pen Orders. The lawful authority to issue such orders by a State Court is the defined test under 2703 pursuant to definitions of the Federal Rules of Evidence in determining that the State Court has comparable power to that of the Federal Court where the order to produce Stored Wire Communications originates.

Affidavit of Probable Cause Page 6 of 10

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE:** New Castle County

| | | | |
|---|---|---|---|
| **STATE OF DELAWARE** | { | | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | | |
| (In ref. Paul Pavulak, DOB | { | | |
| Accounts: Pavy224@yahoo.com | | | |
| 701 First Avenue | { | **SS:** | New Castle County |
| Sunnyvale, CA 94089 | { | | |
| | { | | |
| | { | | **AFFIDAVIT OF PROBABLE CAUSE** |

2. On 063098, Paul Pavulak, DOB          pled guilty to Unlawful Sexual Contact 2nd in Superior Court. The victim was eleven at the time of the crime. On 090498, Pavulak was sentenced to four years probation.

3. One of his supervising Probation/Parole Officers, M. Ferreira authored a search warrant signed and dated March 7, 2001. In this court document, she advised that Pavulak had been permitted to travel to Russia in June and August of 2000. Officer Ferriera later discovered that Pavulak met and married a Russian he met overseas in September of 2000.

4. In April of 2005, Pavulak pled guilty to Unlawful Sexual Contact 2nd in Superior Court. The second victim was 10 at the time of the crime.

5. In October of 2008, the Delaware State Police Sex Offender Registry Unit received a tip that Pavulak, a registered sex offender, was viewing child pornography on the internet. The information provided was that Pavulak was viewing the child sexual exploitation images while at his son's business, Concrete Tech, Inc., located at 270 Quigley Blvd, New Castle DE 19720.

6. A check of the motor vehicle records shows that Paul Pavulak, DOB          claims to reside at 270 Quigley Blvd, New Castle DE 19720. This address is located in Airport Industrial Park.

7. A check of the State of Delaware business records shows that Concrete Technology Resurfacing & Design, Inc is located at 270 Quigley Blvd, New Castle DE. The listed owners of this business are Guinevere Kunkel and Paul Randall. A check of the Delaware motor vehicle shows that Paul Edward Randall, DOB          , has the name of Paul R. Pavulak, DOB          listed as an alias.

8. Det. R. Jones of the Delaware State Police Sex Offender Unit followed up the above information. He was able to contact two co-operating individuals (CI) that are familiar with the business.

9. CI-1 advised that Concrete Tech, Inc is owned by Paul Pavulak's son "Randy", Paul Randall Pavulak, and Paul Pavulak's daughter, "Gwen." CI-1advised that he/she saw Pavulak viewing child pornography on multiple occasions on a company computer. He/she described the females he/she saw were between the ages of 16 and 18 years of age.

00000142

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| STATE OF DELAWARE | { | SEARCH WARRANT |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { | SS:   New Castle County |
| Sunnyvale, CA 94089 | { | |
| | { | |
| | { | AFFIDAVIT OF PROBABLE CAUSE |

10. CI-2 advised that the business purchased a laptop for Pavulak because an employee complained about his/her computer crashing due to the pornographic material Pavulak continually viewed. CI-2 stated that he/she had seen images of females between the ages of 12 to 15 years on Pavulak's computer. He/she said that the images were not from a website but appeared to have been sent to Pavulak via email.

11. CI-2 advised that Pavulak was planning a month long trip to the Philippines to leave in December of 2008 and return in January 2009, so he purchased a digital camera which holds approximately one and half hours of video. CI-2 advised that Pavulak told him/her that he had dates with females arranged to fill his trip to Philippines. Pavulak advised that he was going to return to the United States on January 14, 2009.

12. Pavulak recently sent an email to an employee of the business advising that he did not like the hotel he was staying at in the Philippines. His email address is Pavy224@yahoo.com. A subpoena was issued to Yahoo! to obtain subscribers information for this account. The results show that the account was created "Mr. Paul Pavy." This Internet Protocol (IP) address used by this account has been located in the Philippines from December 10, 2008 to January 6, 2009 (the date of the subpoena results).

13. The IP address that was used to access Pavy224@yahoo.com on December 8, 2008 was 72.78.122.253 which is registered to Verizon Internet. A subpoena was sent to Verizon Internet to obtain the account information for this IP address. Verizon Internet provided the following account information:

   Business Name: Paul Pavulak Concrete System Repair

   Customer Name: Gwen Kunkel

   Account Address: 270 Quigley Blvd., New Castle DE 19720.

14. Agents from the State Department and Homeland Security have confirmed that Paul Pavulak is in the Philippines but his exact location is unknown because he has moved from motel to motel several times.

15. In December of 2008, Pavulak changed his Sex Offender Registry address to Belen Street in Philippines.

16. There is currently an active warrant for Paul Pavulak for Failure to Register a Change of Employment as a Sex Offender.

Affidavit of Probable Cause Page 8 of 10

00000143

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County**

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo....... | | |
| 701 First Avenue | { | SS: **New Castle County** |
| Sunnyvale, CA 94089 | { | |
| | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

17. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses maybe located at Yahoo! Inc (yahoo.com), a California based company known as an Internet Service Provided. Yahoo! Inc (yahoo.com) is not a party to any criminal activity herein described and set forth. It is however, holding records created by the subjects involved in this case which constitutes a violation of *11 DEL. C.* Sections 1109, relating to material dealing in child pornography. Your affiant therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the above described Yahoo! Inc (yahoo.com) accounts.

Affidavit of Probable Cause Page 9 of 10

00000144

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE: New Castle County

| | | |
|---|---|---|
| **STATE OF DELAWARE** | { | **SEARCH WARRANT** |
| Yahoo! Inc (yahoo.com) | | |
| (In ref. Paul Pavulak, DOB | { | |
| Accounts: Pavy224@yahoo.com | | |
| 701 First Avenue | { SS: | New Castle County |
| Sunnyvale, CA 94089 | { | |
| | { | |
| | { | **AFFIDAVIT OF PROBABLE CAUSE** |

_____
                                    Affiant
                          Det. Nancy Skubik

_____
                 Affiant

Sworn to (or affirmed) and subscribed before me this ___13th___ day of __January__, A.D.2009

_____
                 (Judge or Justice of Peace)
JAMES T. VAUGHN, JR
PRESIDENT JUDGE, SUPERIOR COURT
                 (Designate name, title, and court)

_____
                 (DATED)

Affidavit of Probable Cause Page 10 of 10

00000145

# Exhibit J

1

1        IN THE UNITED STATES DISTRICT COURT

2        IN AND FOR THE DISTRICT OF DELAWARE

3                    - - -

4

UNITED STATES OF AMERICA,      :   CRIMINAL ACTION
5                                :
              Plaintiff,         :
6                                :
     vs.                         :
7                                :
PAUL E. PAVULAK,                 :
8                                :
              Defendant.   :   NO. 09-00043 (SLR)
9

10                   - - -

11                          Wilmington, Delaware
                            Tuesday], September 21, 2010
12                          9:19 o'clock, a.m.

13                   - - -

14   BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J., and a jury

15                   - - -

16   APPEARANCES:

17            EDWARD J. McANDREW, ESQ.,
              Assistant United States Attorney
18
                        -and-
19
              BONNIE L. KANE, ESQ.
20            U.S. Department of Justice - Criminal Division
              (Washington, D.C.)
21

22                 Counsel for Plaintiff

23

24                          Valerie J. Gunning
                            Official Court Reporter
25

Skubik - direct

1    A.    Yes.

2               MR. McANDREW:  Your Honor, permission to

3    approach for a moment?

4               THE COURT:  Yes, you may.

5    BY MR. McANDREW:

6    Q.    And when you look at this, do you see what's referred

7    to as an integrated Web camera?

8    A.    Yes.

9    Q.    What is an integrated Web camera?

10   A.    It's a Web camera that's actually built into the

11   computer, so it makes it easily accessible to anyone using

12   the computer.  They just have to move the hinge, basically,

13   to have the camera point at what they want to show on the --

14   through the webcam.

15   Q.    And let's back up.  What's a webcam?

16   A.    A webcam is a way to transmit images live.  We do it

17   all the time when we arraign people.  We call it video

18   arraignment, where the defendant would sit at a troop, and

19   they go -- they talk directly to a judge in a different

20   building, and so you would see the officer and the defendant

21   see the judge on the screen while the judge is able to see

22   the defendant and the officer.  So you're able to talk to

23   someone in two different places via the web cam.  It's a

24   live transmission.

25   Q.    Okay.  So it's kind of like a video camera?

Skubik - direct

1    A.    Yes.

2    Q.    Now, also through the course of your experience as an

3    investigator in the Child Predator Task Force, have you

4    become somewhat familiar with web cameras?

5    A.    Yes.

6    Q.    And are there any other capable of taking still

7    pictures of what's being distilled on the screen?

8    A.    Yes.

9    Q.    Okay.  I'm going to actually take that and set that

10   aside so it's not in your way.

11           I'm moving on.  If we could publish Exhibit 58

12   at this point.  What do we see in 58?

13   A.    It's a close-up of more paperwork that was located on

14   the desktop.

15   Q.    All right.  And you also see a set of eyeglasses

16   there; is that right?

17   A.    Yes.

18   Q.    All right.

19   A.    There's also an SD card on the top right corner.

20   Q.    Yes.

21   A.    There's another SD card in that small plastic

22   container.

23   Q.    I missed that.  Okay.

24           And I'm now going to hand you what we've marked

25   as Exhibits 59 through 62.

147

Skubik - direct

1    MR. McANDREW:  Bear with me for a moment.

2    (Pause.)

3    BY MR. McANDREW:

4    Q.    I'm approaching with what we've marked as Government

5    Exhibits 59 through 62 (handing exhibits to the witness).

6    Can you take a look at those and tell me if you

7    recognize what's depicted in them?

8    A.    Yes, I've seen these before, and this is paperwork

9    that was located on the desk area in that office.

10   Q.    All right.

11   MR. McANDREW:  Your Honor, I would move in

12   Government Exhibits 59 to 62 at this point.

13   THE COURT:  Any objection?

14   MR. ORTIZ:  No objection.

15   THE COURT:  Thank you.

16   (Government's Exhibit Nos. 59 to 62 were

17   received into evidence.)

18   MR. McANDREW:  And if we could begin by

19   publishing Exhibit 59.

20   BY MR. McANDREW:

21   Q.    What do we see in Exhibit 59?  What's this a

22   photograph of?

23   A.    This is a close-up of what was a file, piece of paper

24   that had handwritten notes on it that was located on the

25   desk.

148

Skubik - direct

1   Q.    All right.   Do you see where it says 11/20/08?

2   A.    Yes.

3           MR. McANDREW:   If we could zoom in on that.

4   BY MR. McANDREW:

5   Q.    Could you read what's written after 11/20/08?

6   A.    Paul, Feese -- I'm not sure if I'm pronouncing it

7   correctly -- Dan, removed concrete forms, step and walk.

8   Q.    On 11/21/08?

9   A.    Paul removed forms and caution to be CTI week of

10  December 1st.

11  Q.    Setting that aside, if we could move on to Government

12  Exhibit 60.   What do we have in Government Exhibit 60?

13  A.    It's a close-up of some other paperwork that was

14  located on the desk.

15  Q.    If we could zoom in on where it says authorized

16  signature there at the bottom.

17          Are you able to see the authorized signature or

18  name written there?

19  A.    Yes.

20  Q.    What is it?

21  A.    It reads Paul Pavulak.

22  Q.    It's a little hard to see.   And below that, it says,

23  "note."  Do you see that?

24  A.    Yes.

25  Q.    And what does it say after "note"?

Skubik - direct

1   A.   This proposal may be withdrawn by us if not accepted

2   within 30 days.

3   Q.   All right.  It's a proposal.  And up toward the top,

4   you see a date.  If we could zoom out and go back up towards

5   the top.  No.  Right side.

6              Do you see the date up there?

7   A.   Yes.

8   Q.   What is the date?

9   A.   12/4 of '08, December 4th of 2008.

10  Q.   All right.  And basically, from your investigation,

11  you know that Mr. Pavulak traveled to the Philippines some

12  time in early December of '08?

13  A.   Yes.

14  Q.   All right.  Moving on to Government Exhibit 61, if we

15  could publish 61.  And if we can zoom in on what's at the

16  top there, it says, 4/5/08.

17              Are you able to read that, 4/5/08, what comes

18  after that?

19  A.   Yes.

20  Q.   What does it say?

21  A.   It says Rob/Randy sealed floor, received for $1,348,

22  No. 2519.

23  Q.   Based on your execution of the search, you knew that a

24  Randy was a member of the business and worked there?

25  A.   Yes.

Skubik - direct

1   Q.    And moving down on this entry to 10, I don't know if

2   it's 20 or 23 '08.  Do you see that?

3   A.    Yes.

4   Q.    Can you read what comes after that?

5   A.    Paul met w/her and inspected four-five bubbles areas.

6   Bubble form haven't busted yet.

7   Q.    All right.  Let's set that aside and move to

8   government Exhibit 62.

9          And in government Exhibit 62, that's another one

10  of these file forms?

11  A.    Yes.

12  Q.    And you see the dates are kind of cut off at the top

13  there.

14  A.    Mm-hmm.

15  Q.    But if we look at that, just the top corner and then

16  down to the second entry, if we can blow that up.  Back.  A

17  little bit higher and grab the date at the top.  There we

18  go.  There we go.

19          And then we have something 1408; is that right?

20  A.    Yes.

21  Q.    And then below that, you see something that says 308?

22  A.    Mm-hmm.

23  Q.    What do you have after that?

24  A.    Paul met with her and inspected four to five bubbles.

25  And then there's an unreadable word.  It says bubbles form

Skubik - direct

1    haven't busted yet.

2    Q.    All right.  Okay.  Aside from the pictures that were

3    taken and the computers you've identified, was other

4    electronic equipment seized from the business that day?

5    A.    Yes.

6    Q.    Including a Nokia cellphone?

7    A.    Yes.

8    Q.    Casio digital camera?

9    A.    Yes.

10   Q.    Was there a memory card in the camera?

11   A.    Yes.

12   Q.    If I could approach with what we've marked as

13   Government's Exhibit 64, 65 and 66 (handing exhibits to the

14   witness).

15            Take a second and look at those.  Tell me if you

16   recognize them and if you've seen them before?

17   A.    Yes, I have.

18   Q.    And where have you seen them before?

19   A.    At the search -- at the search on January 19th.

20   Q.    Where did you first see them?

21   A.    Oh, in the office.  I'm sorry.  In the office with the

22   red couch in it.

23   Q.    All right.  And these items were seized from that

24   office?

25   A.    Yes.

Skubik - direct

1    Q.    All right.

2              MR. McANDREW:  And, your Honor, if I may read in

3    another portion of the stipulation, which is Government

4    Exhibit 290.

5              THE COURT:  All right.

6              MR. McANDREW:  We have here Government Exhibit

7    No. 64 is the same Nokia Model 1200 cellular telephone

8    seized from the office of Concrete Technology on

9    January 19th, 2009.

10             Government Exhibit No. 65 is the same Casio

11   EX 6880 digital camera.  It reads the serial number, seized

12   from the office of Concrete Technology on January 19th,

13   2009.

14             Government Exhibit No. 66 is the same Kingston

15   four gigabyte SD memory card seized from the office of

16   Concrete Technology on January 19th, 2009.

17   BY MR. McANDREW:

18   Q.    There's more than one SD memory card there; is that

19   right?

20   A.    Yes.

21   Q.    How many are there?

22   A.    There are four.

23   Q.    Now, back to the pictures that we saw of the close-up

24   of the desk, a total of how many SD cards ultimately were

25   found in that area?

153

Skubik - direct

1    A.    Four.

2    Q.    Including -- was there one found in the camera?

3    A.    There was one found in the camera.   There would have

4    been five.

5    Q.    There would have been at least four?

6    A.    Yes.  I'm sorry.  There are four.

7    Q.    All right.

8                 MR. McANDREW:  Your Honor, at this time, I would

9    move in Government Exhibit 64, 65 and 66.

10                THE COURT:  Any objection?

11                MR. ORTIZ:  No objection, your Honor.

12                THE COURT:  Thank you.

13                (Government Exhibit No. 64, 65 and 66 were

14   received into evidence.)

15                MR. McANDREW:  Your Honor, permission to

16   approach for one moment?

17                THE COURT:  Yes.

18                MR. McANDREW:  I'm sorry.  To approach the

19   bench.)

20                (Sidebar conference held out of the hearing of

21   the jury as follows.)

22                MR. McANDREW:  It's 12:45.  I didn't know what

23   time your Honor wanted to break.  I am about to go into a

24   bunch of documents.

25                THE COURT:  I want to break no later than 1:00,

Skubik - cross

1    A.    Yes.

2    Q.    And he told you that he thought it was 4:00 a.m., got

3    up, and had actually come to the office?

4    A.    Yes.

5    Q.    Now, the motel was actually searched; correct?

6    A.    Yes.

7    Q.    Okay.  And you did not take any pictures of the motel?

8    A.    No, I did not.

9    Q.    Did you recover any items from the motel?

10   A.    No.

11   Q.    Who searched the motel?

12   A.    I believe it was Detective Jones.

13   Q.    Now, permission was given to search the room that was

14   supposed to be Mr. Pavulak's; correct?

15   A.    I was not there, so I can't give you details on that.

16   Q.    Okay.  But Detective Jones actually went and searched

17   the motel?

18   A.    Yes.

19   Q.    Now, during your search, there were numerous

20   photographs taken; is that correct?

21   A.    Yes.

22             MR. ORTIZ:  If I may approach, your Honor?

23             THE COURT:  Yes, you may.

24   BY MR. ORTIZ:

25   Q.    I will show you what I've marked as Defendant's

# Exhibit K

IN THE _Superior_ COURT ,
STATE OF DELAWARE

COMPLAINT #: _02-08-120 456_

IN THE MATTER OF:

| Paul Pawlak, DOB 02/24/1944<br>270 Quigley Blvd<br>New Castle De 19720 | { <br> { Court: SupCrt <br> { New Castle County <br> { |
|---|---|

## INVENTORY AND AFFIDAVIT OF PROPERTY
## TAKEN UNDER SEARCH WARRANT

I received the attached search warrant on _01/13/09_ (Date) and have executed it as follows:

On _01/8/09_ (Date) at _0735_ (AM)/ PM – circle one), I searched the premises described in the warrant and left a copy of the warrant and a receipt for the items seized with the person from whom or from whose premises the property was taken, if present; or, if not present, at the premises.

The inventory was made and signed in the presence of (check one or both, as applicable):

☑  _PAUL RANDALL_ (printed name),

   _[signature]_ (Signature) of the person from whom, or from whose; premises the property was taken   AND / OR

☑  Another witness _DET JONES DSP_ [Fill in name (and title, if applicable)]

The following is an inventory of property taken pursuant to the warrant:

| (Yes) | (NO) | |
|---|---|---|
| ☐ | ☐ | **Trace Evidence** |
| ☐ | ☐ | **Photographs** |
| ☐ | ☐ | **Video** |

✓  ① HP PAVILION ENTERTAINMENT P.C. LAPTOP SN# CNF82919HN
   W/AI POWER CORD
✓  ① HP PAVILION DESK TOP A6248x SN# MXX7420KH7
✓  ① EMACHINES T3742 TOWER COMPUTER SN# QIP2H108.01444
✓  ① COMPAQ PREZARIO TOWER COMPUTER SN# CT538320A4D6C4XQ   MODEL 700
✓  5 BOXES CONTAINING NUMEROUS FLOPPY DISKS
✓  1 MIO DIGI WALKER GPS SN# R3Z78M02477
✓  1 MISC. PAPERWORK + RECEIPTS (VEHICLE)
✓  MISC. PAPERWORK (OFFICE - SUSPECTS ROOM)

Form # 338A
Revised: 071103
OPR: Special Operations Major

PAGE # _1 of 2_

White Copy: Court
Pink Copy: Troop
Canary Copy: Property Owner

**Search Warrant Return – Continuation Sheet** / *Complaint #* 02-08  120456

✓ ① BAG CONTAINING MANY BOXES OF SLIDES + NEGATIVES
✓ ② SD CARDS
✓ ③ MOTOROLA E670 CELL PHONE
✓ ④ MOTOROLA NEXTEL I 560
✓ ⑤ NOKIA MODEL 1200
✓ ⑥ MOTOROLA VERIZON FLIP PHONE
✓ ⑦ CASIO DIGITAL CAMERA EXILIM MODEL # EX-6880 w/CHARGER DOCKING STATION

✓ 178 FLOPPY DISC
✓ ① VIDEO TAPE
✓ ⑧ CD's
✓ ① VERIZON FLIP STYLE CELL PHONE CDM8800 AUDIOVOX
✓ ① MOTOROLA "PINK" FLIP STYLE CELLPHONE V3C
✓ ① MOTOROLA "GRAY" FLIP STYLE CELL PHONE V3C

The search warrant was executed in the manner described above and this inventory is a true and detailed account of all of the property taken by me on the warrant.

X _Det_____  DATE 01/19/09
OFFICER'S SIGNATURE

DET SKUBIK
NAME / TITLE (PRINTED)

WITNESS: CPL/3 ZOLDER  DATE 01/19/09
(OPTIONAL)   NAME (PRINTED)

CPL/3
NAME (SIGNATURE)

Title (if applicable): CPL/3

Address: DSP HTCU - CPU

**[ATTACH WARRANT]**

Form # 338B
Revised: 071103
OPR: Special Operations Major

PAGE # 2 of 2

White Copy: Court
Pink Copy: Troop
Canary Copy: Property Owner

# DELAWARE STATE POLICE
## PROPERTY RECEIPT

FORM NO. 302
Revised 5/22/79

Complaint No. _____

Date: _____ 011908

VICTIM: N/A

Description of property:

EMACHINES T1742 TOWER COMPUTER S/N C01P2A 108 014144
COMPAQ PRESARIO 7000 SERIES TOWER COMPUTER S/NCX53B32A69 4BLC4XQ

TOTAL VALUE: _____

Received the above property from Officer _____

Troop No. HQ/HTCU

_____ IBM _____ of the Delaware State Police

Name: _K. McGill_

Address: _200 Quigley Blvd New Castle De_

White - Troop

Yellow - HQ

Pink - Victim
DOCUMENT NO. 45-60(79)05/02

# Exhibit L

**McAndrew, Ed (USADE)**

| | |
|---|---|
| **From:** | McCall, Pat <pat.mccall@dhs.gov> |
| **Sent:** | Wednesday, July 21, 2010 1:32 PM |
| **To:** | McAndrew, Ed (USADE) |
| **Subject:** | RE: Pavulak |

Ed,

Just heard back from Nancy.  No pictures were taken.

Let me know if you need anything else.


**Patrick M. McCall**
**Special Agent**
**U.S Immigration and Customs Enforcement (ICE)**
**Wilmington, Delaware**
**Phone: (302) 428-0104 x7001**
**Fax:   (302) 428-3913**

**From:** McAndrew, Ed (USADE) [mailto:Ed.McAndrew@usdoj.gov]
**Sent:** Wednesday, July 21, 2010 10:47 AM
**To:** McCall, Pat
**Subject:** RE: Pavulak

Ok.  Any pictures?

**From:** McCall, Pat [mailto:pat.mccall@dhs.gov]
**Sent:** Wednesday, July 21, 2010 10:44 AM
**To:** McAndrew, Ed (USADE)
**Subject:** RE: Pavulak

Ed,

I heard back from Nancy.  A consent search was given for Pavy's hotel room by hotel management.  No evidence was seized from the room.

Thanks

Patrick M. McCall
Special Agent
DHS/US Immigration and Customs Enforcement
RAC Wilmington, Delaware
Phone: (302) 428-0104 x7001
Fax: (302) 428-3913

# Exhibit M

AO 93  (Rev. 01/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ): |
| *or identify the person by name and address)* | )   Case No.  09- 38M |
| | ) |
| Gateway Laptop Computer, | ) |
| Model MA6, bearing product key number | ) |
| BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Delaware _____
*(identify the person or describe the property to be searched and give its location)*:
Gateway Laptop Computer,
Model MA6, bearing product key number
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y (see Attachment A)
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____April 9, 2009_____
                                                                                      *(not to exceed 10 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_Mary Pat Thynge_____
                  *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                                        ☐ until, the facts justifying, the later specific date of _____

Date and time issued:    _3/30/09  12:13 p.m._      _____
                                                                                   *Judge's signature*

City and state:    _Wilmington, Delaware_____      Hon. Mary Pat Thynge, U.S. Magistrate Judge
                                                                            *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 09- | Date and time warrant executed: 3/31/2009 1400 | Copy of warrant and inventory left with: N/A |

Inventory made in the presence of :

DET NANCY SKUBIK - DELAWARE STATE POLICE

Inventory of the property taken and name of any person(s) seized:

GATEWAY LAPTOP WAS PROVIDED to DET MIKE WILEY, DELAWARE STATE POLICE, HIGH-TECH CRIMES UNIT, DOVER, DELAWARE.

- A PREVIEW OF THE GATEWAY LAPTOP WAS CONDUCTED. THE HARD DRIVE WAS ALSO ACQUIRED.

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 3/31/2009

Patrick M. McCan 4/9/09

Patrick M. McCan

*Executing officer's signature*

Patrick M. McCan S/A ICE

*Printed name and title*

Sworn to + subscribed before me this 9th of April, 2009.

U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                               )
                                              )
Gateway Laptop Computer,                      )    No. 09-  38-M
Model MA6, bearing product key number         )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y                  )

**ATTACHMENT A**

The SUBJECT COMPUTER is Gateway laptop computer, silver in color, model number

M6A, bearing product key number serial number BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                                )
                                               )
Gateway Laptop Computer,                       )         No. 09-
Model MA6, bearing product key number          )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y                   )

## ATTACHMENT B

A.   Any and all materials or items related to attempted enticement or sexual activity with minors as well as any gifts, items or things of value relating to the enticement of or sexual activity with minors.

B.   Any and all materials pertaining to travel by Paul Pavulak or any other person in interstate or foreign commerce.

C.   Records, documents, electronic communications, notes, or any other materials relating to Paul Pavulak, Ara Duran, "pavy224@yahoo.com," or "shahara_babes@yahoo.com."

D.   Records, documents, electronic communications, notes, or any other materials relating to correspondence or contact between any individuals relating to sexual activities or travel for purposes of engaging in sexual activities.

E.   Any and all materials or items intended for use in connection with the production, creation, storage, transmission, transportation, distribution or possession of child pornography, child erotica, or materials relating to the attempted enticement of or a sexual interest in children.

F.   Internet billing and usage records.

G.   Records or other items that evidence ownership or use of the SUBJECT COMPUTER.

H.   Any and all images, videos or recordings in any variety or format containing adult and/or child pornography, erotica, or any other visual depiction of nudity, sexual acts or of the individuals involved in such acts.

I.   Information, correspondence, records, documents or other materials pertaining to the production, possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or of child erotica or the discussion of sexual activity involving minors.

J.      Information or materials relating to the Philippines or Southeast Asia.

K.      Credit card or other financial information.

AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Gateway Laptop Computer,<br>Model MA6, bearing product key number<br>BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y | )<br>)<br>)<br>)<br>)<br>)  Case No. 09- 38M |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____ Delaware _____ *(identify the person or describe property to be searched and give its location)*:

Gateway Laptop Computer,
Model MA6, bearing product key number
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y (See Attachment A)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § __2252A/2422__ , and the application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FILED

MAR 3 0 2009

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Sworn to before me and signed in my presence.

*Applicant's signature*

Patrick McCall, ICE Special Agent
*Printed name and title*

Date: ___03/30/2009___

City and state:  Wilmington, Delaware

*Judge's signature*

Hon. Mary Pat Thynge, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                          )
                                         )
Gateway Laptop Computer,                 )      No. 09-38M
Model MA6, bearing product key number    )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y            )

**ATTACHMENT A**

The SUBJECT COMPUTER is Gateway laptop computer, silver in color, model number

M6A, bearing product key number serial number BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF )
)
Gateway Laptop Computer, )  No. 09-38M
Model MA6, bearing product key number )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y )

## ATTACHMENT B

A.  Any and all materials or items related to attempted enticement or sexual activity with minors as well as any gifts, items or things of value relating to the enticement of or sexual activity with minors.

B.  Any and all materials pertaining to travel by Paul Pavulak or any other person in interstate or foreign commerce.

C.  Records, documents, electronic communications, notes, or any other materials relating to Paul Pavulak, Ara Duran, "pavy224@yahoo.com," or "shahara_babes@yahoo.com."

D.  Records, documents, electronic communications, notes, or any other materials relating to correspondence or contact between any individuals relating to sexual activities or travel for purposes of engaging in sexual activities.

E.  Any and all materials or items intended for use in connection with the production, creation, storage, transmission, transportation, distribution or possession of child pornography, child erotica, or materials relating to the attempted enticement of or a sexual interest in children.

F.  Internet billing and usage records.

G.  Records or other items that evidence ownership or use of the SUBJECT COMPUTER.

H.  Any and all images, videos or recordings in any variety or format containing adult and/or child pornography, erotica, or any other visual depiction of nudity, sexual acts or of the individuals involved in such acts.

I.  Information, correspondence, records, documents or other materials pertaining to the production, possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or of child erotica or the discussion of sexual activity involving minors.

J.       Information or materials relating to the Philippines or Southeast Asia.

K.       Credit card or other financial information.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                          )
                                         )
Gateway Laptop Computer,                 )          No. 09-38m
Model MA6, bearing product key number    )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y            )

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Patrick McCall, a Special Agent with United States Immigration and Customs

Enforcement, Wilmington, Delaware Resident Agency, being duly sworn, depose and state as

follows:

1.       I am a Special Agent with the United States Department of Homeland Security,

United States Immigration & Customs Enforcement (ICE), Wilmington, Delaware.  I have been

employed as a Special Agent since June 5, 1988, when I was employed by the Immigration and

Naturalization Service (INS).  The INS was transferred to the U.S. Department of Homeland

Security as the Bureau of Immigration & Customs Enforcement in March 2003.

2.       As a federal agent, I am authorized to investigate violations of laws of the United

States and to execute warrants issued under the authority of the United States.

3.       This affidavit is submitted in support of a 1search warrant for a silver Gateway

laptop computer, Model MA6, bearing product key number BPF9H-D4DMH-V8T4V-YBYQ4-

WQ23Y (the "SUBJECT COMPUTER").  For the reasons set forth below, your affiant believes



FILED

MAR 3 0 2009

that there is probable cause that the SUBJECT COMPUTER contains evidence of violations of Title 18, United States Code, Sections 2252A and 2422(b) committed by Paul E. Pavulak.

4.    The statements contained in this Affidavit are based on my experience and background as a Special Agent and on information provided by other law enforcement agents. I have not set forth every fact resulting from the investigation. Rather, I have included only that information necessary to establish probable cause to search the SUBJECT COMPUTER for evidence relating to Paul E. Pavulak's violations of: (1) Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography; and (2) Title 18, United States Code, Section 2422(b), Attempted Enticement of a Minor.

## PERTINENT FEDERAL CRIMINAL STATUTES

5.    Title 18, United States Code, Section 2252A, entitled "Certain activities relating to material constituting or containing child pornography," provides, in pertinent part:

(a) Any person who –

(1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes –
any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or
any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer;

(3) knowingly reproduces any child pornography for distribution through the mails, or in interstate or foreign commerce by any means, including by computer;

. . . .

(5)(B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means,

including by computer,

shall be punished as provided in subsection (b).

6.      Title 18, United States Code, Section 2422(b) makes it a federal crime to use the

mail or any facility or means of interstate or foreign commerce to attempt to persuade, induce,

entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution

or any sexual activity for which he can be charged with a criminal offense, including, but not

limited to: 1Attempted Production of Child Pornography, in violation of Title 18, United States

Code, Section 2251(a); and (2) 1under Philippine law: (A) Rape, in violation of the Revised

Penal Code of the Philippines, Article 266-A, which makes it a crime to have carnal knowledge

of or to commit an act of sexual assault on a woman when the woman is under twelve years of

age, and (B) Corruption of Minors, in violation of the Revised Penal Code of the Philippines,

Article 340, which makes it a crime for any person to promote or facilitate the prostitution or

corruption of persons underage to satisfy the lust of another.

## DEFINITIONS

7.      The following definitions apply to this Affidavit and Attachment B to this

Affidavit:

        a.      "Child Erotica," as used herein, means materials or items that are sexually

arousing to persons having a sexual interest in minors but that are not, in and of themselves,

obscene or that do not necessarily depict minors in sexually explicit poses or positions.

        b.      "Child Pornography," as used herein, includes the definition in 18 U.S.C.

§ 2256(8) (any visual depiction of sexually explicit conduct where the production of the visual

depiction involved the use of a minor engaged in sexually explicit conduct), as well as any visual

depiction, the production of which involves the use of a minor engaged in sexually explicit

conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

   c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

   d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See 18 U.S.C. § 2256(2).

   e. "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

   f. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

   g. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work.

Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

h.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.      "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

k.      The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion

pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

        l.      An Internet Service Provider (ISP) is a commercial service that provides Internet connectivity to its subscribers.  In addition to providing access to the Internet via telephone lines or other telecommunications lines/cables, ISPs may also provide Internet e-mail accounts and other services unique to each particular ISP such as Usenet (newsgroups) and chat/messaging functions.  ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with it.  Those records could include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, customer service information and other information, both in computer data format and in written record format.

        m.     A "server" is a centralized computer that provides services for other computers connected to it via a network.  The computers that use the server's services are sometimes called "clients."

## CHARACTERISTICS OF CHILD SEX OFFENDERS

        8.      My knowledge of child sex offenders and their characteristics is based on my experience as an ICE agent, on the training I have received as an ICE agent, and on my

conversations and interactions with others who are involved in the investigation and prosecution of child sexual exploitation offenses.  Based upon my training, experience in child exploitation investigations and upon information provided to me by other law enforcement officers, the information set forth below is often true of child sex offenders.

9.      Child sex offenders are individuals who receive sexual gratification, stimulation and satisfaction from actual physical contact with children, from fantasies they have while viewing or discussing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs or in other visual media), or from literature describing such activity.

10.     Child sex offenders often collect sexually explicit or suggestive material (hard-core and soft-core pornography depicting adults and/or children, and child erotica) consisting of photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification. Further, they commonly use this type of sexually explicit material to lower the inhibitions of children they are attempting to seduce, to arouse the selected partner, and to demonstrate the desired sexual acts.

11.     Child sex offenders almost always maintain and possess their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in a location and on a digital medium that they believe to be secure.  Child sex offenders typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years.

12.     Moreover, such individuals often correspond and/or meet with others to share

information and materials; they rarely destroy correspondence from other child sex offenders;

they conceal such correspondence as they do their sexually explicit material; and they often

maintain lists of names, addresses, and telephone numbers of individuals with whom they have

been in contact and who share the same interests in child pornography and engaging in sexual

acts with minors.

## USE OF COMPUTER-RELATED TECHNOLOGY

13.     Computers and computer technology have revolutionized the way in which sexual

offenses against children are committed and child pornography is produced, distributed, and

utilized.  Computers have also revolutionized the way in which child sex offenders interact with

one another and their victims.

14.     Computers basically serve four functions in connection with child sexual

exploitation:  production, communication, distribution, and storage.

15.     Child sex offenders can produce and transfer photographs, videos, text

documents, or even voice recordings from a digital camera, cell phone, video camera, iPod or

myriad other portable digital devices onto another computer.  A computer, and these various

digital devices, can connect to another computer through the use of telephone, cable, or wireless

connections.  Electronic contact can be made between literally millions of computers around the

world.

16.     The computer's ability to store images and online text, video, or voice

communications in digital form makes the computer itself an ideal repository for evidence of

child sexual exploitation.  The size of the electronic storage media used in computers and

computer equipment that is designed for consumers has grown tremendously within the last

several years.  These drives or devices can store hundreds of thousands of images at very high

resolution, full high definition movie files, audio files, logs or transcripts of online chat conversations, and numerous other types of data.  Examples of some types of such computers and computer equipment include: desktops, laptops, notebooks, external hard drives, thumb drives, DVDS, CDs, floppy disks, memory cards, digital cameras and video cameras, iPods, MP3 players, cell phones, Blackberrys, Treos, and other types of personal digital assistants.

17.     The Internet and its World Wide Web afford child sex offenders myriad venues for obtaining, viewing and trading child pornography or identifying, communicating with, and exploiting children in a relatively secure and anonymous fashion.

18.     Collectors and distributors of child pornography and those attempting to entice minors also use online resources to trade, retrieve and store child pornography and to engage in online communications, including services offered by Internet Portals such as Yahoo!, Skype, and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail and instant messaging services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

19.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to

electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

20.     Searches and seizures of evidence from computers and computer equipment commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This is almost always true because of the following:

a.     Computer storage devices (like hard disks, diskettes, USB devices portable drives, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information.  Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.  This requires searching authorities to examine all the stored data to determine whether it is included in the warrant.  This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

b.     Searching computer systems and computer equipment for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is

an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

21.     To fully retrieve data from a computer system, the analyst needs all magnetic storage devices, as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitors, modems, routers, printers, webcams, USB devices, external storage devices, and any other devices connected to the computer may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

### DETAILS OF INVESTIGATION

22.     The defendant, Paul E. Pavulak, is a Tier III sex offender who has been convicted on two separate occasions of child sex crimes under Delaware law.

23.     On or about June 30, 1998, Paul E. Pavulak pleaded guilty in the Superior Court of New Castle County to Unlawful Sexual Contact Second Degree, in violation of Title 11, Delaware Code, Section 768. The child victim was approximately eleven years old at the time of the sexual assault. Pavulak was sentenced to four months probation for that offense.

24.     On or about April 6, 2005, Paul E. Pavulak pleaded guilty to Unlawful Sexual Contact Second Degree, in violation of Title 11, Delaware Code, Section 768. The victim was approximately ten years old and in Pavulak's custody and care at the time of this sexual assault.

Pavulak was sentenced to two years in prison for that offense.

25.     In July 2008, Pavulak registered with the Delaware Sex Offender Registry by providing a residential address at a motel in Wilmington, Delaware and listed himself as being unemployed. Pavulak did not disclose that he utilized any email addresses.

26.     In October 2008, Pavulak changed his Delaware driver's license to the business address of Concrete Tech Inc., in New Castle, Delaware. Pavulak is the former owner of Concrete Tech, which is now owned and operated by two of Pavulak's adult children.

27.     At no point did Pavulak update his Delaware sex offender registration to include the address of Concrete Tech, as either a place of residence or work, as required by Delaware (and federal) law. As a result, Pavulak has been charged with Failure to Re-Register as a Sex Offender, in violation of Title 11, Delaware Code, Section 4120.

28.     In October 2008, the Delaware State Police Sex Offender Registry Unit received information from two reliable sources that Pavulak was viewing child pornography on a computer connected to the Internet at Concrete Tech's New Castle office. CI-1 advised law enforcement officers that he/she observed Pavulak viewing suspected child pornography on multiple occasions on a computer located in Concrete Tech's office. CI-1 described the images as females between approximately 16 and 18 years old. CI-2 also advised that he/she observed Pavulak viewing sexually explicit images of females between ages 12-15 on a computer at the Concrete Tech office. CI-1 further advised that one of the websites he/she saw Pavulak access was called "cherryblossom.com."

29.     CI-2 advised that Pavulak was planning a month-long trip to the Philippines between December 2008 and January 2009. During this trip, Pavulak told CI-2, he had arranged to have sexual encounters with various females.

30.     CI-2 also reported that Pavulak told him he had purchased a digital camera capable of holding approximately 1.5 hours of video for his trip to the Philippines.  CI-2 also advised that Pavulak worked out of and stayed in an office located in the rear of Concrete Tech's building, where Pavulak had access to a desktop and laptop computer.  CI-2 also advised that Pavulak had recently obtained a video camera for use with his laptop computer.

31.     On or about December 5, 2008, Pavulak updated his Delaware Sex Offender registration at Troop 2 headquarters to reflect a residential address in the Philippines.

32.     On or about December 8, 2008, Pavulak departed JFK International Airport, in New York, and subsequently arrived at his final destination in the Philippines.

33.     On January 14, 2009, Pavulak entered the United States at the Philadelphia International Airport on a US Airways flight from the Philippines.  As part of his entry, a border search of Pavulak and the electronic equipment in his possession was conducted for evidence of contraband relating to child sexual exploitation.  The search resulted in the discovery of a computer bag, a computer power cord, and computer-related software.  No laptop computer was found.

34.     Pursuant to his entry, surveillance was conducted of Pavulak from the Philadelphia International Airport by members of the Delaware State Police and the United States Marshal's Service-Fugitive Task Force to his place of residence/business at Concrete Tech's New Castle office.

35.     At approximately 7:30 a.m. on or about January 19, 2009, law enforcement officers executed a search warrant at Concrete Tech's New Castle office.  Pavulak answered the front door.  He stated that he had been sleeping on a couch in the rear office.  Pavulak admitted that he traveled to the Philippines between December 10, 2008 and January 14, 2009.  Pavulak

was taken into custody due to an outstanding warrant for violating the Delaware sex offender registration law.

36.     After being transported to Troop 2, Pavulak waived his Miranda rights and agreed to be interviewed.  Pavulak admitted that he occupied the rear office in the Concrete Tech building.  He also admitted that he worked, on average, 10-20 hours per week at the business, but that he did not work every week.  He stated that the business paid him a couple hundred dollars.  Pavulak also identified his email address as "pavy224@yahoo.com."  Pavulak also admitted that he did travel to the Philippines and met several females there, but claimed that all of them were over the age of consent.

37.     The items seized during the search included a Nokia cellular telephone and various pieces of computer equipment, including a desktop computer and the laptop computer.  The laptop was seized from the rear office, which also contained a large red couch, entertainment center and desk.  Also seized from that rear office were Pavulak's sex offender registration papers, mail bearing his name, clothes, and scrap papers and maps relating to the Philippines.

38.     A forensic examination of the laptop revealed approximately 29 images of child pornography that were saved to the hard drive.  These images depicted teenage and prepubescent females engaged in sexually explicit conduct either alone or with adult males.  In addition to these saved images, the forensic examination also revealed hundreds of images of child pornography that had been accessed, stored in a folder on the hard drive, and then subsequently deleted.  These files remained intact on the hard drive.  These images depicted various types of child pornography, including the sexual penetration of children as young as infants.

39.     Also found on the laptop was a video of Pavulak engaged in sexual conduct with a female later identified at Ara Duran, of the Philippines.  Also found was a digital picture of

Pavulak with Duran and a 2-3 year old female subsequently identified as Duran's daughter ("Jane Doe").  Also found was a separate file containing a digital photograph of Duran and Jane Doe sitting with a silver and black Gateway laptop and a few DVDs, including a Sesame Street Alphabet DVD.

40.     Also found on the laptop were references to the website cherryblossom.com. Further investigation revealed that cherryblossom.com is a social networking site that contains numerous profiles of women primarily from Southeast Asia and, in particular, the Philippines. The site also contains numerous profiles of men who advertise to meet these women for sex.

41.     Investigation revealed that Pavulak placed a profile with various pictures of himself on cherryblossom.com.  He wrote in his profile that he was "looking for a woman 18 to 25 that wants to become my girl friend and passionate lover."  Pavulak also advised potential mates that he planned to visit the Philippines in December 2008 and January 2009.

42.     As noted above, Pavulak identified his email address as "pavy224@yahoo.com." In response to an administrative subpoena, Yahoo produced business records confirming that the account was created by "Mr. Paul Pavy," who provided a zip code of "19804," which covers Wilmington, Delaware.  Yahoo also produced the Internet Protocol addresses that were utilized to access the email account.  In response to an administrative subpoena, the internet service provider that controlled one of the IP addresses used to access the account during Pavulak's trip to the Philippines confirmed that the IP address was then assigned to an internet service account registered under:

     A.     the business name "Paul Pavulak Concrete Repair System;

     B.     the customer name "Gwen Kunkel," Pavulak's daughter and part-owner of Concrete Tech; and

C.    the account address of Concrete Tech's New Castle office.

43.    Pavulak had not registered this email address with the Delaware State Police Sex Offender Registry, as required by state (and federal) law.

44.    During the course of the investigation, the Delaware State Police secured a search warrant for the contents of this email account.  Law enforcement officers have obtained and reviewed those contents, some of which are described below.

45.    In September 2008, Pavulak emailed Ara Duran, at her email address of shahara_babes@yahoo.com.  Noting that they "haven't had a chance to chat yet," Pavulak wrote that he was seeking a wife "with a child."  He also wrote:  "It is extremely important the [sic] my wife whats [sic] an aggressive very active open sex desire like me.  Also one who will experiment with different possibilities about sex."  He further noted that "sexy underwear is a must.  I like lace and bows on panties and bras."

46.    On October 1, 2008, Ara Duran responded by sending an email from her account (Shahara_babes@yahoo.com) to Pavulak's Yahoo email address (Pavy224@yahoo.com).  She wrote that they were "a good match."  She also noted that she "went to the malls and I bought more panties of my own and for my daughter too."

47.    On October 3, 2008, Pavulak replied by email requesting pictures of Duran and her daughter and noting that "I will like dressing you and your daughter."

48.    On October 5, 2008, Duran and Pavulak engaged in a Yahoo instant message chat, in which they discussed viewing each other on web cameras.  Pavulak stated that he was "setting up all the computers . . . in the new shop."  Pavulak wrote that he was "so happy that you have a daughter" and asked her name.  As they discussed Pavulak's upcoming trip to the Philippines during which they would meet, Pavulak wrote "you will bring [Jane Doe] with you right" and "I

want to meet both of you."

49.     On October 10, 2008, Duran and Pavulak engaged in another Yahoo online chat, in which Pavulak asked "where are the pictures you promised?" Duran wrote "give me your email add hon hon," to which Pavulak replied: "pavy224@yahoo.com." Shortly thereafter, Duran asked Pavulak for his address, to which he replied by typing the address of Concrete Tech's office.

50.     After Duran sent pictures to Pavulak via email, he responded on October 16, 2008 by stating that he wanted "to meet the two of you in Cebu" and that he planned to arrive on December 10. He noted that he "already got a gift for [Jane Doe] that I am sure she will like" and that he could not "wait to meet the two of you."

51.     Between October 23, 2008 and December 7, 2008, Duran and Pavulak exchanged a number of emails in which she transmitted images of herself and Jane Doe to Pavulak, and in which they exchanged information about possible hotels at which they could meet.

52.     On December 7, 2008, Pavulak sent an email to Duran advising her of the hotel at which he wanted to stay with her and Jane Doe between December 16 and 23. He wrote that his first choice for a room "has a king size bed and we all will fit fine in that."

53.     As noted above, Pavulak traveled to the Philippines between December 10, 2008 and January 14, 2009. During his stay, he met Ara Duran and Jane Doe. As also noted above, a digital file containing a picture of Pavulak with Duran and Jane Doe was recovered from the laptop computer in Pavulak's office at Concrete Tech during the January 21, 2009 search.

54.     On January 11, 2009, Duran sent Pavulak an email asking if he was "already at home" and thanking him for, among other things, the "washing machine," about which she wrote "we like it very much."

55.     A forensic examination of the Nokia cellular telephone seized from Pavulak revealed that he transmitted to and received a number of text messages from Duran on January 13, 2009, which was the date on which he flew back to the United States.  Pavulak's outgoing messages on January 13, 2009 included the following:

"Hope the little girl will like it too."

"Teach her every thing hon"

"That will be nice and I will suck her too u suck her a lot so she likes it"

"Cant wait to see you both naked on the cam using the vgbrator"

"U are really good the way u are teaching u think u can get her to suck me next December"

"u and know that u can make it all work out for the three of us to be happy sex life"

56.     On January 18, 2009, Pavulak and Duran engaged in an instant message chat via Yahoo.  Pavulak stated that he was in his office "and am cooking breakfast."  Pavulak stated that he "will be there" for Duran's birthday on October 11.  Duran wrote back that "the dildo and the vibrator was in my bed right now hon."  As to Jane Doe, Pavulak wrote:

"if you play with her [vagina] a lot then by the timei get there she will want me to play with her"

. . . .

"I wish she would just spread her legs and let me lick her"

57.     After Duran responded that "she loves the vibrator very much hon," Pavulak replied:  "hope I can see her use it soon."  He also wrote:  "I'm going to shoot cum in her mouth at age three when I come back there" and that "ill give her a chocolate bar afterward . . . if she

sucks good." Pavulak continued: "u just keep showing her the movie how u suck me . . . so she will know."

58.     As the chat continued, Pavulak asked Duran to display her genitals on the webcam. After Duran apparently did so, Pavulak wrote: "now [Jane Doe's]. Duran apparently displayed [Jane Doe] on the webcam, but wearing a diaper. Duran wrote: "you cant see [Jane Doe's vagina]," to which Pavulak replied: "well maybe sometime soon." Duran responded that Pavulak would see Jane Doe nude on the webcam that evening – the evening before Pavulak was arrested and the laptop was seized.

59.     Pavulak and Duran did not chat online during the evening of January 18, 2009. At 7:30 a.m., on January 19, 2009, the Delaware State Police executed the search warrant at Pavulak's office and arrested him.

60.     Subsequent to Pavulak's January 19, 2009 arrest, ICE agents located and interviewed Ara Duran in the Philippines. Duran confirmed that she engaged in sexual acts with Pavulak during his trip to the Philippines. She further stated that Pavulak paid her $200 and gave her the SUBJECT COMPUTER so that they could continue to communicate once he returned to the United States.

61.     The ICE agents also confirmed that Duran has a two-year-old daughter named as she is identified in Duran and Pavulak's internet communications. Duran also confirmed that Pavulak would ask sexual questions about her daughter and offered her money to have sex with her daughter.

62.     Investigation also has confirmed that Pavulak used the online money service Xoom.com to transfer $400 to Duran between October 22 and December 8, 2008.

63.     An ICE special agent asked Duran if she would voluntarily turn the laptop computer over to him for forensic analysis.  Duran agreed after the special agent read a voluntarily consent form to Duran.  Duran subsequently stated that she understood, signed the form, and provided the laptop to the special agent.

64.     On March 23, 2009, the ICE special agent sent the SUBJECT COMPUTER  to your affiant in Wilmington, Delaware for analysis for evidence of child sexual exploitation.

## CONCLUSION

65.     Based on the above information, there is probable cause to believe that the SUBJECT COMPUTER contains evidence, fruits and instrumentalities relating to Paul E. Pavulak's violations of:  (1) Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography; and (2) Title 18, United States Code, Section 2422(b), Attempted Enticement of a Minor.

66.     Your affiant therefore respectfully requests that the Court issue a warrant authorizing the search of the SUBJECT COMPUTER and the seizure of the items listed in Attachment B.

Respectfully submitted,

Patrick McCall
Special Agent, ICE

Subscribed and sworn
before me this __30__ of
March 2009

Honorable Mary Pat Thynge
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                          )
                                         )
Gateway Laptop Computer,                 )        No. 09- 38M
Model MA6, bearing product key number    )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y            )

## ATTACHMENT A

The SUBJECT COMPUTER is Gateway laptop computer, silver in color, model number

M6A, bearing product key number serial number BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE SEARCH OF                                )
                                               )
Gateway Laptop Computer,                       )        No. 09- 38 M
Model MA6, bearing product key number          )
BPF9H-D4DMH-V8T4V-YBYQ4-WQ23Y                   )

## ATTACHMENT B

A.    Any and all materials or items related to attempted enticement or sexual activity with minors as well as any gifts, items or things of value relating to the enticement of or sexual activity with minors.

B.    Any and all materials pertaining to travel by Paul Pavulak or any other person in interstate or foreign commerce.

C.    Records, documents, electronic communications, notes, or any other materials relating to Paul Pavulak, Ara Duran, "pavy224@yahoo.com," or "shahara_babes@yahoo.com."

D.    Records, documents, electronic communications, notes, or any other materials relating to correspondence or contact between any individuals relating to sexual activities or travel for purposes of engaging in sexual activities.

E.    Any and all materials or items intended for use in connection with the production, creation, storage, transmission, transportation, distribution or possession of child pornography, child erotica, or materials relating to the attempted enticement of or a sexual interest in children.

F.    Internet billing and usage records.

G.    Records or other items that evidence ownership or use of the SUBJECT COMPUTER.

H.    Any and all images, videos or recordings in any variety or format containing adult and/or child pornography, erotica, or any other visual depiction of nudity, sexual acts or of the individuals involved in such acts.

I.    Information, correspondence, records, documents or other materials pertaining to the production, possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or of child erotica or the discussion of sexual activity involving minors.

J.      Information or materials relating to the Philippines or Southeast Asia.

K.      Credit card or other financial information.

Exhibit N

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

UNITED STATES OF AMERICA,          :      CRIMINAL ACTION
                                   :
                    Plaintiff,     :
                                   :
         vs.                       :
                                   :
PAUL E. PAVULAK,                   :
                                   :
                    Defendant.     :      NO. 09-00043 (SLR)


- - -

                              Wilmington, Delaware
                              Wednesday, October 5, 2011
                              4:43 o'clock, p.m.

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

- - -

APPEARANCES:

          EDWARD J. McANDREW, ESQ.,
          Assistant United States Attorney

                  -and-

          BONNIE L. KANE, ESQ.
          U.S. Department of Justice - Criminal Division
          (Washington, D.C.)


                  Counsel for Plaintiff



                              Valerie J. Gunning
                              Official Court Reporter

1    imprisonment if the person has a prior sex offense in which

2    a victim was -- in which a minor was the victim.

3         The predicate language of federal sex offense is

4    further defined as an offense under Section 2251 relating to

5    the sexual exploitation of children.  There is no dispute

6    that you were convicted under Section 2251 in Count 3 of the

7    indictment, attempted production of child pornography, and

8    that the victim of that offense was a minor.

9         To the extent that the amendments to Section

10   2251(e) play into your counsel's analysis, I find that the

11   holdings in United States versus Randolph, 364 F.3d 118,

12   Third Circuit 2004, and United States versus Sanchez, 2011

13   Westlaw, 3677935 from the Sixth Circuit this summer refute

14   that argument.

15        There is also no doubt that you were convicted,

16   that you have two prior convictions that are classified as

17   sex offenses, unlawful sexual contact, second degree, in

18   which the victims were minors.  The fact that the elements

19   of this offense include the intentional sexual contact with

20   another person who is less than 16 years of age takes this

21   out of Apprendi.

22        Finally, the term of imprisonment is within

23   the range of punishment under both the statute of conviction

24   and the applicable guidelines.  It follows from my analysis

25   also that the alternate arguments made by the government for

1    reaching the same sentence under both the recidivist

2    provision of Section 2251(e) and the typical section,

3    3553(a) analysis, are consistent with my conclusion

4    that a term of life imprisonment is appropriate in this

5    case.

6            Therefore, pursuant to the Sentencing Reform Act

7    of 1984, it is the judgment of the Court that Paul E.

8    Pavulak is hereby committed to the custody of the Bureau

9    of Prisons to be imprisoned for a term of life imprisonment

10   on Count 3 and a consecutive term of 120 months on Count 5.

11           The defendant is also sentenced to terms of

12   imprisonment of 120 months each on Counts 1, 2 and 4,

13   which shall run concurrently with each other and with

14   Count 3.

15           The sentences of life imprisonment for Count 3

16   and 120 months consecutive for Count 5 are the mandatory

17   sentences available by statute for those counts.

18           Now, I am not going to follow through with any

19   conditions for supervised release.  It strikes me that if

20   you are in prison for life, that you will not be released

21   for supervised release, and therefore I will not do that,

22   will not bother doing that.

23           It is further ordered, however, that you shall

24   pay to the United States the mandatory assessment of $500,

25   which shall be due immediately.  The Court finds that you

# Exhibit O

IN THE COURT OF COMMON PLEAS
FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | No. 0901014058 |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL E. PAVULAK, | ) | |
| | ) | |
| Defendant. | ) | February 3, 2009 |

BEFORE:

HONORABLE MARY M. McDONOUGH,

APPEARANCES:

MARK A. DENNEY, Esquire,
Deputy Attorney General,
on behalf of the State,

CHARLES E. BUTLER, Esquire
on behalf of the Defendant.

TRANSCRIPT OF PRELIMINARY HEARING

LINDA A. LAVENDER
Official Court Reporter

00001669

Willey - cross

Q.     No, I mean when you opened the computer and started looking, I presume you created a folder, but was there a folder already in the machine that had these pictures in it?

A.     Yes, that's what I'm saying.

Q.     And, what was that folder, did it have a title or ...?

A.     Yes, there's a series of subfolders, but it was within the C volume, the profile Users, the profile Me, which was a subdirectory of Users.  App data is another subdirectory, local, Microsoft.  My pause indicates subfolders, Windows Photo Gallery and then Original Images was the actual subfolder.

Q.     Okay.  Do you know whether or not any, either the Me folder or any of the subfolders were password protected?

A.     I don't believe any of them were, I'm not sure that I could tell. When I opened up and looked at this hard drive, it's through a write protected device; it's not by opening up his laptop and powering it on and looking at folders that way.  It's through the write protected device through a forensic laptop, through the forensic software that we use, so...

Q.     I guess what I'm trying to understand is that if I were holding these things private to myself, I might put some sort of a password on there.  If I were just an officious busybody or whatever and I just got it, maybe I wouldn't have had a password protect.  Do you know whether or

**Willey - cross**

not, or could you tell whether or not these things were privatized if you will
or hidden on the laptop?

A.   By someone's intent?

Q.   Yes.

A.   I don't believe they were, no.

Q.   Okay.  And, you said you bookmarked twenty-one images; I
see the word preview and I'm trying to understand, have you been through
the whole hard drive at this point?

A.   The majority of the hard drive, I think we've gone through 80
percent of it, before we --

Q.   Eighty percent?

A.   Yeah, before we came up with these images.

Q.   Okay.  And, in that, you found twenty-one images and so are
you saying all twenty-one were grouped within this, what was it called
Microsoft downloaded images or something like that?

A.   Microsoft Windows Photo Gallery and then Original Images.

Q.   Okay.  Okay.  And, did you go through that whole folder, the
one that was called Original Images under the photo gallery?

A.   Yes.

Q.   And, did you find other images besides these twenty-one?

A.   Yes.

Q.   And, with respect to the -- I didn't mark it -- I think they were

# Exhibit P

1

2                    IN THE UNITED STATES DISTRICT COURT

3                    IN AND FOR THE DISTRICT OF DELAWARE

4                              - - -

5    UNITED STATES OF AMERICA,    :    CRIMINAL ACTION
                                  :
6              Plaintiff          :
                                  :
7         vs                      :
                                  :
8    PAUL E. PAVULAK,             :
                                  :
9              Defendant          :    NO. 09-00043 (SLR)

10                             - - -

11                                Wilmington, Delaware
                                  Thursday, September 23, 2010
12                                9:38 o'clock a.m.

13                             - - -

14   BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

15                             - - -

16   APPEARANCES:

17           EDWARD J. McANDREW, ESQ.
             Assistant U.S. Attorney
18
                     -and-
19
             BONNIE L. KANE, ESQ.
20           U.S. Department of Justice - Criminal Division

21                   Counsel for Plaintiff

22

23

24                                     Leonard A. Dibbs
                                       Official Court Reporter
25

correct?

A.  Yes, sir.

Q.  You can't make any determination as to why this data erasing program was run forensically, correct?

A.  No.

Q.  And it wasn't specifically targeting just those thumb cache photos that you noted that contained child pornography?

A.  It didn't target the thumb cache files at all.

Q.  Right.  That's --

A.  It targeted three specific files, what you see here as web usage.

Q.  Right.  You see all the things.  This is just a little thumb print of all the items contained there, correct?

A.  Yes, sir.

Q.  Okay.  All right.  You had a chance to forensically, obviously examine this computer, correct?

A.  Yes, sir.

Q.  And I'm not an expert, but when reading your report, I noticed that you found -- in your report I noticed that you found 1,130 CXE images, which I assume are child sexual exploitation images?

A.  That's correct.

Q.  And you indicated that they were a thumb cache /IBX.DB, correct?

A.  Yes.

Q.  What is contained in that thumb cache IBX.DB.

A.  After making that notation in the report, I came to the realization in speaking to a software inventor that the thumb cache IBX file contains no images at all.

Q.  So your report is incorrect?

A.  That's correct.

Q.  So what you provided to me is incorrect?

A.  That portion of the report is incorrect.

Q.  Okay.  Where did you find these 1,130 images, if at all?

A.  I utilized a program which actually parces out that IBX file, and then goes to the remaining thumb cache files 32, 96, 256 and 1024, and then basically gives them -- assigns them a time and date according to that index file.  That means where those files came from, those thumbnail files actually came from 32, 96, 256, and 1024.DB, not thumb cache or not under IBX files.

Q.  So all the dates that you provided in there are incorrect; is what you're saying?

A.  No.

Q.  You provided dates below that thumb cache, correct, where items were written or created on IBX/DB?

A.  Yes.

Q.  Are those dates not accurate or do they belong?

A.  I believe they are still accurate.  I'm not familiar with the program that I used to produce that information.  I checked

some of the files and cross-referenced them with EnCase, and found that the dates and times for files that I checked, a number of files that I checked were correct except for the time zone was off, so there was actually a four-hour discrepancy.

MR. ORTIZ:  If I may approach, your Honor?

THE COURT:  Yes, you may.

You can take ours back, if you need it.

MR. ORTIZ:  Yes, I do.  For some reason they are all established in a row.  Now I'm looking at all blank data.

BY MR. ORTIZ:

Q.  I'm showing -- I'm going to show you what I have marked as HF just for purposes of your review.

Do you recognize that?

A.  Yes, I do.

Q.  That is what?  Page 13 of the same report we were talking about?

A.  Yes, sir.

Q.  And that references the 1,130 images that I was just talking to you about, correct?

A.  Yes, sir.

Q.  You said you made a mistake regarding, correct?

A.  Yes, sir.

Q.  Are you indicating that the dates below there were that were modified are correct?

A.  To the best of my knowledge, the dates are correct.  The

times are off by four hours for many of the files.

Q.  What did you use to obtain those, EnCase?

A.  For this?

Q.  Yes?

A.  The information I used is a program call DM Thumbs.

Q.  Each one of those entries regarding those 1,130 thumbnails

has a modification date, correct?

A.  Yes.

Q.  And you would agree with me that, for example, you have 23

images where the entry was modified on Saturday, the first one

at the top of your list is February 9th, 2008, at 7:48 p.m.?

A.  Yes, sir.

Q.  If we go towards the bottom, you have an image that was

modified Thursday, 6/12/2008, at 8:17 p.m., correct?

A.  At the bottom, sir?

Q.  About one, two, three, four, five -- about five from the

bottom?

A.  Yes.

Q.  And another one above that that was modified on Saturday,

5/17/2008, at 12:30 p.m., correct?

A.  Yes, sir.

Q.  When you say a file was modified, what does that indicate?

A.  Actually, that indicates that the pointer to the file was

modified.  An entry in master file table to the original file.

Not the thumbnail image, the original image.

Q.  What I'm getting at is:  Can you tell us anything about that file that was modified?

A.  Well, you're getting a time and date when the original image was modified, yes, the entry was modified.

Q.  And can you say what type of imagine was in that file?

A.  No.

Q.  But it was contained in the same thumb cache where you found the child exploitation?

A.  Yes.

Q.  Now, you searched the computer for other identifiers -- and I'm sure from your experience -- to determine if you could find any other clues as to who was viewing the child pornography, correct?

A.  Yes, sir, I did.

Q.  You searched for e-mail links in connection with that?

A.  Time and dates, yes, sir.

Q.  Did you find any connections to the thumb cache?

A.  No.

Q.  Did you find any searches that were conducted for child pornography?

A.  No.

Q.  But these are common things that you would find in your investigation, correct?

A.  Well, possibly, yes.

Q.  These are things that you are trained to look for?

A.  Oh, sure, yes, sir.

Q.  You also received -- did you receive the disks that were confiscated from the offices at Concrete Technology?

A.  What type of disks?

Q.  It was a box of disks, 174 disks?

A.  CD-ROMs?

Q.  CD-ROMs and --

A.  We may have had them, but I did not examine those.

Q.  You did not examine them?

A.  Not me.

Q.  Okay.  Someone may have?

A.  I'm sure someone did.

Q.  Right.  If there was child pornography on the computer, it would have all this electronic data, correct?

A.  Yes.

Q.  It's fair to say that folks that are trying -- even if they are trying to take off child pornography from a computer, they may want to save it because it's valuable to them, yes, correct?

A.  That's, possible.  That's possible, yes.

Q.  Well --

A.  Well --

Q.  Well, people often store it in alternative means, say flash drives?

A.  Yes.

Q.  Something that they can keep and, you know, not have it be

# Exhibit Q

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4    UNITED STATES OF AMERICA,    :    CRIMINAL ACTION
                                  :
5              Plaintiff          :
                                  :
6         v.                      :
                                  :
7    PAUL E. PAVULAK,             :
                                  :
8              Defendant          :    NO. 09-00043 (SLR)

9                          - - -

10                            Wilmington, Delaware
                              September 24, 2010
11                            9:32 o'clock a.m.

12                          - - -

13   BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

14                          - - -

15   APPEARANCES:

16
             EDWARD J. McANDREW, ESQ.
17           Assistant U.S. Attorney

18                  -and-

19           BONNIE L. KANE, ESQ.
             U.S. Department of Justice - Criminal Division
20
                      Counsel for Plaintiff
21

22

23

24                            Leonard A. Dibbs
                              Official Court Reporter
25

1    Q.   Every employee?

2    A.   Every employee.

3    Q.   Did they?

4    A.   Some of them, yes.

5    Q.   What did do?   What did people do while on the computer?

6    A.   They would Facebook, they would check the MySpace page, or

7    Mapquest directions, check their e-mails.

8    Q.   Everybody was using the computer?

9    A.   Yes.

10   Q.   The company had no policy protecting that computer?

11   A.   No, we had no policy no passwords.

12   Q.   Did there come a time that a laptop was purchased?

13   A.   Yes.

14   Q.   When was that?

15   A.   August of '08.

16   Q.   Was it mobile, the laptop?

17   A.   No, it more or less stayed in my office on the desk.

18   Q.   Okay.  And was anybody permitted to use that?

19   A.   Anybody could use it, yes.

20   Q.   You had an internet connection?

21   A.   Internet connections, yes.

22   Q.   And nobody was monitoring that?

23   A.   No.

24   Q.   Now, do you recall some of the people that worked at CTI in

25   August, September?

1    A.   Yes.

2    Q.   Who would they be?

3    A.   Curtis Mack, Jadell Riggs, Michael Fletcher, Donald Brown,

4    and possibly Dennis McCormack.

5    Q.   Did those folks have keys?

6    A.   Yes.

7    Q.   So everybody had keys?

8    A.   Everybody had keys.

9    Q.   Everybody had keys, correct?

10   A.   Yes.

11   Q.   Everybody could use the computer?

12   A.   Yes.

13   Q.   Of course, Mr. Paul E. Pavulak could?

14   A.   Yes.

15   Q.   Mr. Paul R. Pavulak could?

16   A.   Yes.

17   Q.   I'm assuming Gwen?

18   A.   Gwen could use it.

19   Q.   Yourself?

20   A.   Myself.

21   Q.   I'm going to ask you about my client, Mr. Pavulak.

22   A.   Okay.

23   Q.   Paul E..

24   A.   Okay.

25   Q.   You've known him for some time?