IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL E. PAVULAK,

      Movant/Movant,

      v.

UNITED STATES OF AMERICA,

      Respondent/Plaintiff.

)
)
)
) Crim. No. 09-43SLR
) Civ. No. 14-290-SLR
)
)
)
)

**MEMORANDUM OPINION**

---

Paul E. Pavulak.  Pro se movant.

Shawn Weede.  Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Counsel for respondent.

---

March 31, 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I. INTRODUCTION

Paul E. Pavulak ("movant") is a federal inmate currently confined at the USP Tucson in Tucson, Arizona. Movant timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 135) The government filed an answer in opposition. (D.I. 157) For the reasons discussed, the court will deny movant's § 2255 motion without holding an evidentiary hearing.

## II. BACKGROUND

### A. Factual Background

After being released from prison on July 1, 2008, movant was required to register as a sex offender by virtue of two prior convictions for unlawful sexual contact with minors. (D.I. 157, Exs. 1-4) On or about August 18, 2008, movant created a Yahoo account with the username "Pavy224." (D.I. 80 at 14-15; D.I. 164, Ex. 130B) In or about August 2008, movant also created a profile on the website "cherryblossoms.com," which is used by sex tourists to solicit Philippine prostitutes. (D.I. 165, Ex. 186; D.I. 80 at 86-88, 124-127) In his profile, movant wrote that he was seeking "a lover" and that he would be "making several visits to the Philippines." (D.I. 165, Ex. 186)

Movant then began conducting online video and written chats (including webcam sessions) with various females in the Philippines, during which he expressed a sexual interest in minor and young adult girls. On August 26, 2008, movant emailed a woman later identified as Ara Duran, of Cebu, Philippines. (D.I. 80 at 93-95; D.I. 165, Exs. 198-201)

Movant subsequently engaged in an online and physical relationship with Duran, which included his traveling to the Philippines in December 2008 and January 2009 to meet her and her young daughter ("Jane Doe"). (D.I. 161, Ex. 77; D.I. 164, Exs. 131-136, 141, 175; D.I. 167, Ex. 292; D.I. 80 at 27-31) In particular, movant stayed with Duran and Jane Doe between December 16 and December 28, 2008. (D.I. 161, Exs. 70-71) Movant took numerous photographs of himself together with Duran and Jane Doe using his Casio digital camera. (D.I. 165, Exs. 197-202; D.I. 167, Exs. 279-81) A number of these photographs depict Duran and/or movant nude or engaging in sexual activity. (D.I. 166, Exs. 257, 258A, 259A; D.I. 167, Ex. 279) Others depict them in public places. (D.I. 166, Exs. 260-261; D.I. 167, Exs. 279-281) Movant also used that camera to photograph Duran and Jane Doe with a Gateway laptop computer. (D.I. 165, Exs 199-200) In some of these photographs, Jane Doe's pubic area appears to be either exposed or loosely covered with a diaper. (D.I. 165, Exs. 199-200)

Movant also recorded a number of videos depicting him and Duran engaged in sexual acts. (D.I. 166, Exs. 258, 259; D.I. 167, Ex. 283; D.I. 80, at 59-60) One video depicts Duran performing oral sex on movant. (D.I. 167, Ex. 283) Near the beginning of the video, movant states: "This will be [Jane Doe's] training video. You show her how to do it." *Id.*

Another video depicts Duran, Jane Doe and movant in a hotel room. (D.I. 167, Ex. 285) The video was recorded from a webcam attached to the laptop. The video begins with Jane Doe seated on Duran's lap. Jane Doe and Duran are clothed and appear to be watching something on the computer screen. Movant appears in the

camera frame completely nude and standing immediately next to the seated Duran and child. In portions of the video, movant's penis and pubic area are visible in the camera frame in close proximity to Jane Doe's face and torso. The child begins to cry. Movant then walks behind them and sits on the bed and dresses. Duran approaches movant and kisses him, while he grabs her pubic area. The child runs to her mother and cries. Movant goes over to the laptop and turns off the webcam. *Id.*

As he left the Philippines on January 13, 2009, movant used his Nokia cell phone to engage in a text message conversation with Duran regarding his plan for performing sexual acts Jane Doe on his next trip to the Philippines; his desire to watch Jane Doe on his webcam using a sex toy he supplied to Duran; and encouraging Duran to perform sexual acts on the child to prepare her for movant's return. (D.I. 167, Ex. 288; D.I. 79 at 136-145)

In the fall of 2008, the Delaware State Police ("DSP") Sex Offender Registry Unit received tips that movant was working and staying at his adult children's office, CTI, which he had not reported on his sex offender registration documents. (D.I. 83 at 54-55) Detective Robert Jones received information from two CTI technicians (Curtis Mack and Jahdel Riggs) that movant had been working at CTI since the summer of 2008. (D.I. 83 at 56-57, 253-55, 275-77) They also reported that they had witnessed movant using computers at the office to view sexually suggestive images of what appeared to them to be minor females. *Id.* at 58, 83-85, 260, 279-80, 287. In addition, both witnesses reported that they had seen movant on the "cherryblossoms.com" website and engaged in webcam sessions with various females who were posing suggestively. *Id.*

3

On January 14, 2009, movant arrived at Philadelphia International Airport on a flight from the Philippines. (D.I. 167, Ex. 292; D.I. 83 at 61-62, 290)  Movant was carrying a laptop bag containing power cord, computer equipment, but no laptop.  (D.I. 83 at 62, 106, 292)   Movant told a Customs agent that he left the laptop in the Philippines. *Id.* at 292.  Law enforcement agents followed movant as he left the airport in a vehicle registered to his daughter, and was driven directly to the CTI office. *Id.* at 62-65.  Upon arriving there, movant went inside alone. *Id.*  Agents observed movant go into a back office and eventually turn out the light. *Id.*

On January 18, 2009, movant engaged in another webcam chat with Ara Duran. (D.I. 167, Ex. 275)  Jane Doe was with Duran during this webcam chat.  The conversation quickly turned sexual, and movant instructed Dura to display Jane Doe's genitals on the webcam. *Id.*

At approximately 7:30 a.m. on January 19, 2009, DSP officers executed a search warrant at the CTI office occupied by movant.  (D.I. 83 at 65, 106-107)  Movant was present for the search.  (D.I. 159, Exs. 25-27; D.I. 83 at 67-70, 112)  In a post-arrest interview, movant admitted that he occupied the rear office in the CTI suite and had been "helping out" at the business by working about 10-20 hours per week.  (D.I. 83 at 72-73)  He also admitted that his email address was Pavy224@yahoo.com, and that he had traveled to the Philippines between December 10, 2008 and January 14, 2009. *Id.* at 76-77, 83.

Many items showing movant's use and control over the rear office were documented, including sleeping items, toiletries, food and laundry (D.I. 160, Exs. 43-48); a laptop computer, a Casio digital camera and memory cards found to contain

4

movant's chats, work-related information, and photographs of movant, Duran, Jane Doe and other females (D.I. 160, Exs. 43, 49-50, 52, 56; D.I. 161, Exs. 65- 66); a Nokia cellular telephone containing movant's text messages to Duran (D.I. 161, Ex. 64; D.I. 167, Ex. 288); documents relating to movant's travel to the Philippines and visit with Duran (D.I. 161, Exs. 70-71, 74, 77, 83-86; D.I. 162, Ex. 93); notes on various foreign females with whom movant was chatting online and planned to meet, as well as notes relating to jobs (D.I. 162, Ex. 97); and movant's sex offender registration, banking and insurance documents. (D.I. 160, Ex. 51; D.I. 161, Ex. 89; D.I. 162, Ex. 104; D.I.163, Exs. 106, 112)

A desktop computer was seized from the front receptionist area of the suite. (D.I. 160, Exs. 23, 30, 33) This computer was found to contain approximately 2,904 thumbnail images of child pornography. (D.I. 80 at 200:18-209:25; D.I. 165, Exs. 190-95; D.I. 167, Ex. 291) The computer also contained numerous digital photographs of movant in various settings. (D.I. 165, Exs. 187-188; D.I. 80 at 140:11-147:18) Some of these images also appear on movant's "cherryblossoms.com" webpage. (D.I. 80 at 147:3-18) The computer also contained hundreds of chat logs involving "pavy224" and females in the Philippines, including 11 chat logs with Ara Duran. (D.I. 80 at 149:10-153:17; D.I. 164, Ex. 174)

A laptop computer seized from movant's rear office in the CTI suite contained approximately 2,811 image files of child pornography. (D.I. 166, Exs. 261-269; D.I. 167, Ex. 291; D.I. 79 at 62:24-63:23, 68:2-70:23,107:4-109:10) Twenty-nine of the images of child pornography, along with forty-nine images of movant, Duran and adult pornography, had been accessed and edited using Windows Photo Gallery between

5

September and November 2008.  (D.I. 165, Ex. 238; D.I. 167, Ex. 295; D.I. 79, 62:24-63:23, 68:2-70:23; D.I. 81 at 73:20-75-18)  These images were saved in Windows Photo Gallery on six dates between September 13 and November 22, 2008, while movant was working and engaging in online chats from the CTI office.  (D.I. 79 at 76:8-25)  A number of the images of child pornography had been accessed and edited on the same dates and around the same times as had images of movant.  (D.I. 165, Exs. 209-237, 238, 240-44, 246-54; D.I. 167, Ex. 295; D.I. 79 at 71:18-82:11, 92:7-101:6)  Most of these dates were on weekends or Tuesday nights, when other workers were not at the office and when movant generally engaged in his online chats.  (D.I. 79 at 77:7-78:12)  Found in other sections of the laptop hard drive (outside of Windows Photo Gallery) were numerous images of movant, Duran and Jane Doe, taken with movant's Casio digital camera (also seized from the rear office).  (D.I. 166, Exs. 246-257, 260; D.I. 79 at 103:7-107:21)

The laptop computer also contained chat logs for movant's online chats, including those with Duran.  (D.I. 166. Exs. 270-273; D.I. 167, Exs. 274-275; D.I. 79 at 110:22-121:4, 124:24-133:9)  There were more than 300 log-ins to movant's "pavy224" account on that laptop. (D.I. 81 at 87:1-8)

### B. Procedural Background

Movant was indicted on the following charges: (1) failure to register and to update a registration as a sex offender, in violation of 18 U.S.C. § 2250(a); (2) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B); (3) attempted production of child pornography, in violation of 18 U.S.C. § 2251(a); (4) attempted coercion and enticement of a minor, in violation of18 U.S.C. § 2422(b); and (5)

committing a felony offense involving a minor while registered as a sex offender, in violation of 18 U.S.C. § 2260 A.  (D.I. 12; D.I. 13)  In October 2009, movant moved for a *Franks* hearing and to suppress the evidence seized from his office and Yahoo account. (D.I. 20)  The court denied that motion.  (D.I. 29)  In September 2010, a jury convicted movant of all five counts of the indictment.  (D.I. 72; D.I. 73)  Movant filed a motion for judgment of acquittal or for a post-trial *Franks* hearing, which the court denied.  (D.I. 93; D.I. 118)  On October 5, 2011, the court sentenced movant to: (1) life imprisonment on count three (attempted production of child pornography); (2) a consecutive term of imprisonment of 120 months on count 5 (enhanced penalties for registered sex offenders); and (3) concurrent terms of imprisonment of 120 months on count one (failure to register as a sex offender), count two (possession of child pornography), and count four (attempted coercion and enticement of a minor).  (D.I. 124)

Movant appealed, and the Third Circuit Court of Appeals affirmed his convictions and sentence.  *See United States v. Pavulak*, 700 F.3d 651 (3d Cir. 2012).

## III.  DISCUSSION

Movant timely filed his *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting a total of eleven claims.  However, given their repetition, the court will group the arguments into the following six claims: (1) the jury selection process was unconstitutional; (2)  the good faith exception was inapplicable to the warrantless search of movant's office and email account; (3) there was insufficient evidence to support movant's conviction for knowing possession of child pornography; (4) defense counsel provided ineffective assistance on numerous occasions; (5) the court violated movant's due process rights by finding facts that raised his "statutory

7

minimum" sentence; (6) defense counsel's cumulative errors warrant relief; and (7)

movant's conviction under 18 U.S.C. § 2250 (failure to register as a sex offender and

update sex offender registration) should be vacated because his predicate sex offenses

pre-date the effective date of the Sex Offender Registration and Notification Act

("SORNA").

### A. Claim One: Unconstitutional Jury Selection Process

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court

to vacate, set aside, or correct his sentence on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The relief sought under 28 U.S.C. § 2255 is reserved for

extraordinary circumstances. *See Brecht v. Abrahamson,* 507 U.S. 619 (1993). If a

movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and

cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant

demonstrates cause for the default and prejudice resulting therefrom, or that he is

actually innocent. *See Bousley v. United States,* 523 U.S. 614, 616, 621-23 (1998). To

establish cause for a default, a movant must demonstrate that "some objective factor

external to the defense impeded counsel's efforts to raise the claim." *United States v.*

*Essig*, 10 F. 3d 968, 979 (3d Cir. 1993), *abrogated on other grounds as explained in*

*United States v. Peppers*, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). Significantly, an

attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a

movant's procedural default only if counsel's failure amounts to constitutionally

8

ineffective assistance of counsel. *See Hodge v. United States*, 554 F.3d 372, 379 (3d

Cir. 2009).  To establish prejudice, a movant must show "that the errors at [his] trial . . .

worked to [his] actual and substantial disadvantage, infecting [his] entire trial with error

of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 179 (1982).

Notably, if the movant fails to demonstrate cause, a court is not required to determine if

the movant was prejudiced by the default. *See Smith v. Murray*, 477 U.S. 527, 533

(1986).

In claim one, movant contends that his Sixth Amendment right to a public trial

and his statutory right to be present "at every stage of the trial" under Federal Rule of

Criminal Procedure 43(a) were violated.  More specifically, he complains about the

court's act of questioning individual jurors in chambers without him present.[1]

---

[1]Movant was present when the court began to discuss how it wanted to conduct the voir
dire process. (D.I. 158, Ex. G)  The court asked counsel if it made sense to read all of
the voir dire questions in open court to the entire venire, and then conduct individual
follow up questioning in chambers, instead of at side bar. (D.I. 157-5 at 4-5)  Noting
that virtually every member of the venire was likely to have a positive response to at
least one of the voir dire questions, counsel for both sides agreed with the court's
suggested approach. *Id.* at 5.  Defense counsel conferred with movant about this
process, and neither movant nor defense counsel objected to it. (D.I. 158, Ex. G ¶ 5-6)
In his affidavit, defense counsel explains that he advised movant that it was best if
movant did not accompany the lawyers into chambers for individual voir dire. *Id.*
Ninety-nine prospective jurors were listed in the venire, with sixteen being absent.  The
court briefly summarized the case, introduced the parties, and read each voir dire
question to the venire in open court.  Movant was present in the courtroom as these
questions were read to the venire.  After reading the questions, the court told the jurors
that they would be called individually into the jury room to discuss any responses that
they had to the questions.  Movant was present, but did not object to this process.  Each
prospective juror was brought to the jury room individually to discuss their responses to
any of the questions read in the courtroom.  Counsel for both sides were permitted to
freely question the jurors about their responses.  The court did so as well.  After
individual questioning was completed, the court provided counsel with its list of jurors
"who should be excused for cause." (D.I. 157-5 at 168)  With input from both sides, the
court struck 42 prospective jurors for cause based on the interviews.  The portion of the

The record in this case reveals that movant defaulted claim one because he did not raise it to this court during jury selection or to the Third Circuit on direct appeal. Movant attempts to establish cause by blaming defense counsel for not challenging the process during jury selection or raising the issue on direct appeal. This argument is unavailing. An attorney's error can constitute cause for a procedural default, but only if the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. As discussed later in this opinion, the court concludes that defense counsel's actions with respect to jury selection did not amount to constitutionally ineffective assistance. *See infra* at 13-16. Therefore, movant has failed to establish defense counsel's performance as cause for his default of claim one.

Given movant's failure to establish cause, the court will not address the issue of prejudice. The court also notes that movant's default of claim one cannot be excused under the miscarriage of justice exception to the default doctrine, because he has not

---

proceedings in the jury room ended, and counsel and the court returned to the courtroom. (D.I. 157-5 at 175-76) The court then conducted the peremptory challenge phase of the jury selection in the courtroom, and movant was present with defense counsel. Defense counsel and his co-counsel conferred with movant about particular jurors as they were preliminarily seated in the jury box, including sharing information gleaned during the individual questioning of those jurors. (D.I. 158, Ex. G , ¶ 9-10) With movant's input, defense counsel and the government exercised peremptory challenges. (D.I. 157, Ex. H, Jury Impanelment Chart) Defense counsel exercised all ten of the peremptory challenges allotted to movant, striking juror nos. 2, 17, 27, 28, 40, 49, 61, 72, 79, and 84. The government exercised all six of its allotted peremptory challenges. *Id*.

After all peremptory challenges were exercised, the court asked the selected jurors to take their seats in the jury box. All counsel agreed that all other members of the panel could be excused. (D.I. 157-5 at 177-78) The clerk swore in the jury. Movant was present in the courtroom and did not object to the jury process either prior to or after the swearing in of the jury.

provided new reliable evidence of his actual innocence.  Accordingly, the court will deny

claim one as procedurally barred.

### B. Claim Two:  Warrants Lacked Probable Cause

"Once a legal argument has been litigated and decided adversely to a criminal

movant at his trial and on direct appeal, it is within the discretion of the district court to

decline to reconsider those arguments if raised again in collateral proceedings under 28

U.S.C. § 2255."  *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981).  As a

general rule, relitigation of a claim considered on direct appeal is barred unless: (1)

there is newly discovered evidence that could not reasonably have been presented at

the original trial; (2) there is a change in applicable law; (3) counsel provided ineffective

assistance; or (4) other circumstances indicate that the accused did not receive full and

fair consideration of his federal constitutional and statutory claims.  *See United States v.*

*Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979); *see also United States v. DeRewal*, 10 F.3d

100, 105 n.4 (3d Cir. 1993); *Davis v. United States*, 417 U.S. 333, 342 (1974).

In claim two, movant asserts that defense counsel and appellate counsel failed to

argue that the good faith exception to the warrant requirement should not have applied

because the affiant for the search warrant application made false statements relating to

tips about movant viewing "child pornography."  The government, however, interprets

the claim as also alleging a free standing claim.  Therefore, the court will exercise

prudence and view the claim as both a free standing argument and as an ineffective

assistance of counsel argument.[2]

---

[2]The court discusses the related ineffective assistance of counsel argument later in the opinion.

11

Movant's argument regarding the inapplicability of the good faith exception to the warrant requirement was fully considered by the Third Circuit during movant's direct appeal. Since there are no other *Palumbo* factors compelling post-conviction review, the court declines to review the issues again. Accordingly, the court will deny claim two as procedurally barred.

### B. Claim Three: Insufficient Evidence

Movant contends that the child pornography images found on his laptop "originated" during a time he was in prison. As such, he contends that the jury could not have found that he knowingly possessed the images of the child pornography found on his laptop.

Movant's argument regarding the "origination" of the child pornography images merely re-characterizes his argument in his motion for acquittal and in his direct appeal that there was insufficient evidence to show that he -- as opposed to someone else at the CTI office – knowingly possessed thousands of pornography images found to have been accessed on his laptop and another computer in the office. Movant raised this same argument in his motion for acquittal, which the court denied. (D.I. 188) Movant also raised this same argument on direct appeal, and the Third Circuit denied it. *See Pavulak*, 700 F.3d at 661-65. Finally, there are no other *Palumbo* factors compelling post-conviction review. Movant's undefined assertion that the images "originated" prior to his release from prison does not constitute newly discovered evidence, nor does it

12

negate the "ample evidence" presented to the jury demonstrating that he knowingly possessed those images on the HP laptop.[3]  *See Pavulak*, 700 F.3d at 669.

Based on the foregoing, the court declines to review the movant's insufficient evidence argument again.   Accordingly, the court will deny claim three as procedurally barred.

### D. Claim Four:  Ineffective Assistance of Counsel

Movant asserts that defense counsel (and, in one instance, appellate counsel) provided ineffective assistance by:  (1) failing to exercise any peremptory challenges during jury selection; (2) waiving movant's presence from the individual questioning of prospective jurors; (3) failing to argue that the good faith exception to the warrant requirement should not have applied because the affiant made false statements relating to tips about movant viewing "child pornography"; (4) failing to argue that there was insufficient evidence to support his conviction for possession of child pornography, because the child pornography images found on his devices "originated" when movant was in jail without access to the devices; (5) failing to file a motion to suppress the search of his Nokia cell phone and his motel room; (6) failing to challenge the search and seizure of the Gateway laptop; and (7) persuading movant to sign a stipulation as to

---

[3]Notably, movant fails to mention that the files depicting child pornography that were found in the "Windows Photo Gallery" folder of his HP laptop were "created" – meaning they were saved to the hard drive of his laptop – on six different dates after which he was present at the CTI office. (D.I. 97-1 at 1, 9; D.I. 105 at 3)  The "created" date shows when movant saved particular files in particular folders on his drive. (D.I. 157 at 36)  Since movant obtained these files from elsewhere, the fact that the "last written" dates range in a time frame prior to movant's arrival at CTI is not inconsistent with the record. *Id.*

13

his prior convictions, which triggered the enhanced penalty provisions under § 2251(e) and § 3559(e).

Movant has properly raised his ineffective assistance of counsel allegations in the instant § 2255 motion rather than on direct appeal,[4] and the court must review these arguments pursuant to the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 694. Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### 1. Peremptory challenges

Movant contends that defense counsel "did not exercise any peremptory strikes." According to movant, "he would have moved to strike at least five of the jurors who sat on jury" if he had been present during jury impanelment.

---

[4]*See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996).

This argument is both specious and factually baseless. Defendants get ten

peremptory challenges, with the possibility of not more than three additional challenges

for alternate jurors. *See* Fed. R. Crim. P. 24(b)(2),(4). The record demonstrates that

movant exercised all ten peremptory challenges allotted to him after conferring with his

counsel and observing the prospective jurors in the courtroom. (D.I. 158, Ex. H, Jury

Impanelment Chart; Ex. G, ¶ 9, 10) Therefore, the court will deny this argument.

### 2. Waiver of movant's presence during court's individual voir dire

Movant argues that defense counsel was ineffective for failing to require his

presence in the jury room during the court's individual voir dire. For the following

reasons, the court concludes that movant cannot demonstrate a reasonable probability

that the outcome of his proceeding would have been different but for his failure to be

present during the individual voir dire.

The court conducted most of the questioning of the prospective jurors, with

counsel asking follow-up questions. Movant's two experienced criminal defense

attorneys were in the jury room, exploring any potential issues that arose as each

prospective juror answered questions. Moreover, movant would not have been

permitted to question jurors or challenge them for cause even if he had been present in

the jury room, because such questions were questions of law for his counsel to deal

with. Finally, movant was fully involved in the portion of voir dire in which he could have

had an impact. He was in the courtroom and able to observe the jurors as they walked

to and from the jury room, as they sat in the gallery for hours, and as all questions were

read to them. He also conferred with defense counsel about the answers to individual

15

questions. Given all of these circumstances, movant cannot demonstrate that he was prejudiced by his absence from the jury room.

Thus, the court will deny as meritless movant's contention that defense counsel provided ineffective assistance by waiving his presence during the court's individual voir dire of prospective jurors.

### 3.  Good faith execution of search warrants

Movant argues that defense counsel and appellate counsel were ineffective for failing to argue that the good faith exception to the warrant requirement should not have applied based on movant's allegation that the affiant made false statements relating to tips about movant's viewing of child pornography. This argument is factually baseless, because trial and appellate counsel both argued that the search warrant affidavits contained falsehoods that could not survive under the good faith exception. (D.I. 20 at ¶ 21); *United States v. Pavulak*, Case No. 11-3863, Electronic Brief on Behalf of Appellant at 54-60 (3d Cir. Mar. 13, 2012). The fact that counsels' arguments were unsuccessful does not mean that counsel provided constitutionally ineffective assistance. Thus, the court will deny the instant allegation.

### 4.  Laptop images "originated" while movant was in prison

Next, movant asserts that defense counsel was ineffective by failing to emphasize during trial the fact that the child pornography images found on his devices "originated" while he was in jail and not in possession of those devices. In order to establish possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), the government had to provide evidence that movant "knowingly possesse[d], or knowingly accesse[d] with an intent to view, any book, magazine, periodical, film, videotape,

16

computer disk, or any other material that contains an image of child pornography" with the requisite connection to interstate commerce.  On direct appeal, the Third Circuit held that the jury had ample evidence to conclude that movant possessed the child pornography images on his laptop, explaining:

> The laptop had only a single password-protected Windows user account and contained photos of [movant], [movant] claimed that the laptop was his computer, and the police recovered the laptop from the part of the CTI office in which he was living. Simply put, [movant] was the laptop's likeliest user.
>
> And [movant] was also the likeliest person to have accessed the child-pornography images on the laptop. They were not buried away where an innocent user could have overlooked them. Twenty-nine of them were found in Windows Photo Gallery, which could have occurred only if the user had accessed the image and modified it in some way. And the laptop's user edited the twenty-nine images between September and November 2008, usually in the evening and on the weekends—when [movant] had access to the laptop and other CTI employees did not. Indeed, on two occasions, several of the child-pornography images and pictures of [movant] were edited within hours of each other. By contrast, no one accessed these twenty-nine images of child pornography when [movant] left the laptop in the United States during his trip to the Philippines.

*Pavulak*, 700 F.3d at 669 (internal citations omitted).

In essence, movant's instant "origination" argument is a re-characterization of the argument he raised on appeal, namely, that there was insufficient evidence to show that he – as opposed to someone else at the CTI office – knowingly possessed thousands of pornography images found to have been accessed on his laptop and another computer in the office.  The government had to prove that movant knowingly possessed some material, such as a computer hard drive, that contained, and that movant knew it contained, at least one visual depiction of child pornography.  *See* 18 U.S.C. § 2252A(a)(5)(B).  As explained by the Third Circuit, the overall record provided ample evidence for the jury's conclusion that movant used the computers to knowingly

17

possess particular images of child pornography on particular dates before he departed

for his Philippine trip in December 2008. Given the Third Circuit's prior rejection of

movant's insufficient evidence argument, and the fact that movant's "origination"

contention is merely a re-characterization of his prior argument, the court concludes that

movant cannot demonstrate a reasonable probability that the jury would not have

convicted him of possession of child pornography but for defense counsel's failure to

assert movant's "origination" argument. Therefore, the court will deny this portion of

claim four.

### 5. Motion to suppress evidence from search of his hotel room and cell phone

Movant contends that defense counsel performed deficiently by failing to file a

motion to suppress the evidence obtained from the "warrantless" search of his motel

room and seizure of his Nokia cell phone. (D.I. 136 at 49) The record reveals that the

detectives seized movant's Nokia cell phone from his room in the CTI office, not from

his motel room, and the search was performed pursuant to the state search warrant.

(D.I. 48 at 3, 5, 7-10) In turn, defense counsel challenged the basis for the state search

warrant in a motion to suppress. (D.I. 20) Thus, defense counsel did not provide

ineffective assistance by failing to challenge a search and seizure that did not occur in

the manner alleged by movant.

To the extent movant is asserting that defense counsel provided ineffective

assistance by failing to challenge the search and seizure of evidence from his hotel

room, the argument is equally unavailing. The search of movant's motel room was

conducted with the consent of the motel management. However, no evidence was

18

seized from the motel which, in turn, means that no evidence from the warrantless search of the motel room was introduced at trial. (D.I. 48 at 7-10) Consequently, defense counsel did not render ineffective assistance by not challenging the warrantless search of the motel room.

### 6. Warrantless search of Gateway laptop

Movant complains that defense counsel should have filed a motion to suppress the evidence obtained from a warrantless search of his Gateway laptop found in the possession of Ara Duran in the Philippines. According to movant, Duran lacked the authority to hand the laptop over to law enforcement agents in the Philippines, because movant owned the Gateway laptop and merely "lent" it to Duran. Movant also asserts that the Delaware State Police subsequently searched the laptop without a warrant.

To begin, the court concludes that defense counsel did not perform deficiently by failing to file a motion to suppress on this basis. First, contrary to movant's assertion, Duran was an authorized user of the laptop. The record reveals that movant left the Gateway laptop with Duran in the Philippines for Duran's use in carrying on their relationship, and to facilitate movant's continuing attempts to sexually exploit Jane Doe via the webcam. Pictures depicting Duran and Jane Doe using the laptop were recovered from the memory card located in movant's camera. In turn, movant engaged in and recorded numerous sexual acts with Duran, and the files containing those recordings were saved to the hard drive of the Gateway laptop. As he was traveling back to Delaware, movant sent text messages to Duran explaining his plan to have Duran help him produce sexually explicit images of Jane Doe via webcam, and to have Duran molest Jane Doe and show her pornographic videos and images to groom her for

19

future sexual abuse, and to engage in hardcore sex acts with Jane Doe on his next trip to the Philippines. All of this evidence supports the conclusion that Duran – with movant's knowledge and authorization – used the Gateway laptop during and after movant's visit to the Philippines. Therefore, Duran had at least apparent authority to consent to the seizure of the laptop by the agents in the Philippines.

The record further demonstrates that Duran consensually provided the laptop to the ICE agents in the Philippines. Special Agent Darryl Tonne testified that he received the laptop from Duran when he traveled to her Cebu, Philippines village to interview her. Duran completed a written form consenting to the search and seizure of the Gateway laptop. The search warrant application explained that Special Agent Tonne read the form to Duran, who consensually provided the laptop to him. Nothing in the record indicates that Duran was in any way forced to relinquish custody of the laptop to the agent.

The court will momentarily put aside the contours of the Fourth Amendment in foreign seizures of evidence, and analyze movant's argument within the traditional parameters of Fourth Amendment principles.

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises.
>
> As [the Supreme Court] stated in [*United States v.*] *Matlock,* 415 U.S.164, 171, n. 7 (1974), "[c]ommon authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes...."

*Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)(internal citations omitted). Consent may be explicit or implicit, and the authority to consent may be actual or apparent. *See, e.g.,*

*United States v. Buckner*, 473 F.3d 551, 555 (4th Cir. 2007).  Moreover, this "consent"

exception applies to digital devices and computer networks.  *See United States v.*

*Stabile*, 633 F.3d 219, 230-31 (3d Cir. 2011).

Based on the foregoing, the owner of a digital device has actual authority to

consent to a search of the device, and authorized users may have actual or apparent

authority (or both) to consent.  For instance, where there is "mutual use of the property

by persons generally having joint access or control for most purposes," each user "has

the right to permit the inspection in his own right and [] others have assumed the risk

that one of their number might permit the common area to be searched." *Matlock*, 415

U.S. at 171 n.7; *see Stabile*, 633 F.3d at 232-33.  When an individual possesses only

apparent, rather than actual, common authority, the Fourth Amendment is not violated if

a police officer's entry is "based upon the consent of a third party whom the police, at

the time of the entry, reasonably believe to possess common authority over the

premises, but who in fact does not do so." *Rodriguez*, 497 U.S. at 179, 188–89; *see*

*United States v. Murray*, 821 F.3d 386, 391–92 (3d Cir.), *cert. denied*, 137 S. Ct. 244,

196 L. Ed. 2d 185 (2016).

Here, the record reveals that movant left the Gateway laptop with Duran in the

Philippines for Duran's use in carrying on their sexual relationship, as described above.

All of this evidence supports the conclusion that Duran – with movant's knowledge and

authorization – used the Gateway laptop during and after movant's visit to the

Philippines.  Therefore, Duran had at least apparent authority to consent to the seizure

of the laptop by the agents in the Philippines.

21

The record further demonstrates, as described above, that Duran consensually provided the laptop to the ICE agents in the Philippines. In addition, the laptop was known to contain evidence of movant's crimes, and this court subsequently found probable cause to support such a conclusion. The probable cause was based on evidence lawfully seized from movant's office, including his Nokia phone containing incriminating texts with Duran referencing the laptop, as well as digital photographs of movant with Duran and Jane Doe – and the Gateway laptop – in the Philippines. Thus, when viewed within the traditional contours of Fourth Amendment principles, movant's underlying contention that the law enforcement agents unlawfully seized the laptop lacks merit.

In addition, the Supreme Court has held that the Fourth Amendment does not apply to the search and seizure by United States authorities of the property of a non-resident alien located in a foreign country. *See United States v. Verdugo-Urquidez*, 494 U.S. 259 261, 275 (1990). For all of these reasons, the court concludes that defense counsel's failure to challenge the warrantless seizure of the Gateway laptop did not amount to ineffective assistance.

Movant's contention that defense counsel should have filed a motion to suppress the evidence obtained from the Gateway laptop because the Delaware State Police searched the laptop without a warrant is also unavailing. The search of the laptop was conducted pursuant to a federal search warrant after Duran provided the laptop to ICE agents working with Philippine law enforcement in Cebu, Philippines. The laptop was later transferred to the custody of ICE in Delaware. Given these circumstances,

defense counsel was not ineffective for failing to challenge a warrantless search of the Gateway laptop that did not occur.

### 7. Stipulation regarding prior convictions

Movant asserts that defense counsel was ineffective for persuading him to sign a stipulation as to his prior child sex offense convictions, because the stipulation triggered the enhanced penalty provisions under § 2251(e) and § 3559(e).  This argument is unavailing, because it is premised on movant's erroneous assumption that he would not have been subjected to a life sentence but for his stipulation to his prior qualifying convictions.  The sentencing transcript shows that the court found that a life sentence was appropriate under the § 3553(a) factors even without applying § 3559(e).  (D.I. 129 at 12-15, 24-26)  In addition, in its sentencing memorandum order, the court explained that "a sentence to life imprisonment would be justified under 18 U.S.C. § 3553(a), given the nature and circumstances of [movant's] offense and his past history of sexually exploiting children.  More specifically, the jury in this case heard evidence that, less than two months after his release from custody for his 2005 conviction, [movant] began his attempts to enlist a prostitute mother into making her 2-year-old daughter available for sexual exploitation by [movant]; [movant] was concomitantly violating this sex offender registration obligations that stemmed from his prior convictions.  The jury convicted [movant] on all counts, rejecting all of the defenses presented to them." (D.I. 123 at 5)  Based on this record, movant cannot demonstrate a reasonable probability that his sentence would have been different but for the stipulations.

### E. Claim Five: Unconstitutional Life Sentence

Movant argues that the court infringed upon the province of the jury by making factual findings relating to his prior convictions. Specifically, he asserts that *Alleyne v. United States*, 133 S.Ct. 2151 (2013), required the facts of his prior child sex offense convictions to be submitted to the jury before the court could apply the enhanced penalties contained in 18 U.S.C. § 2251(e) and 3559(e).

In this case, movant's PSR recommended that his prior Delaware convictions subjected him to life imprisonment for his attempted-production conviction. Movant objected, arguing that his maximum statutory sentence was fifty years and that *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000), required a jury to determine if his prior Delaware convictions could justify an increase beyond that fifty year maximum. The court rejected the argument during the sentencing hearing, explaining that *Apprendi* did not apply since movant's maximum sentence was life imprisonment. The court then found that movant's prior convictions triggered mandatory life imprisonment under § 3559(e) for his attempted-production conviction and sentenced him to life.

Movant also raised his *Apprendi* argument on direct appeal. The Third Circuit explained that "*Apprendi*'s restriction on judicial fact-finding does not apply because the mandatory life sentence in § 3559(e) does not exceed [movant's] maximum statutory sentence for attempted production of child pornography, which is life imprisonment." *Pavulak*, 700 F.3d at 673. The Third Circuit then held that "[i]t was therefore constitutional for the District Court to determine that [movant's] prior Delaware convictions involved conduct that would be a Federal sex offense and thus triggered the mandatory life sentence in § 3559(e)." *Id.* at 674.

In *Apprendi,* the Supreme Court held that a jury must generally find facts that increase the penalty for a crime beyond the mandatory maximum. Years later, the Supreme Court decided *Alleyne,* in which it held that the *Apprendi* rule for mandatory maximums also applies when the mandatory minimum is increased. *See Alleyne,* 133 S.Ct. at 2163 ("[T]here is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum...."). As explained by the Third Circuit, "*Alleyne* is the logical extension of *Apprendi.* While an *Apprendi* error occurs when a judge, rather than a jury, finds a fact that increases the mandatory maximum, an *Alleyne* error occurs when a judge, rather than a jury, finds a fact that increases the mandatory minimum for a movant." *United States v. Lewis,* 802 F.3d 449, 454 (3d Cir. 2015).

Movant's instant *Alleyne* argument is an extension of his twice-rejected *Apprendi* argument. Essentially, movant asserts his sentence is unlawful because the mandatory minimum was increased in violation of *Alleyne,* as opposed to his prior argument that the statutory maximum was increased in violation of *Apprendi.* This argument fails for several reasons. First, movant cannot invoke *Alleyne* in his § 2255 motion because *Alleyne* has not been made retroactively applicable to cases on collateral review. *See United States v. Reyes,* 755 F.3d 210, 212-13 (3d Cir. 2014). Second, his argument that the facts of his prior convictions had to be found by the jury before his sentence could be enhanced under § 2251(e) and § 3559(e) is procedurally barred because the Third Circuit rejected it on direct appeal. Finally, neither *Alleyne* nor *Apprendi* applies to the "fact of a prior conviction,"[5] meaning that judges are permitted to consider prior

---

[5]The *Apprendi* Court explained that, "**[o]ther than the fact of a prior conviction,** any fact that increases the penalty for a crime beyond the prescribed statutory maximum

25

convictions for purposes of enhanced penalties.  *See Burnett,* 773 F.3d at 136.

Accordingly, the court will deny the instant allegation as meritless.

### F. Claim Six:  Cumulative Ineffective Assistance of Counsel

In claim six, movant contends that combining the following seven errors on

defense counsel's part demonstrates that defense counsel provided constitutionally

ineffective assistance: (1) failure to impeach four government witnesses; (2) failure to

print photos and profile page of each girl to prove they were over the age of eighteen on

the Cherry Blossom website; (3) failure to prepare movant to testify; (4) failure to

question improper conduct of various government agents; (5) failure to call five

witnesses to testify; (6) failure to move to suppress CTI customer files; and (7) failure to

challenge incorrect address in search warrant.

According to Third Circuit precedent, the cumulative error doctrine "allows a

petitioner to present a standalone [constitutional] claim asserting the cumulative effect

of errors at trial that so undermined the verdict as to constitute a denial of his

constitutional right to due process."  *Collins v. Sec'y of Pa. Dep't of Corr.,* 742 F.3d 528,

542 (3d Cir. 2014).  Cumulative errors warrant habeas relief "if they had a substantial

and injurious effect or influence in determining the jury's verdict."  *Albrecht v. Horn,* 485

F.3d 103, 139 (3d Cir. 2007).  In order to prevail on his cumulative error claim, movant

must demonstrate that counsel's errors combined would be sufficient to show *Strickland*

prejudice.  *Id.*

---

must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi,* 530
U.S. at 489 (emphasis added).  The Third Court recently held that *Alleyne* did not alter
this "prior conviction" exception to *Apprendi.  See United States v. Burnett,* 773 F.3d
122, 136 (3d Cir. 2014).  Therefore, judges may consider prior convictions for purposes
of enhanced penalties.  *Id.*

### 1.   Impeachment of government witnesses

Movant alleges that defense counsel failed to properly impeach the following government witnesses: Detective Jones, Detective Skubik, Detective Michael Willey, and Curtis Mack.

### (a)   Detectives Jones and Skubik

Defense counsel asked Detective Jones if the CTI employees (Mack and Riggs) reported seeing "child pornography." Movant contends that defense counsel should have restricted Detective Jones' answer to a "yes or no," and erred by accepting Detective Jones' statement that, "They, in their opinion, it was sexually explicit activity involving children." (D.I. 83 at 84) This contention does not warrant relief, because movant cannot demonstrate any prejudice. Rather, Detective Jones made a factual statement that was extensively corroborated by the forensic evidence relating to the multitude of images of children engaged in sexually explicit conduct found on movant's computer.

Movant also contends that defense counsel failed to confront Detective Jones about the specifics of what he told Detective Skubik, presumably to support movant's contention that Detective Skubik committed perjury. Detective Jones testified that his unit had received information that "sexually explicit material" was located on a computer used by movant. (D.I. 83 at 58) Movant contends that Detective Skubik falsely testified that Detective Jones relayed to her that "he had two witnesses who reported seeing child pornography." (D.I. 136 at 59) Contrary to movant's contention, Skubik's testimony was not a lie; as the Third Circuit has already held, there simply was no falsehood. *See Pavulak*, 700 F.3d at 671. This argument is meritless.

27

### (b) Detective Michael Willey

During the trial, Detective Willey testified that the "Me" account on the laptop was password protected. (D.I. 79 at 124)  Movant contends that defense counsel should have challenged the veracity of Detective Willey's trial testimony because it differed from his preliminary hearing testimony that there was no password.  (D.I. 136 at 59)

This argument is factually baseless.  Detective Willey's trial testimony was based on the forensic analysis of the laptop with EnCase software, which identified the account password. (D.I. 179 at 124)  In turn, the preliminary hearing transcript shows that Detective Willey actually testified that he was **not sure** whether the laptop had password protected folders. (D.I. 158 at 96)(emphasis added)  Given these circumstances, movant's instant complaint does not satisfy either prong of the *Strickland* standard.

### (c) Curtis Mack

During the trial, Mack (one of the CTI employees who provided information for the search warrant affidavit) testified that he was not offered and did not ask for any consideration for his testimony.  Movant contends that defense counsel should have questioned Mack about charges against him that were dropped in October 2008, around the same time the sex offender hot line received a tip that movant was working at CTI. (D.I. 136 at 60)  The court construes movant's current contention as an effort to cast doubt on Mack's credibility and to provide support for his previously denied appellate argument that there were inconsistencies in the probable cause affidavit.  However, the Third Circuit specifically noted that "Mack's trial testimony was perfectly consistent with the information he provided for the search-warrant affidavit." *Pavulak*, 700 F.3d at 671.

28

The court concludes that defense counsel did not perform ineffectively by failing to question Mack about the circumstances surrounding the dropped charges.

### 2.  Cherry Blossom website

Movant argues that defense counsel was ineffective for failing to "print the photos and profile page of each girl [from the Cherry Blossom website], to be viewed by the jury, proving each woman was over eight." (D.I. 136 at 61)  However, the government never contended that movant communicated directly with minors via the Cherry Blossom website, and movant does not explain how the introduction of such evidence would have changed the outcome of his proceeding.  This argument fails to demonstrate that defense counsel provided ineffective assistance.

### 3.  Movant's potential testimony

Movant asserts that he wished to testify during the trial but that defense counsel failed to prepare him to testify.  Notably, movant does not assert that defense counsel prevented him from testifying, only that defense counsel told movant that if he wanted to provide any testimony he "was on his own to make a general statement." (D.I. 136 at 61)

Assuming, arguendo, that defense counsel actually did inform movant that counsel would not direct his examination, that action did not amount to deficient performance or cause prejudice. *See Nix v. Whiteside*, 475 U.S. 157, 169-70, n.6 (1986)(right to effective assistance of counsel not violated by attorney who refused to cooperate in movant's presentation of false testimony).

29

### 4. Government's improper conduct

Movant contends that defense counsel failed to object to the following improper actions by government agents: (a) alteration of dates in forensic report relating to the desktop computer; (b) use of the term "sex tourism" to describe his trip to the Philippines; (c) the government's statement during closing that the Cherry Blossom website was "used by sex tourists to solicit Philippine females for prostitution"; and (d) the government's improper invitation to the jury during closing to "culiminate all the charges into one guilty verdict." These "actions" do not amount to ineffective assistance. Contrary to movant's assertion, defense counsel questioned Detective Willey extensively about the accuracy of the dates relating to the thumb cache files contained in his report. (D.I. 80 at 226-230; D.I. 158, Ex. P) In turn, since the "sex tourism" reference involved activity with adult females, and the evidence of movant's sexual exploitation of children was overwhelming, movant cannot demonstrate prejudice. Finally, movant's complaint about the government's "culmination" statement during closing has already been rejected by the Third Circuit on direct appeal. *See Pavulak*, 700 F.3d at 667-68 ("Second, the prosecutor's momentary focus on the 'big picture' did not improperly invite the jury to cumulate the evidence of the separate charges.").

### 5. Did not call witnesses

Movant identifies four witnesses he claims defense counsel "failed to call" at trial: Ms. Ballard, Sergeant Carver, Michael Fletcher, and Ara Duran. As a general rule, courts presume that counsel acted strategically in deciding not to call certain witnesses, and the movant bears the burden of rebutting that presumption. *See Thomas v. Varner*,

30

428 F.3d 490, 499-500 (3d Cir. 2005). An otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the movant's wishes. *See, e.g., Diggs v. Owens*, 833 F.2d 439, 445-46 (3d Cir. 1987).

Movant does not provide any evidence to support his assertion that the aforementioned witnesses would have provided helpful testimony, nor does he demonstrate that they were actually available to testify at his trial. Additionally, given the overwhelming evidence of his guilt, movant cannot demonstrate a reasonable probability that their testimony would have changed the outcome of his trial. The court concludes that movant's contention regarding defense counsel's failure to call the aforementioned four witnesses is unavailing.

### 6. CTI customer files

Movant alleges that defense counsel should have sought suppression of the CTI customer files that were seized during the search. He does not identify the particular customer files he believed were unlawfully seized, but the only documents that might be considered to be the seized "customer files" were in the room movant occupied.

The state search warrant authorized the seizure of any evidence relating to child pornography and/or sexual child exploitation. The notes and other documents relating to movant's performance of jobs at CTI that were seized during the search were commingled with movant's personal effects, with evidence of his trip to the Philippines, and with his contacts concerning Duran and other females in the Philippines. As such, the information was relevant to identifying movant as the person who occupied the room in the CTI office from which the incriminating computer-based evidence was seized. The court concludes that movant cannot demonstrate a reasonable probability that the

31

outcome of his trial would have been different but for defense counsel's failure to move to suppress unidentified "customer files."

### 7.  Incorrect address in search warrant

Finally, movant contends that defense counsel should have challenged the issuance of a search warrant for CTI's new office on Quigley Boulevard, because the tip about child pornography related to movant's activities in CTI's former office location on Ayre Street.  The Third Circuit rejected a similar argument on direct appeal, where movant argued that the affidavit was false because the affiant wrote that the tipsters saw movant viewing child pornography at the CTI office located on Quigley Boulevard. *See Pavulak*, 700 F.3d at 666.  On appeal, movant argued that the affidavit was false because the CTI office was located on Ayre Street during the summer of 2008.  In rejecting the argument, the Third Circuit stated that the "import of that information was that [movant] was viewing child pornography in CTI's only office – wherever it was located – using CTI's computers and using his online Yahoo! account." *Id.*  Since the CTI computers that movant was seen using to view child pornography moved with CTI to its new office on Quigley Boulevard, the change in location did "not undermine the existence of probable cause. " *Id.*  For these same reasons, the court concludes that movant's complaint about defense counsel's failure to challenge the search on these grounds is meritless.

### 8.  No cumulative error

The court now turns to movant's contention that combining all of the aforementioned "errors" demonstrates that defense counsel provided ineffective assistance.  As noted above, the cumulative error doctrine "allows a petitioner to

present a standalone [constitutional] claim asserting the cumulative effect of errors at

trial that so undermined the verdict as to constitute a denial of his constitutional right to

due process." *Collins*, 742 F.3d at 542. If a court finds no merit in claims of individual

errors, however, there is no basis for relief under § 2255 for "an alleged accumulation of

errors that did not exist." *Stewart v. United States*, 2014 WL 3573395, at *11 (D.N.J.

July 21, 2014).

As just discussed, the court has concluded that none of movant's assertions

regarding the aforementioned seven "errors" have merit. Therefore, the court will deny

his "cumulative error" claim, because he has failed to demonstrate prejudice under

*Strickland*.

### G. Claim Seven: SORNA Not Retroactively Applicable

In his final claim, movant asks the court to vacate his conviction for failure to

register as a sex offender in violation of 18 U.S.C. § 2250(a) on the basis that the Sex

Offender Registration and Notification Act ("SORNA") does not retroactively apply to his

1998 and 2005 sex offense convictions. Citing *United States v. Reynolds*, 565 U.S. 432

(2012), movant argues that SORNA was not made retroactively "effective" to offenders

with pre-July 2006 sex offenses until the January 28, 2011 effective date of the Attorney

General's "Final Rule" on SORNA's applicability. Since his interstate travel and failure

to update his sex offender registration occurred between September 2008 and January

2009, movant argues that his § 2250(a) conviction is impermissibly retroactive and must

be vacated. For the following reasons, movant's argument is meritless.

SORNA, which became effective on July 27, 2006, requires individuals convicted

of sex offenses after its enactment to comply with certain federal registration

requirements, *see* 42 U.S.C. § 16913, and it imposes federal criminal penalties for

failure to register or to update a registration. *See* 18 U.S.C. § 2250(a).[6]  "SORNA did

not clarify whether its registration requirements apply to sex offenders [] whose sex

offense convictions were prior to SORNA's enactment. Rather, SORNA gave the

Attorney General the authority to specify the applicability of the requirements of this

subchapter to sex offenders convicted before the enactment of this chapter ... and to

prescribe rules for the registration of any such sex offenders." *United States v.*

*Manning*, 786 F.3d 684, 685 (8th Cir. 2015).  "Pursuant to this delegation, the Attorney

General in 2007 issued an interim rule ["Interim Rule"] providing that SORNA applies to

pre-enactment convictions." *Carr v. United States*, 560 U.S. 438, 466 (2010).  In issuing

the Interim Rule, the Attorney General did not provide the pre-promulgation notice and

comment period and bypassed the thirty-day publication requirement based on his

belief that there was "good cause" to waive those requirements. *See United States v.*

*Springston*, 2015 WL 7307055, at *2 (W.D. Ark. Sept. 21, 2015).

The Attorney General subsequently enacted regulations, known as the SMART

Guidelines, reaffirming that the Interim Rule applies SORNA to pre-Act offenders.  After

allowing a period for notice and comment, the SMART Guidelines became effective on

August 1, 2008. *Springston*, 2015 WL 7307055 at *3.  Thereafter, the Attorney General

---

[6]Section 2250(a) provides that any person who:
    (1) is required to register under [SORNA];
    (2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a
conviction under ... the law of any territory or possession of the United States; or
    (B) travels in interstate or foreign commerce ...; and
    (3) knowingly fails to register or update a registration as required by [SORNA];
    shall be fined under this title or imprisoned not more than [ten] years, or both.
*United States v. Stacey*, 570 F. App'x 213, 215 (3d Cir. 2014).

promulgated a Final Rule which became effective on January 28, 2011. *See* 75 Fed.

Reg. 81,849 (Dec. 29, 2010).

During this time period, the courts of appeal were sharply divided as to whether

SORNA's registration requirements were automatically applicable to persons convicted

of sex offenses before July 26, 2006 (SORNA's effective date), or whether the

applicability of SORNA to pre-SORNA offenders depended on the implementing

retroactivity rules issued by the Attorney General. The United States Supreme Court

resolved this conflict in 2012 when it issued its decision in *Reynolds,* 562 U.S. 432

(2012) ("*Reynolds I*"), holding that SORNA does not require pre-Act offenders to register

until the Attorney General specifies that the Act's provisions applies to them. *Reynolds*,

432 U.S. at 474. Stated another way, SORNA's registration requirements would only be

effective and applicable after the Attorney General issued valid implementing

regulations.[7] *Id.* Although the *Reynolds I* Court acknowledged the existence of the

Interim Rule, SMART Guidelines, and the Final Rule, it declined to determine if "the

Attorney General's Interim Rule sets forth a valid specification." *Id.* at 446. Rather, the

Supreme Court reversed the Third Circuit's affirmance of Reynolds' conviction and

sentence, and remanded the case to the Third Circuit for a determination as to whether

---

[7]The movant in *Reynolds I* and *II* was a sex offender convicted prior to SORNA's enactment who had traveled interstate and failed to register between September 16 and October 16, 2007, (i.e., after the July 27, 2006 enactment of SORNA and the Interim Rule but before the SMART Guidelines and Final Rule had been issued.). He was convicted in the United States District Court for the Western District of Pennsylvania of failing to register and update a registration in violation of SORNA. On direct appeal, the Third Circuit affirmed his conviction. *See United States v. Reynolds*, 380 F. App'x 125, 126 (3d Cir. 2010), *rev'd and remanded by Reynolds v. United States*, 565 U.S. 432 (2012). Reynolds filed a petition for writ of certiorari, which resulted in the Supreme Court's *Reynolds I* decision.

the Attorney General's February 28, 2007 Interim Rule was valid. *Id.* On remand, the

Third Circuit vacated Reynolds' conviction after holding that the Interim Rule making

SORNA applicable to persons convicted of sex offenses prior to July 27, 2006 violated

the notice, comment, and publication requirements of the Administrative Procedures Act

("APA"). *See United States v. Reynolds*, 710 F.3d 498, 502, 514, 523 (3d Cir. 2013)

("*Reynolds II*"). When *Reynolds I* and *Reynolds II* are viewed together, it would appear

that the earliest possible effective date of SORNA for pre-enactment sex offenders in

the Third Circuit is the date on which the SMART Guidelines became effective: August

1, 2008. *See, e.g., United States v. Utesch*, 596 F.3d 302, 311 (6th Cir. 2010)(since the

SMART Guidelines were issued in full compliance with the APA, SORNA became

effective and applicable to pre-enactment offenders on August 1, 2008, after the thirty-

day notice and comment period). Although the Supreme Court and the Third Circuit

have not squarely addressed this issue, at least four circuit courts have held that the

SMART Guidelines were valid because they satisfied the notice-and comment

requirements of the APA, thereby making SORNA applicable to pre-enactment

offenders on August 1, 2008. *See United States v. Lott*, 750 F.3d 214, 219 (2d Cir.

2014) (collecting cases).

In sum, movant's qualifying sex offenses in 1998 and 2005 in the Delaware

Superior Court (D.I. 118 at 7) required him to register under SORNA as of August 1,

2008, thereby satisfying the first element of § 2250(a). Movant traveled from Delaware

to Las Vegas and back in September 2008, and from Delaware to the Philippines and

back between December 2008 and January 2009. Movant's travel in interstate

commerce after August 1, 2008 satisfies the second element of § 2250(a). Finally, on

January 16, 2009, movant updated his sex offender registration to indicate that he was
residing at the Hollywood Motel in New Castle; he listed himself as unemployed and
omitted any reference to CTI. However, on January 17 and 18, 2009, movant engaged
in online chats which clearly demonstrated that he spent both days at CTI. There was
also other substantial evidence that movant worked and lived at the CTI office.
Therefore, movant's failure to update his sex offender registration to reflect his
residence and employment at CTI satisfies the third element of § 2250(a). For all of
these reasons, movant's conviction for failure to update his sex offender registration
under § 2250(a) was lawful.

## IV.    PENDING MOTIONS

During the pendency of this proceeding, movant filed a motion to compel the
production of certain evidence (D.I. 142) and a motion for leave to supplement his
§ 2255 motion (D.I. 183). Having concluded that movant's § 2255 motion does not
warrant relief, the court will deny these motions as moot.

## V.    EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255
motion unless the "motion and the files and records of the case conclusively show" that
the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*,
432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d
Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record
conclusively demonstrates that movant is not entitled to relief. Therefore, the court will
deny movant's § 2255 motion without an evidentiary hearing.

## VI.    CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing.  Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable.  *See* 28 U.S.C. § 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right.");  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011).  An appropriate order will follow.